**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

ZAGG INC,                                          **Case No.: 1:23-cv-20304-RKA**

          Plaintiff,

v.

MENACHEM MENDEL ICHILEVICI;
TX TRADING INC.;
DVG TRADE LLC; and

          Defendants.
_____/

DVG TRADE LLC,

          Counterclaim-Plaintiff,

v.

ZAGG INC., SCREENYA, LLC,
MERRIL LONGMORE, and
BRENDAN BUCKNER,

          Counterclaim-Defendants.
_____/

**DEFENDANT/COUNTERCLAIM-PLAINTIFF DVG TRADE LLC'S**
**OPPOSITION TO ZAGG INC AND SCREENYA, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................................1

II.    FACTUAL BACKGROUND .........................................................................................2

       A.     The Parties .........................................................................................................2

       B.     Procedural History .............................................................................................2

       C.     The Dispute Between the Parties .......................................................................3

              1.     Zagg's Filing of False Intellectual Property Complaints ............................3

              2.     Zagg's Creation of an Alter-Ego Shell Company (Screenya) to
                     Conceal Its Violations of the Law and Amazon's Policies.........................4

III.   LEGAL STANDARDS ..................................................................................................5

IV.    ARGUMENT .................................................................................................................6

       A.     The Court Has Personal Jurisdiction Over Screenya .........................................6

              1.     Screenya Is Zagg's Alter-Ego ....................................................................6

              2.     Screenya Is Also Subject to This Court's Personal Jurisdiction
                     Pursuant to the Conspiracy Jurisdiction Doctrine.....................................10

              3.     A Full Jurisdictional Analysis Further Confirms that Jurisdiction Is
                     Appropriate as Screenya Has Committed a Tort Directed at a
                     Florida Company .......................................................................................11

       B.     DVG's Counterclaims Are Sufficiently Pleaded ..................................................13

              1.     The Counterclaims Sufficiently State a Claim for Defamation
                     (Counterclaim II) ......................................................................................13

              2.     The Counterclaims Sufficiently State a Claim for False Advertising
                     (Counterclaim III) .....................................................................................14

              3.     The Counterclaims Sufficiently State a Claim for Civil Conspiracy
                     (Counterclaim IV) .....................................................................................16

              4.     The Counterclaims Sufficiently State a Claim Under the FDUTPA
                     (Counterclaim V) ......................................................................................17

              5.     To The Extent the Court Is Inclined to Grant Counter-Defendants'
                     Motion, DVG Should Be Granted Leave to Amend the
                     Counterclaims ...........................................................................................18

V.     CONCLUSION.............................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*APR Energy, LLC v. Pakistan Power Res., LLC*,
  No. 3:08-CV-961-J-25MCR, 2009 WL 10670782 (M.D. Fla. May 21, 2009) ......................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................................6, 13

*AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*,
  608 F. Supp. 2d 1349 (S.D. Fla. 2009) ..................................................................................10

*Bank of Am., N.A. v. Zaskey*,
  No. 9:15-CV-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016).......................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................6

*Bluegreen Vacations Unlimited, Inc. v. Montgomery L. Firm LLC*,
  No. 19-24704-CIV, 2022 WL 17987280 (S.D. Fla. June 17, 2022).................................11, 12

*Broward Marine, Inc. v. S/V Zeus*,
  No. 05-23105-CIV, 2010 WL 427496 (S.D. Fla. Feb. 1, 2010)................................................7

*City of Miami v. Eli Lilly & Co.*,
  No. 21-22636-CIV, 2022 WL 198028 (S.D. Fla. Jan. 21, 2022)............................................17

*Damian v. Yellow Brick Cap. Advisers (UK) Ltd.*,
  No. 19-21538-CIV, 2019 WL 5887360 (S.D. Fla. Nov. 12, 2019) ........................................10

*Del Valle v. Trivago GmbH*,
  56 F.4th 1265 (11th Cir. 2022) .................................................................................................6

*Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*,
  752 So. 2d 582 (Fla. 2000)................................................................................................11, 18

*Hirsch v. Sal's Towing, Inc.*,
  No. 10-62336-CIV, 2011 WL 13217064 (S.D. Fla. Feb. 2, 2011) .........................................15

*J & M Assocs., Inc. v. Romero*,
  488 F. App'x 373 (11th Cir. 2012) .........................................................................................10

*La Potencia, LLC v. Chandler*,
  No. 22-CV-80417-RAR, 2023 WL 1430480 (S.D. Fla. Feb. 1, 2023)...................................12

*Licciardello v. Lovelady*,
  544 F.3d 1280 (11th Cir. 2008) ..............................................................................................13

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ...............................................................5

*Merkin v. PCA Health Plans of Fla., Inc.*,
  855 So. 2d 137 (Fla. Dist. Ct. App. 2003) .........................................7, 9

*SkyHop Techs., Inc. v. Narra*,
  58 F.4th 1211 (11th Cir. 2023) ...............................................................6

*Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*,
  623 F.3d 1371 (11th Cir. 2010) ...............................................................6

