# **Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

ZAGG INC,            Case No.: 1:23-cv-20304-RKA

      Plaintiff,

v.

MENACHEM MENDEL ICHILEVICI;
TX TRADING INC.;
DVG TRADE LLC; and

      Defendants.
_____/

DVG TRADE LLC,

      Counterclaim-Plaintiff,

v.

ZAGG INC., SCREENYA, LLC,
MERRIL LONGMORE, and
BRENDAN BUCKNER,

      Counterclaim-Defendants.
_____/

**REBUTTAL EXPERT REPORT OF RACHEL JOHNSON GREER**

1

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), the following is my written Report detailing the subject matter and my opinions on issues regarding Amazon.com's ("Amazon") practices and procedures, submitted on behalf of Defendant and Counterclaim-Plaintiff DVG Trade LLC ("DVG").

I.  BACKGROUND INFORMATION

    A.  Professional Background and Qualifications

    1.  I was employed by Amazon.com for 8 years in a variety of roles. These included:

        a) working in the Transaction Risk group, which included working with law enforcement to investigate customer and seller fraud and abuse;

        b) working in the Transportation group, during which I investigated sellers and vendors for safety and intellectual property infringement;

        c) working in the Private Brand team, where I managed quality & compliance for Amazon's own brands;

        d) working in Imports, where I managed the legal compliance of all global imports; and

        e) working in Website Availability, ensuring that the system and software running the Amazon websites globally had sufficient computing capacity.

    2.  I currently own and operate a consulting agency for Amazon sellers, called Azama. With Azama, my practice includes:

        a) providing advisory services for both 1P sellers (selling to Amazon directly) and 3P sellers (selling on the Amazon Marketplace);

        b) providing growth marketing strategies to brands or brand representatives on Amazon;

2

DocuSign Envelope ID: 8F220373-50DF-4649-882C-8F31D7C7F3E9

    c) providing compliance guidance to Amazon sellers regarding Product Policy, Fulfilment by Amazon ("FBA") compliance, Amazon's intellectual property policies, and other Seller Performance issues;

    d) providing advisory services on meeting Amazon and regulatory product compliance requirements for consumer goods; and

    e) running my own Amazon selling account on which I sell both my own branded products and third-party products; I am also a brand representative in Brand Registry for multiple brands.

3. A copy of my *curriculum vitae* is attached as Exhibit A.

4. A list of the publications I have authored in the previous 10 years is included in my *curriculum vitae*.

5. During the previous 4 years, I have not testified as an expert at trial. I have been deposed once in the previous 4 years in *Bold Home Products, LLC et al. v. CarbonKlean, LLC et al.*, Case No. 2:20-cv-4020 in the United States District Court for the Southern District of Ohio.

    B. Scope of the Assignment

6. I have been retained by DVG to provide rebuttal testimony with respect to Amazon's practices and procedures, particularly with respect to Amazon's condition guidelines.

    C. Compensation

7. I am being compensated by DVG for this case at my usual rate of $450.00 per hour. My compensation is not contingent on my testimony or the results of this case.

    D. Data and Other Information Considered

8. My opinions in this case are based on my experience working at Amazon and in my Amazon consulting business, Amazon policy documents, publicly available listings of

3

ZAGG products on Amazon.com, and my review of certain documents provided to me by DVG, including:

    a)  The March 31, 2023 Second Amended Complaint ("Complaint") filed by Zagg Inc. ("Zagg"); and

    b)  The May 4, 2023 Answer to Second Amended Complaint, Affirmative Defenses and Counterclaims filed by DVG ("Answer").