*Stein v. Marquis Yachts, LLC*,
  No. 14-24756-CIV, 2015 WL 1288146 (S.D. Fla. Mar. 20, 2015) .......................17

*Suntree Techs., Inc. v. EcoSense Int'l, Inc.*,
  802 F. Supp. 2d 1273 (M.D. Fla. 2011) .................................................16

*SZS Sols., Inc. v. Brother Int'l Corp.*,
  No. 0:17-CV-61942, 2018 WL 3126220 (S.D. Fla. June 26, 2018) ........................13

*Thursday LLC v. Klhip Inc.*,
  No. 8:17-CV-1587-T-36AEP, 2018 WL 4216389 (M.D. Fla. Sept. 5, 2018) .........................12

*Verbena Prod. LLC v. BeSweet Creations Inc.*,
  No. 21-CV-23797-PCH, 2022 WL 18864660 (S.D. Fla. Feb. 16, 2022) ...............15

*Wilcox v. Stout*,
  637 So. 2d 335 (Fla. Dist. Ct. App. 1994) ...............................................10

*Woods v. Jorgensen*,
  522 So. 2d 935 (Fla. Dist. Ct. App. 1988) ...............................................9

**Statutes**

15 U.S.C. § 1125.....................................................................................3

Florida Stat. § 48.193(2) & (6) ...........................................................11

Florida Stat. § 501.202(2) ...................................................................18

**Rules**

Fed. R. Civ. P. 15(a)(2)........................................................................18

Fed. R. Civ. P. 12(b)(2).........................................................................5

Fed. R. Civ. P. 12(b)(6).........................................................................6

iii

Defendant/Counterclaim-Plaintiff DVG Trade LLC ("DVG") respectfully submits this Opposition to Plaintiff/Counterclaim-Defendant Zagg Inc ("Zagg") and Counterclaim-Defendant Screenya, LLC's ("Screenya," collectively with Zagg, "Counter-Defendants") Motion to Dismiss, which was served on May 26, 2023 (ECF No. 50, "Motion" or "Mot.").

## I.      INTRODUCTION

As the saying goes "those in glass houses shouldn't throw stones." Zagg—a manufacturer of mobile phone accessories—brought this Action seeking to bully a small Florida business and eliminate fair competition on Amazon. Instead, it was discovered that Zagg was involved in a criminal shill bidding scheme comprising a disguised alter ego (Screenya), wire fraud, and retail price fixing. DVG's counterclaims seek redress for these acts.

The dispute between the Parties started in early 2022, when Zagg began interfering with Plaintiff's right and ability to resell genuine products on Amazon.com ("Amazon"). Specifically, Zagg submitted numerous false reports to Amazon stating that DVG's products infringed Zagg's trademarks, resulting in the deactivation of DVG's listings and other harm to DVG's seller account. As detailed in the Counterclaims (ECF No. 41, "Counterclaims" or "Countercl."), Zagg was well-aware these representations were false and sought to eliminate their competition and maintain pricing on Amazon, through plainly unlawful means. When DVG did not cave to these attacks, Zagg initiated this sham litigation.

The Counterclaims go far beyond the requirements of notice pleading—they explain precisely why DVG is entitled to a declaratory judgment of non-infringement, as well as damages for defamation, unfair competition (under federal and Florida law), and civil conspiracy. Seeking to impose needless delay and cost, Screenya (aka the alter-ego of *Plaintiff* Zagg) has moved to dismiss for lack of personal jurisdiction, and both Zagg and Screenya have moved to dismiss all

but DVG's declaratory judgment counterclaim. But, as discussed below, Zagg and Screenya's legal and factual arguments do not support dismissal of any claim and the Motion should be denied.

## II.      FACTUAL BACKGROUND

### A.      The Parties

DVG is a Florida-based company that resells various consumer products through an Amazon storefront. (Countercl. ¶¶ 23–24). DVG is owned by Menachem Ichilevichi. Since its formation, DVG's Amazon storefront has served hundreds of thousands of customers and holds a 100% customer rating. (*Id.* at ¶¶ 25, 38).

Zagg is in the business of manufacturing and distributing mobile phone accessories, including protective cases, screen protectors and chargers ("Zagg Products"). (*Id.* at ¶ 15). Zagg is also the registrant of U.S. Trademark Serial No. 4140986 for the mark INVISIBLE SHEILD ("the Zagg Registration"). (*Id.* at ¶ 16). As discussed below, Screenya is a shell company created by Zagg in 2022 to mask illegal and fraudulent activities. (*Id.* at ¶¶ 20, 103–108). At the time the Counterclaims were filed, Screenya listed its address as that of Zagg's former Tax Director, Brandon Buckner. (*Id.* at ¶¶ 106–107). Following the filing of the Counterclaims, Screenya hastily changed its address to an (unoccupied) building in Michigan in which Zagg has sub-leased an office. The Counterclaims further name Buckner and Zagg's Director of Ecommerce, Merril Longmore, as counterclaim-defendants. (*Id.* at ¶¶ 4–7). Buckner and Longmore have been served but have not yet appeared.