E.    <u>Terminology</u>

9.    I have used certain terminology throughout my Report. Below are basic definitions of these terms:

    a)  ASIN: An Amazon Standard Identification Number corresponding to one individual item in the Amazon catalog.

    b)  Brand Registry: Amazon's tool to demonstrate the relationship between the owner of the brand with the United States Patent and Trademark Office and the rights on Amazon. The tool can have one or more authorized users, including: an Administrator (someone who can manage the account), the Rights Owner (someone with rights to represent the brand who is functionally considered part of the brand ownership structure), or a Registered Agent (someone with the right to issue complaints about intellectual property violations).

    c)  Listing: A Seller's offer on the SDP (defined below). Many sellers can list on a single ASIN.

    d)  Marketplace: A software platform that can be used by a variety of businesses to access customers who traffic that website to shop for goods.

    e) Seller Storefront: A collection of webpages that contain an Amazon Seller's list of products, their business information, and their ratings information.

    f) SDP: Single Detail Page, or the dedicated sales page for any given ASIN or group of ASINs (such as sizes and colors of shoes, known as "variations").

II.     ANALYSIS AND OPINIONS CONCERNING ZAGG'S CLAIMS

10.     I understand that Zagg's Complaint alleges that DVG and the other named defendants (collectively, "Defendants") have violated federal and state trademark and unfair competition laws by selling Zagg-brand products ("Zagg Products") on Amazon.

11.     In this regard, I note that the Complaint relies on a misinterpretation of language in an outdated Amazon policy to support Zagg's claims against DVG.

12.     I also note that Zagg, as a rights owner on Amazon, holds the obligation to abide by the Amazon policies to which it agreed when it became an Amazon vendor and enrolled in Brand Registry, including its use of Amazon's intellectual property enforcement tools.

    A.     Zagg's Allegations Regarding Amazon's Condition Guidelines

13.     Based on my review of the Complaint, it is my understanding that Zagg alleges that Defendants cannot sell Zagg Products as "New" on Amazon unless the products carry the manufacturer's warranty. Zagg's position is incorrect and not based on how Amazon has consistently defined "New," both in published policies and in practice.

14.     Zagg's position is explained in Paragraphs 47-50 of its Complaint:

5

47. Amazon's announced Terms and Conditions[4] require that "new" products carry the manufacturer's warranty:

> **General condition guidelines**
>
> The following guidelines apply to all product categories unless otherwise indicated in the Category-Specific Condition Guidelines listed below:
>
> **New:**
>
> Just like it sounds. A brand-new item. Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments. Original packaging is present for most New items but certain items like shoes may be re-boxed.

48. Because Defendants are not authorized to sell ZAGG Products, the ZAGG Warranty excludes products sold by Defendants. The ZAGG Products offered for sale and sold by Defendants are not covered—and cannot be covered—by the ZAGG Warranty.

49. Pursuant to its terms, the ZAGG Warranty "do[es] not apply to products purchased from unauthorized resellers" and notes that "[m]any resellers who sell through Amazon, eBay, social media platforms or other online sites are not authorized retailers or resellers of ZAGG products."

50. Because Defendants' ZAGG Products are not covered by the ZAGG Warranty, the ZAGG Products advertised and offered for sale by Defendants are not in "new" condition pursuant to Amazon's Terms and Conditions, as advertised.

(Complaint ¶¶47-50).

15. As discussed below, Zagg's reliance on, and interpretation of, the above "General condition guidelines" ("Condition Guidelines") is wrong.

i. <u>Zagg Is Relying on Irrelevant Language in Outdated Condition Guidelines</u>

16. By way of background, Amazon's process for changing and updating policies, guidelines and other seller documents on the Amazon Marketplace is a multi-step process that requires internal tickets and up to six approvals depending on which team is attempting to

6

change the seller-facing guidance. As a result, Amazon policies and guidelines are often contradictory or outdated. That is the case here.