### B.      Procedural History

Zagg initiated this Action on January 26, 2023 against the wrong party, TX Trading Inc. ("TX"). TX is a business owned by Mr. Ichilevichi's father, which has no knowledge of, or involvement in, this matter. Zagg has nevertheless refused to dismiss TX from the Action. Instead, on March 28, 2023, filed its First Amended Complaint, adding DVG and its sole owner, Mr.

Ichilevichi.  (ECF No. 21).  An Amended Scheduling Order issued on April 3, 2023 setting, *inter alia*, deadlines for the close of all discovery of July 11, 2023 and pre-trial motions of August 2, 2023.  (ECF No. 29).

On May 4, 2023, DVG filed its Answer and Counterclaims.  The Counterclaims include claims for: (1) a declaratory judgment of non-infringement; (2) defamation; (3) false or misleading representation, unfair competition, and product disparagement pursuant to 15 U.S.C. § 1125; (4) civil conspiracy; and (5) violations of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA").

### C.     The Dispute Between the Parties

#### 1.     Zagg's Filing of False Intellectual Property Complaints

The dispute between the Parties began in early 2022.  For some time, DVG and Mr. Ichilevichi had resold Zagg Products on Amazon without issue.  However, as detailed in the Counterclaims, after struggling financially and changing ownership, Zagg implemented a new e-commerce strategy.  (Countercl. ¶¶ 19–20).  Specifically, Zagg planned to remove other sellers (like DVG) from "Amazon listings and sell themselves[.]" (*Id.* at ¶ 22).  Almost immediately, Zagg began submitting knowingly false reports of intellectual property infringement to Amazon—the purpose of these reports was to remove DVG's ability to sell Zagg Products.  (*Id.* at ¶¶ 40–52).

The Counterclaims details **four** of these false reports (dates, products, etc.) and includes the complete notices received by DVG from Amazon.  (*Id.* at ¶¶ 56–91).  For example, in several instances, Zagg conducted a test purchase from DVG and falsely reported to Amazon that "[t]he product received is the wrong product" and, therefore, DVG was infringing the Zagg Registration.  (*Id.* at ¶¶ 64–71).  Zagg knew these statements were false (i.e., the product supplied by DVG was the *right* product) but made a conscious decision to submit the report in an effort to stifle competition and increase profits.  (*Id.* at ¶¶ 70–73).

2.      **Zagg's Creation of an Alter-Ego Shell Company (Screenya) to Conceal Its Violations of the Law and Amazon's Policies**

Zagg created a fictitious entity, Screenya, in order to circumvent Amazon's policies, fool Amazon's pricing algorithms and illegally inflate pricing for Zagg Products. (Countercl. ¶¶ 95–117). Zagg is a vendor (known as a first-party seller or "1P") of Zagg Products to Amazon, i.e., it supplies Zagg Products to Amazon on a wholesale basis and Amazon lists the products on its marketplace. (*Id.* at ¶ 95). As an Amazon vendor, Zagg cannot dictate the prices that Amazon will charge retail customers. (*Id.* at ¶ 96). Rather, Amazon uses an algorithm to dynamically price the Zagg Products that it sells. (*Id.* at ¶ 97). When a third-party seller (known as a "3P") lists a Zagg Product at a price lower than the price at which Amazon is selling the Zagg Product, Amazon's algorithms may lower the retail price to match the third-party seller. (*Id.* at ¶ 98). In turn, Amazon may demand a lower wholesale price from Zagg for Zagg Products. (*Id.*).

In order to prevent brand owners, like Zagg, from manipulating its pricing Algorithms, ***Amazon expressly prohibits brand owners*** that sell products directly to Amazon (for resale by Amazon to retail customer) ***from also selling the same products as a third-party*** (to Amazon retail customers). (*Id.* at ¶ 99). Specifically, Amazon's policies state that "if any of the Brand's products are sold by Amazon via Amazon retail, ***the Brand may not sell those products via Seller Central in the Amazon store***" as a 3P (*id.* at ¶ 100), because it would cause unfair and unlawful pricing manipulation. Zagg was aware of this prohibition—Longmore lamented publicly that Amazon ***specifically advised Zagg*** that it could ***not*** operate as "3P":



Merril Longmore • 2nd                                    5mo •••
Father | Husband | E-Commerce & Brand Protection Director | Inv...

What about when Amazon tells you you can't go 3p! Infuriating
when they are intentionally gaping out on products and then tell
us we can't do 3p either.