17. As can be seen, in Paragraph 47 of the Complaint, Zagg reproduces a portion of the Condition Guidelines relating to "new" products. But Zagg only focuses on *a portion* of the sentence discussing warranties. Zagg does not address the remainder of the sentence, which explains that the manufacturer's warranty is only relevant *if* there are **"warranty details included in the listing comments."**

18. The term "listing comments" is critical and ignored by Zagg.

19. By way of background, up until February 2017, Amazon allowed sellers to provide "listing comments" when listing products under *any* condition (e.g., "new", "used-like new"). This was to mimic the longstanding practice of allowing sellers to provide condition notes on eBay, Amazon's top competitor when the Amazon Marketplace was originally created.

20. Until February 2017, Amazon would provide a field in which the seller could add additional comments, beyond the general category, at the time of listing creation. For example, a seller could note a product's remaining shelf life, unique packaging, etc. Amazon still includes a listing comment (i.e., "Item will come in original packaging") on items listed in other conditions. An example is shown below:

| Used - Like New | | |
|---|---|---|
| $15⁹⁰ | FREE delivery **Monday, July 3** on orders shipped by Amazon over $25 … More | Add to Cart |
| Condition | Item will come in original packaging. | |
| Ships from | Amazon.com | |
| Sold by | Amazon Warehouse | |

(Exhibit B (printout of: https://www.amazon.com/ZAGG-InvisibleShield-Glass-Elite-VisionGuard/dp/B09C6QP7JS) (accessed June 27, 2023)).

7

21. However, Amazon found that these comments, particularly with respect to items classified as "New," were being misused by sellers (e.g., by offering the products outside of Amazon or providing information critical to the product that would have gotten it restricted, such as "authentic recalled product").

22. As such, in approximately February 2017, Amazon stopped accepting or displaying "condition comments" for "new" products on the Marketplace:

> Condition notes are no longer accepted for new products
> 2 Feb 2017
>
> Effective 22 February 2017, the Condition Note attribute will be disabled for all new products. If you do have new products listed with condition notes, the condition notes will be removed from the offer listing page. You can still continue to use the Condition Note attribute for all other product conditions.

(Exhibit C (printout of : https://www.marketplacepulse.com/articles/amazon-got-the-scam-sellers-issue-under-control) (accessed June 27, 2023); *see also* Exhibit D (printout of https://reviewed.usatoday.com/laptops/features/amazon-is-finally-cracking-down-on-this-devilish-scam) (accessed June 27, 2023)).

23. With the foregoing understanding of listing comments, it is readily understood that the Condition Guidelines relied on by Zagg merely stated that details regarding a manufacturer's warranty (e.g., whether it was provided all, what the term was) ***could*** be placed in the comments. Even at that time (i.e., prior to February 2017), there was absolutely no requirement that a manufacturer's warranty be included in order to sell a product as "New."

24. Once Amazon disabled condition comments/notes in 2017, the warranty language relied upon by Zagg became irrelevant.

25. The Condition Guidelines are still available on "Seller Central", the web portal used by Amazon sellers. An Amazon seller account is necessary to access these Guidelines.

8

26. Notably, Amazon has removed the above Condition Guidelines from public-facing webpages because they are old, outdated and confusing. As of the date of this Report Amazon's "Marketplace Items Condition Guidelines," previously available at https://www.amazon.com/gp/help/customer/display.html?nodeId=201889720 (Exhibit E), now leads to a blank page.

27. A more applicable description of what is required in order to list products as "new", can be found in the FBA Guidelines[1], which explains:

### Products listed as new

- Items listed as new must be in brand-new, unused condition.
- Items listed as new will be inspected and marked as unsellable if there are scratches, scuffs, dents, wear, creases, tears, or other damage beyond what is considered acceptable for a new item.

28. The guidelines for selling products as "new" through Amazon's FBA service—where Amazon handles the storage, picking, packing and shipping of orders—are used by the Product Policy team when reviewing complaints from customers (e.g., where a seller is alleged to have sold as "used" product as "new"). In practice Amazon sellers rely heavily on FBA guidance because it is consistently enforced by Amazon.