(Ex. 1,[1] https://www.linkedin.com/in/merril-longmore-87a27a55/recent-activity/comments/).[2]

This policy "infuriate[ed]" Zagg.  But, rather than follow Amazon's directions (and the law), Zagg simply created a shell entity (Screenya) in order to operate as a "3P" and avoid detection.  (*Id.* at ¶¶ 102–108).  Zagg provided Amazon with a fictitious address—Buckner's home—and began listing Zagg Products as 3P on the Amazon marketplace.  (*Id.* at ¶¶ 107–108).  Zagg used its Screenya storefront just as Amazon sought to prevent—to "bid up" retail prices for Zagg Products.  (*Id.* at ¶ 113; *see also id.* at ¶¶ 114–117 (detailing specific instances of price manipulation)).  In addition, Zagg used (and continues to use) its Screenya alter ego to dump damaged and defective merchandise on unsuspecting consumers, and unfairly compete with honest sellers, like DVG.  (*Id.* at ¶¶ 118–131).  As another example of bad faith, the products sold by Zagg (through Screenya) exhibit the same characteristics (e.g., covered barcodes and warning) that Zagg has alleged to be "trademark infringement" in countless dubious litigations, including this one.  (*Id.* at ¶¶ 132–148).

Zagg and Screenya's false complaints, price manipulation and unfair competition have caused harm to DVG, including actual and consequential damages.  (*Id.* at ¶¶ 149–162).  These activities also harm Florida residents, who are forced to pay more for consumer goods.

## III.    LEGAL STANDARDS

To withstand a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the defendants. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d

---

[1] All cited exhibits are attached to the Declaration of Mark Berkowitz in Opposition to Zagg Inc and Screenya, LLC's Motion to Dismiss submitted herewith. DE-51.

[2] Mr. Longmore's post was made in response to a video entitled "Amazon's 1P vs 3P Dilemma," which specifically cautions sellers about Amazon's policy that "if [a seller is] a 1P [it] can only be 1P," not a 3P seller. *See* https://www.youtube.com/watch?v=gQbmZZnxjdM, Tr. at 17:34–17:45.

1339, 1350 (11th Cir. 2013).  The court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendants' affidavits. *See Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1271 (11th Cir. 2022).  "[W]here the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1222 (11th Cir. 2023) (internal quotation omitted).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 1380 (quoting *Twombly*, 550 U.S. at 556).  "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Speaker*, 623 F.3d at 1380 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## IV.    ARGUMENT

### A.    The Court Has Personal Jurisdiction Over Screenya

#### 1.    Screenya Is Zagg's Alter-Ego

Without undergoing a full personal jurisdiction analysis, the Court can easily find personal jurisdiction over Screenya as an "alter ego" of Zagg (Countercl. ¶ 117)—which does not (and cannot) contest jurisdiction. "The alter ego theory of long-arm jurisdiction exists as a limited

6

exception to the general, two-step process for establishing long-arm jurisdiction." *Broward Marine, Inc. v. S/V Zeus*, No. 05-23105-CIV, 2010 WL 427496, at *6 (S.D. Fla. Feb. 1, 2010) (internal quotation omitted).  Under the alter ego theory, the complaint only must allege facts sufficient to pierce the corporate veil of the corporation subject to jurisdiction.  *See Merkin v. PCA Health Plans of Fla., Inc.*, 855 So. 2d 137, 141 (Fla. Dist. Ct. App. 2003) (explaining that the general procedure for determining long-arm jurisdiction, in which a defendant objecting to jurisdiction must file an affidavit specifically addressing the pleading's allegations, also applies to the alter ego theory).  The corporate veil may be pierced if the plaintiff can prove (i) that "the corporation is a mere instrumentality or alter ego of the defendant," and (ii) "that the defendant engaged in improper conduct in the formation or use of the corporation." *Broward*, 2010 WL 427496, at *6 (internal quotation omitted).

Application of an alter ego theory is straightforward here.  As alleged in the Counterclaims, Screenya was formed as a shell company (Countercl. ¶¶ 108, 200–202) to fraudulently manipulate Amazon's pricing algorithms without detection by Amazon (or the general public) (*id.* at ¶¶ 109–117, 204) and to dispose of damaged and defective merchandise (*id.* at ¶¶ 118–131).  As of the time that the Counterclaims were filed, Screenya listed an address of 12337 S Mason View Circle, Riverton, Utah 84065 as its place of business on the Screenya Amazon storefront.  (*Id.* at ¶¶ 3, 107).  That is the residential address of Zagg's former Tax Director, who is believed to have directed and facilitated Screenya's operation from his home.  (*Id.* at ¶¶ 4–5, 104–106).

Almost ***immediately after the Counterclaims were filed***, the business address on the Screenya Amazon storefront changed.  Rather than listing the home address of Zagg's former Tax Director in Utah, it now lists an address in the suburbs of Detroit, Michigan:



(Ex. 2, www.amazon.com/sp?ie=UTF8&seller=AJK3SJQRH914T). The address corresponds to a

location of a financial advisor company named Stout Risius Ross, LLC ("Stout"):



(Ex. 3, www.stout.com/en/locations).