29. As noted, although it can be a lengthy process, Amazon regularly reworks its policies. It is well-known that Amazon is currently in the process of updating its Condition Guidelines. About two months ago, Amazon posted a revised version of the guidelines in the discussion forums on Seller Central.[2]

---

[1] Exhibit F (printout of: https://sellercentral.amazon.com/help/hub/reference/G201147390). (accessed June 27, 2023).
[2] Exhibit G (printout of: https://sellercentral.amazon.com/seller-forums/discussions/t/51acb36d-7bed-40a3-9b23-3fbdbcc0ac6a) (accessed June 27, 2023).

9

30.     Notably, the long-defunct warranty language that Zagg relies upon has been completely eliminated:



31.     As can be seen, Amazon has significantly simplified its definition of "New" to make it consistent with current practices and common-sense.

32.     Based on my experience at Amazon and in providing consulting services to Amazon sellers, it has always been understood that a "new" item is simply one that is brand-new and unused, free of blemishes, smudges or dirt, and in the original packaging. This is confirmed by other Amazon policy documents as noted above.

33.     Neither a manufacturer's warranty or brand authorization has ever been a requirement to list an item as "New" on Amazon.

34.     In Paragraph 45 of its Complaint, Zagg claimed that DVG shipped used items to Amazon, as evidenced by the products they received being lightly damaged. Upon receipt at Amazon, products are physically inspected by an Amazon employee. If they are perceived to be "used," but listed as "new," Amazon employees are required to "sideline" the shipment while the

10

seller is contacted. In other words, a "Used" product would not be accepted into Amazon's facilities as "New".

35. In addition, Amazon's facilities are notoriously hard on packaging. When I was an AmazonBasics manager in 2012-2014, I calculated 11 touch points where a package could be damaged by Amazon's or a shipping carrier's systems from the time that an AmazonBasics product arrived at Amazon's facilities until it reached the customer. Based on DVG's ability to sell the item to Zagg as "New," it is therefore reasonable to assume that any packaging damage to the test buy product occurred during transit to Zagg.

36. As such, assuming that the products shipped by DVG to Amazon are physically in "new" condition, they are properly listed as being in "new" condition on Amazon.

ii. <u>Zagg's Contention Runs Counter to Amazon's Goals of Encouraging Competition</u>

37. Following Zagg's reading of the Condition Guidelines, only third-party sellers authorized by Zagg would be able to list products on Amazon as "new."

38. Zagg's position runs counter to Amazon's "mission … to provide our customers with the largest selection, at the lowest price…."[3]

39. Amazon makes clear that it does not support the enforcement of authorization and exclusive distribution arrangements, nor do they enforce UPC ownership:[4]

> **Exclusive Distribution (except in China, France, and the United Arab Emirates)** – Amazon does not enforce exclusive distribution rights except within the countries that have laws specifically referring to selective or exclusive distribution.

---

[3] Exhibit H (printout of: https://sellercentral.amazon.com/help/hub/reference/external/G5TUVJKZHUVMN77V) (accessed June 27, 2023).

[4] Exhibit I (printout of: https://sellercentral.amazon.com/help/hub/reference/GU5SQCEKADDAQRLZ (accessed June 27, 2023).

11

**Parallel Import or Warranty claims (except where applicable in the EU, Brazil, or Turkey):** Amazon only accepts parallel import claims as it conforms to each marketplace's governing laws. For example, if a Rights Owner can legally claim rights on imports into the EU, those same rights will not extend to the US market. Warranty claims will only be evaluated when the Rights Owner has a valid Parallel Import claim.

**Barcode Ownership:** Amazon does not enforce ownership over barcode, UPC, or EAN.

40. Accordingly, it is my opinion that Zagg's conclusion—that Defendants cannot list Zagg Products as being in "New" condition—is based on an incorrect interpretation of Amazon's policies that is not used by Amazon in practice.

    iii. <u>Zagg's Contention Is Not Supported by My Experience Addressing Intellectual Property and Condition Issues with Amazon</u>

41. An Amazon Seller Storefront as shown in the Amazon Marketplace can be likened to a stall at a flea market or a kiosk in the mall. The owner of the stall or kiosk owns their goods and handles all of the transactions and fees and taxes associated with the sales, but they lease space from the owner of the market or mall. Amazon charges 15% per sale for most transactions for their fee to facilitate the transactions.