   Prior to being subpoenaed in this action, **Stout had never heard of Screenya**. (*See* Ex. 4,

Stout's Resp. to Subpoena Document Request Nos. 1–2, 4–8, 12). However, upon further

investigation, Stout realized that they had recently subleased office space to **Zagg**. (*Id.*, Stout's

Resp. to Subpoena Document Request Nos. 3, 11; Ex. 5, SRR_000004, Sublease Agreement between Stout and Zagg and signed by Zagg's CEO.)  Emails produced by Stout show that Zagg's Chief Strategy Officer, Nick Fedorchak, who is based in the Detroit area, had reached out to Stout in about February 2023 to rent office space because he was transitioning to fully remote work rather than flying to Zagg's headquarters in Salt Lake City, Utah every week.  (Ex. 6, SRR_000167).  The lease was executed in about March 2023 (*see* Ex. 5), i.e., around the time that Mr. Buckner left Zagg (*see* Ex 7, LinkedIn page for Mr. Buckner).  But Zagg apparently *did not even notice* that they were still using a former employee's address for the shell Screenya storefront until DVG pointed it out in the Counterclaims.

In all events, Zagg has never disputed that Screenya is its alter ego.  Zagg originally intended to hide the existence of Screenya, *even from its own counsel*. (*See* Ex. 8 (Zagg's counsel advising on the day the Counterclaims were filed that *he had been "unaware of the Screenya entity"*) (emphasis added)).  Now that it's been caught, Zagg admits that "Screenya, LLC [is] a wholly-owned-subsidiary of ZAGG."[3]  (Ex. 9, Zagg's Resp. to DVG's Interrogatory No. 1).  Based on public records, Screenya is not registered to do business in either Utah or Michigan, i.e., the two states in which it has purported to have done business.

Since Screenya is "merely [a] 'shell corporation[]' totally controlled by" Zagg and with no separate identity, Screenya cannot "[u]tiliz[e] . . . the corporate structure" to avoid personal jurisdiction here.  *Woods v. Jorgensen*, 522 So. 2d 935, 937 (Fla. Dist. Ct. App. 1988); *Merkin*, 855 So. 2d at 141–142 (undisputed facts that the sole officer, director and shareholder of third-party defendant corporation "ran the various companies [he owns and controls] as a single

---

[3] Zagg failed to identify Screenya on its Certificate of Interested Parties (ECF No. 17), and has yet to update its Certificate.

enterprise"; "that employees of [the corporation] were paid with funds from his other corporation's accounts"; and that he used the corporation for improper purposes supported a finding of alter ego jurisdiction); *Damian v. Yellow Brick Cap. Advisers (UK) Ltd.*, No. 19-21538-CIV, 2019 WL 5887360, at \*8, \*10, \*15 (S.D. Fla. Nov. 12, 2019) (denying motion to dismiss where "Plaintiff plausibly alleges Yellow Brick US was dominated and controlled to such an extent it existed as a 'mere instrumentality' of Yellow Brick UK" and "Yellow Brick US was . . . 'used to prevent the Receiver from collecting her rightful debt'"); *APR Energy, LLC v. Pakistan Power Res., LLC*, No. 3:08-CV-961-J-25MCR, 2009 WL 10670782, at \*12 (M.D. Fla. May 21, 2009) (accepting as true plaintiff's alter ego allegations that defendant "was a mere instrumentality of" company that had consented to jurisdiction, and was used for improper conduct).

### 2.     Screenya Is Also Subject to This Court's Personal Jurisdiction Pursuant to the Conspiracy Jurisdiction Doctrine

Screenya is also subject to this Court's personal jurisdiction as an alleged co-conspirator because at least one of the other co-conspirators, Zagg, is subject to this Court's jurisdiction. "Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state." *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009); *cf. J & M Assocs., Inc. v. Romero*, 488 F. App'x 373, 375–376 (11th Cir. 2012) (affirming application of conspiracy jurisdiction under Alabama law).

"[I]f [a plaintiff] has successfully alleged that any member of [a] conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of the state of Florida through its long-arm statute[.]" *Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994).  As explained herein, to the extent that Screenya can be considered a separate entity from Zagg, it engaged in a conspiracy with Zagg, Buckner and

Longmore to fraudulently offer, and continue to offer (even after the filing of the Counterclaims), Zagg Products on Amazon listings for Zagg Products at prices materially different (whether higher or lower) than those offered by Amazon and other third-party sellers for purposes of fraudulently manipulating Amazon's pricing algorithms. *See infra* § IV.B.3. "Because the Florida market was embraced within this nationwide scheme, [Screenya] reasonably should have expected to be haled into court in this state if 'caught.'" *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 586 (Fla. 2000).

Screenya "is subject to this Court's personal jurisdiction as an alleged co-conspirator" because another co-conspirator, Zagg, is subject to this Court's jurisdiction. *Bluegreen Vacations Unlimited, Inc. v. Montgomery L. Firm LLC*, No. 19-24704-CIV, 2022 WL 17987280, at *4 (S.D. Fla. June 17, 2022).