42. Rather than paying for placement directly (although you can pay for better placement via advertising), Amazon prioritizes sellers with good performance metrics, popular products, and longevity on the Marketplace. These types of sellers are the most likely to have shipping times, pages, and ratings that encourage customers to choose to buy from them. This is basically the concept of reputation—that the better the reputation of the seller is, the better placement and sales they end up getting. So rather than paying for the kiosk next to the food court, Amazon uses computer algorithms to determine which seller is best positioned to make good use of the food court spot, and gives it to them automatically.

12

43. To view more information about a seller, a customer can click on the seller name under "Sold by" on the Amazon SDP. This then takes them to a "Seller Storefront." The seller storefront includes the name and address of the seller, whatever biographical information they've provided, and it includes their seller feedback rating. On another link from the seller storefront, a customer can see all of the other items that a seller offers as well. A seller storefront on Amazon is simply a page that is the digital equivalent of walking into the seller's digital shop, but with the convenience of knowing what previous customers had to say about that seller's performance.

44. This makes the process of determining who owns the "buy box" or the orange "Add to Cart" button absolutely critical. Normally, the ownership of the buy box is rotated through all eligible sellers with similar product features (using fulfilled by Amazon, same price, same condition, and so on), with the only prioritization being given, all other features of the product being equal, to the history and score value of the seller.

45. A long-term seller, with a good seller feedback rating going back several years, will get more of the buy box than a new seller with limited or short term feedback, even if the feedback is quite good. The "Mac N' Cheese" seller,[5] which I understand to be operated by DVG, has a rating of 99% positive over 1,618 lifetime ratings, meaning it will beat any new account, and in fact most other seller accounts on Amazon, as long as other internal metrics are also in good standing. If internal metrics are damaged, then they will receive a lower percentage of buy box selling opportunities.

46. Access to this Marketplace is absolutely critical for any online seller. In my experience, most of our clients have about 70-80% of their sales coming through the Amazon

---

[5] Exhibit J (printout of: https://www.amazon.com/sp?ie=UTF8&seller=A2HKJDSYFUXLQL) (accessed June 27, 2023)

13

channel, even those with tens of thousands of units sold in other marketplaces or on their own website. Amazon is such a significant player in the industry that it's simply not possible to ignore being on Amazon.

47. Harming a seller's "Account Health" rating has significant consequences for their ability to win the Buy Box. The less they win they buy box, the less they will be able to sell.

48. A seller whose Account Health rating is damaged through intellectual property infringement claims will win the buy box less.

49. In this regard, Amazon allows brand owners and customers to levy complaints in a variety of ways that would result in an investigation by an Amazon enforcement team.

50. Amazon cares about maintaining a healthy marketplace trusted by customers. Their concern is primarily about counterfeit goods, not gray market or unauthorized distribution of authentic goods. The features in Brand Registry for use by brands reflect this purpose.

51. Notably, Amazon is not in the business of adjudicating disputes regarding intellectual property. Amazon's policy is to accept the complaint from a registered brand owner and take down the seller's Listing pending a response from the seller in question. If a registered brand owner abuses the complaint process, they can have their ability to submit infringement complaints taken away.

52. A response is called an "appeal." An appeal of an intellectual property infringement complaint may include an invoice or valid "Order ID." Order ID refers to if a seller bought an item off of Amazon. Amazon provides invoices to companies that buy products from their site, and they offer the ability to buy as a business, either for procurement or resale. Please see below an example of a recent order I made on my personal Amazon customer account. Note the top right where it says, "View Invoice." If you click on View Invoice, you go to a page that

14

has the supplier name (Amazon.com), the condition ("New"), where it was shipped, the name of the product, and how many units were sold. At the bottom of the invoice is the payment method.