> **3.      A Full Jurisdictional Analysis Further Confirms that Jurisdiction Is Appropriate as Screenya Has Committed a Tort Directed at a Florida Company**

Florida's long-arm statute and constitutional due process allows the Court to exercise personal jurisdiction using a traditional jurisdictional analysis as well.  Florida's long-arm statute provides that a court may exercise personal jurisdiction over any person who, *inter alia*, "[c]ommitt[ed] a tortious act within this state." or "[c]ause[d] injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: a. the defendant was engaged in solicitation or service activities within this state; or b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." Florida Stat. § 48.193(2) & (6).

As discussed above, Screenya was formed as a shell company by Zagg to act as a "shill bidder" to influence retail prices for Zagg Products in competition with 3P sellers like DVG. As

part of this association, Screenya purposefully availed itself of the privileges of selling cell phone accessories nationwide on Amazon, including in Florida (*see* Countercl. ¶ 12), and litigation against DVG in Florida was reasonably foreseeable due to DVG's residence in Florida. *See Thursday LLC v. Klhip Inc.*, No. 8:17-CV-1587-T-36AEP, 2018 WL 4216389, at *7 (M.D. Fla. Sept. 5, 2018) (denying motion to dismiss for lack of personal jurisdiction where the defendant's "repeated activities, directed specifically toward Plaintiff, were not so random that they could not anticipate being haled into court in Plaintiff's home state" and "Plaintiff felt the effects of this harm in Florida, where its business is principally located").

As noted, Screenya continued to engage in its improper activities with Zagg even after this action was initiated, with full knowledge that DVG maintained a place of business in Florida, i.e., its actions would cause injury in Florida.  And, Screenya avails itself of the privilege of doing business in Florida through the "Screenya" Amazon storefronts. (*See* Countercl. ¶¶ 118–131.); *Bluegreen Vacations*, 2022 WL 17987280, at *5 (finding personal jurisdiction where defendant "committed tortious acts that caused injury to Plaintiffs in Florida," including economic injury).

There are no special circumstances here whereby an exercise of jurisdiction over Screenya would violate traditional notions of fair play and substantial justice.  And, other than by way of conclusory and unsupported attorney argument (*see* Mot. at 13–14), "[Screenya] has not even attempted to maintain that it is burdened by litigating this case in this jurisdiction at all." *La Potencia, LLC v. Chandler*, No. 22-CV-80417-RAR, 2023 WL 1430480, at *7 (S.D. Fla. Feb. 1, 2023); (Mot. at 13–14).  Rather, it would unduly burden the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies, if DVG's dispute with Screenya had to be litigated separately from its overlapping dispute with Zagg here.  "Additionally, Florida has a very

12

strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). In sum, DVG has set forth a *prima facie* showing of personal jurisdiction, and Screenya's Motion to dismiss should be denied.

### B.    DVG's Counterclaims Are Sufficiently Pleaded

#### 1.    The Counterclaims Sufficiently State a Claim for Defamation (Counterclaim II)

Zagg asserts that DVG's claim for defamation should be dismissed. Specifically, Zagg concedes that it understands the basis for DVG's defamation claim *and* the false statements at issue—that the claim is "premised upon allegedly false takedown notices submitted to Amazon claiming that DVG's sale of ZAGG products infringed ZAGG's trademarks." (Mot. at 15). But Zagg argues that the claim fails because "DVG does not allege *how* those statements are false." (*Id.*).

As an initial matter, there is no such requirement. To withstand dismissal, a defamation claim "'does not need detailed factual allegations,' but rather must provide the general grounds for plaintiff's entitlement to relief." *SZS Sols., Inc. v. Brother Int'l Corp.*, No. 0:17-CV-61942, 2018 WL 3126220, at *2 (S.D. Fla. June 26, 2018). In *SZS*, like in this case, the "[p]laintiff allege[d] that on or about May 9, 2017, [the defendant] falsely informed Amazon through a 'take-down notice' that [p]laintiff had infringed on its intellectual property, knowing that Amazon would remove SZS listings of [defendant's] products." *Id.* at *1. The defendant argued that additional details were necessary to state a claim—the Court disagreed. *Id.* at *3 ("Plaintiff's original complaint satisfied the liberal pleading standard required by *Iqbal*: the Complaint described the allegedly defamatory statement and stated when it was communicated to Amazon by Brother.").

13

The Counterclaims here go far beyond those found to be sufficient in *SZS*.  They explain that, "[b]ecause DVG sells only genuine products through its Amazon storefront in accordance with the laws and Amazon's policies, Counterclaim-Defendants have no legitimate intellectual property claim(s) against DVG"; and "[u]nder the first sale doctrine, DVG is lawfully permitted to re-sell Zagg Products without violating the intellectual property rights or other legal rights of Counterclaim-Defendants."  (Countercl. ¶¶ 44–45). The Counterclaims then reproduce—in full—four false reports that Zagg submitted to Amazon, and provide the date of the submission, identify the speaker (Merril Longmore), and include the defamatory content.  (*Id.* at ¶¶ 58, 66, 76, 86).  In several of these reports, Zagg further (falsely) stated to Amazon that "The product we received is the wrong product . . . ."  (*Id.* at ¶¶ 66, 76, 86).  In this regard, the Counterclaims explain that Zagg actually conducted a test purchase (i.e., held the products in their hands), were able to confirm that the product matched the listing, and yet proceeded to file the false reports.  (*See, e.g., id.* at ¶ 70 ("Zagg and Longmore's allegation that the above Zagg Product sold by DVG was "the wrong product" was knowingly false and made in bad faith.")).  The defamation claim is more than adequately pleaded.