53. Amazon accepts these "Invoices" as proof of authenticity in connection with an appeal. Amazon also accepts these Invoices as proof that an item is in "New" condition in an investigation.

54. My clients have also regularly submitted store receipts, from Wal-Mart, Target, Best Buy, and more, to prove that they bought an item is authentic and in "New" condition.

55. In sum, Zagg's contention that DVG violated Amazon's policies does not align with how Amazon interprets or enforces infringement and condition issues on its own site.

B.   Zagg's Allegations Regarding Product Stickers

56. In reviewing the Complaint, I further noted that Zagg alleges that Defendants have placed a sticker on the back of Zagg Products (to cover the barcode) or otherwise placed a marking over a barcode:

15

54. Purchases of ZAGG Products made from Defendants revealed that Defendants covered and damaged the serial numbers on the product packaging. For example:



56. Another example is depicted below:



(Complaint ¶¶ 54, 56).

57. By way of background, a seller on Amazon either has the option to (1) commingle their goods; or (2) "sticker" their goods, or Amazon may force them to "sticker" their goods.

58. If the seller has elected not to "commingle" its goods or Amazon has forced them to use FBA barcodes, the inventory will not be mixed with other sellers' FBA inventory of the

16

same item and chain of custody can be managed by sellers as Amazon's system is able to track ownership from Receive to outbound shipping. If commingling is permitted and selected, the products are sorted in the fulfillment centers by Amazon using the manufacturer's UPC printed on the packaging and chain of custody is not preserved if there is more than one seller.

59. Most Amazon sellers do not want to commingle their goods, but prefer to keep their inventory separated from that of other sellers. FBA goods that are not commingled have a Fulfillment Network Stock Keeping Unit ("FNSKU") label that was applied by the seller (or by Amazon itself) to the product packaging and that is unique to the seller. This allows both Amazon and the seller to be confident that the item a customer bought from the seller was actually the item shipped in by the seller.

60. The FNSKU sticker is being shown in the first photograph above (in the excerpt of Paragraph 54 of the Complaint)—referred to as "Defendant's Label." This sticker is required by Amazon and must cover the existing barcode on the product packaging.

61. Furthermore, Amazon's FBA rules require that all extraneous barcodes be covered or disabled such that they cannot be inadvertently read during processing. Amazon employees have limited time to scan barcodes and multiple barcodes means wasted time. Any product with both a UPC and FNSKU sticker plainly visible upon Receive would be sidelined and sent to Prep to be manually labeled by Amazon and the UPC covered over by an Amazon employee before it can even be received into the fulfillment center, at the seller's expense.

62. Based on the Answer I was provided for review, it appears that the Amazon seller account associated with Zagg also places FNSKU stickers on many of its products and covers extraneous barcodes for shipment to FBA, as required by Amazon policy:

17



**Zagg Sells Products on Amazon with Covered Proposition 65 Warning Labels**



(Answer ¶¶ 141, 144).

63. Accordingly, it is my opinion that Defendants' stickering of Zagg Products comports with Amazon's policies, as does the marking over the barcode on the lower left of the package above.

III. CONCLUSION

64. As demonstrated above, Zagg's assertion that only those sellers that offer a "manufacturer's warranty" can list products as "New" on Amazon is incorrect. As discussed, it is based on outdated Condition Guidelines, rather than the relevant policies and Amazon's actual practices.

18

65.     Amazon's Marketplace is deliberately set up to provide third party sellers the opportunity to sell on a "Single Detail Page" shared by all sellers of the same product. DVG used that correct page, and did not make any duplicate ASINs (an Amazon violation), or list on previously created duplicate ASINs, and therefore followed Amazon policy correctly.

Dated: June 27, 2023
       Seattle, WA

                                                        RACHEL JOHNSON GREER