### 2.   The Counterclaims Sufficiently State a Claim for False Advertising (Counterclaim III)

Zagg raises two arguments with respect to DVG's counterclaim for false advertising under the Lanham Act.  First, Zagg repeats the above argument that DVG has not alleged why the take-down notices to Amazon were "false." (Mot. at 15).  This argument fails for the same reasons discussed—Zagg is just burying its head in the sand.

Second, Zagg argues that the false reports it submitted to Amazon were not statements made in "commercial advertising or promotion," as required by the Lanham Act.  Rather, Zagg contends that "the takedown notices were submitted directly and privately to Amazon, not

disseminated to the public[.]" (*Id.* at 16).  These ***factual*** arguments are directly contrary to the allegations in the Counterclaims, namely, that: Zagg "made . . . false and disparaging statements in commercial promotion of Zagg's own product, in direct competition with DVG's product, in an effort to drive sales away from DVG and toward Zagg"; "[t]hese statements . . . are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing" that the Zagg Products infringed Zagg's trademark rights, "thereby materially effecting their decision and ability to purchase DVG's products"; and the false "representations had a material effect on DVG's customers' and prospective customers' decisions to do business with DVG because as a result of Counterclaim-Defendants' notices, Amazon has replaced customer visibility of products offered by DVG with those offered by Zagg[] . . . ." (Countercl. ¶¶ 184–189).

In fact, Judge Huck recently rejected the exact same argument presented by Zagg here— that representations made to Amazon do not constitute "commercial advertising." *See Verbena Prod. LLC v. BeSweet Creations Inc.*, No. 21-CV-23797-PCH, 2022 WL 18864660, at *5 (S.D. Fla. Feb. 16, 2022).  This is because the statements deceive ***both*** Amazon and users of the Amazon marketplace:

> The Court notes . . . that the Amended Complaint contains allegations—which, of course, must be taken as true at this stage of the proceedings—indicating that the report Defendants sent to Amazon constitute commercial advertising. For example, Beautyvice alleges that Defendants' statements deceived Amazon and "are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Plaintiff's products are counterfeit." Beautyvice further alleges that the statements were made "in commercial promotion of Sugar Bear's own product, in direct competition with Plaintiff's product, in an effort to drive sales away from Plaintiff and toward Sugar Bear." Despite Defendants' contentions, Beautyvice has adequately stated a claim for violation of the false advertising provision of the Lanham Act.

*Id.* (internal citations and quotations omitted).  Zagg's attempt to introduce unsupported (and erroneous) facts is improper, particularly given that summary judgment motions are due in just six weeks.  *See Hirsch v. Sal's Towing, Inc.*, No. 10-62336-CIV, 2011 WL 13217064, at *2 (S.D. Fla.

15

Feb. 2, 2011) ("The Court is not inclined to evaluate factual assertions outside of the four corners of the complaint when considering a motion to dismiss, making the issue more appropriate for summary judgment or trial."). The sole decision cited by Zagg was rendered *after* summary judgment, and noted that the issue of whether certain statements "were disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion'" were "heavily contested" issues of fact. *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1287 (M.D. Fla. 2011) (cited by Mot. at 16).

### 3. The Counterclaims Sufficiently State a Claim for Civil Conspiracy (Counterclaim IV)

Zagg asserts that DVG's civil conspiracy claim should be dismissed because "DVG has not alleged anything beyond the mere existence of the Screenya Amazon seller account and its listed business address . . . ." (Mot. at 17–18). This is obviously not true. The 225-paragraph Counterclaims explain in painstaking detail: (1) *who* formed the conspiracy (i.e., Zagg, Screenya, Longmore and Buckner) (Countercl. ¶¶ 21–22, 199–200, 203); (2) *when* the conspiracy was formed (i.e., May 2022) (*id.* at ¶¶ 103–107); (3) *why* the conspiracy was formed (e.g., to avoid Amazon's prohibition on the operation of a third-party selling account and manipulate Amazon's pricing algorithms) (*id.* at ¶¶ 95–101, 110–112, 205–206); (4) *how* the conspiracy was formed (e.g., by creating a fictious entity in Delaware and using Buckner's home address) (*id.* at ¶¶ 102–108, 201–202); (5) *how* the unlawful scheme operates (*id.* at ¶¶ 113–117 (detailing specific incidents of price manipulation); *see also id.* at ¶ 204 ("[u]sing their shell company, Counterclaim-Defendants fraudulently offered, and continue to offer, Zagg Products on Amazon listings for Zagg Products at prices materially different (whether higher or lower) than those offered by Amazon and other third-party sellers for purposes of fraudulently manipulating Amazon's pricing algorithms")).

Zagg's (and its co-conspirators') manipulation of Amazon's pricing algorithms is analogous to a "shill bidding" scheme, a form of wire fraud.[4] The elements of a civil conspiracy claim are adequately pled. *See City of Miami v. Eli Lilly & Co.*, No. 21-22636-CIV, 2022 WL 198028, at *10 (S.D. Fla. Jan. 21, 2022) (denying motion to dismiss civil conspiracy claim) ("To state a claim for civil conspiracy, a plaintiff must allege (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy.") (internal quotation omitted).

### 4.    The Counterclaims Sufficiently State a Claim Under the FDUTPA (Counterclaim V)

Zagg asserts that DVG's FDUTPA claim should be dismissed because "[DVG] has not alleged that the offending conduct took place in Florida" and the "FDUTPA applies to non-Florida residents only if the offending conduct took place predominantly or entirely in Florida." (Mot. at 18). Zagg is wrong. First of all, contrary to Zagg's arguments, the Counterclaims do allege that "a substantial part of [Counter-Defendants' conspiracy] occurred within Florida"; that Counter-Defendants attempted to "fix[] or maintain[] prices in Florida"; and Counter-Defendants' "unlawful conduct substantially affected Florida's trade and commerce." (Countercl. ¶¶ 220–223).

Second, DVG is a Florida resident (Countercl. ¶ 1), but Zagg purports to state the standard that would apply to "non-Florida residents." *See Bank of Am., N.A. v. Zaskey*, No. 9:15-CV-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016) (denying portion of motion to dismiss based on fact that Wisconsin-based counterclaim-plaintiffs lived outside of Florida because accused defendant was based in Florida); *Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 WL 1288146, at

---

[4] "Shill bidding" is when sellers—or their agents—place fake bids on their own auctions to inflate the price of the product and cause legitimate bidders to pay more for an item than they otherwise would have.

*1, *6 (S.D. Fla. Mar. 20, 2015) (claim brought by Canadian resident concerning the purchase of a yacht in Canada) (cited by Mot. at 18).

Moreover, the Supreme Court of Florida has confirmed that the type of activity that is at issue here is the proper subject of a FDUTPA claim:

> Execu-Tech alleged that New Oji and other major manufacturers and trading houses of thermal fax paper deliberately conspired to fix the wholesale price of their product throughout the United States, including Florida. This conduct constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act (the "Act"), which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

*Execu-Tech*, 752 So. 2d at 585.  The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).  The Florida Supreme Court explained in denying a motion to dismiss in the *Execu-Tech* case that "[a]s long as New Oji and the other conspirators sought to use the benefits afforded by Florida law to participate in (and profit from) the thermal fax paper market in this state, then they should have been prepared to follow Florida law governing their price-setting activities."  *Execu-Tech*, 752 So. 2d at 586.  The same logic applies here and Counter-Defendants' attempt to escape liability under Florida law should be rejected.

### 5.    To The Extent the Court Is Inclined to Grant Counter-Defendants' Motion, DVG Should Be Granted Leave to Amend the Counterclaims

As discussed above, Counter-Defendants' Motion ignores the detailed allegations in the Counterclaims that establish personal jurisdiction over Screenya and that go far beyond the requirements of notice pleading. Nonetheless, to the extent that the Court is inclined to grant any portions of Counter-Defendants' Motion, Plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## V.    CONCLUSION

For the foregoing reasons, Counter-Defendants' Motion should be denied.


June 9, 2023

Respectfully submitted,

By:  */s/ Geoffrey M. Cahen*
     Geoffrey M. Cahen
     Florida Bar No. 0013319
     CAHEN LAW, P.A.
     1900 Glades Road, Suite 270
     Boca Raton, Florida 33431
     Tel. No.: (561) 922-0430
     Geoff@cahenlaw.com

     Mark Berkowitz (*Pro Hac Vice*)
     TARTER KRINSKY & DROGIN LLP
     1350 Broadway
     New York, NY  10018
     Tel. No: (212) 216-8000
     mberkowitz@tarterkrinsky.com


     *Attorney for Defendants*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

electronically filed, this **9th day of June, 2023**, to:

*Counsel for Plaintiff*

Mallory Meagan Cooney
KandL Gates
200 South Biscayne Boulevard
Suite 3900
Miami, FL 33131-2399
3055393342
Fax: 3053587095
Email: mallory.cooney@klgates.com

Jack S. Brodsky
K&L Gates, LLP
State Street Building
One Lincoln Street
Boston, MA 02110
(617) 261-3100
Email: jack.brodsky@klgates.com

Morgan T. Nickerson
K&L Gates LLP
State Street Financial Center, One Lincoln Street
Boston, MA 02111
617.261.3134
Email: morgan.nickerson@klgates.com

By: */s/ Geoffrey M. Cahen*