UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20304-ALTMAN/Reid

ZAGG INC.,

      *Plaintiff,*

*v.*

TX TRADING, INC., *d/b/a* AMAZON
RESELLER MAC N CHEESE, *et al.,*

      *Defendants.*

_____/

## ORDER ON OBJECTIONS TO MAGISTRATE
## JUDGE'S NON-DISPOSITIVE ORDER

One of our Defendants, DVG Trade LLC ("DVG"), has filed Objections [ECF No. 145] to

Magistrate Judge Reid's November 14, 2023 Order, which (1) denied DVG's Motion to Compel and

(2) granted the Plaintiff ZAGG Inc.'s *Ore Tenus* Motion to Quash subpoenas to third parties (the

"November 14 Order") [ECF No. 132]. Because DVG hasn't shown that Judge Reid committed any

clear errors of law or fact, we **OVERRULE** its Objections.

### THE LAW

"Pursuant to the Federal Magistrate's Act, a district court reviews a magistrate judge's ruling

on non-dispositive matters under the clearly-erroneous or contrary-to-law standard." *Jordan v. Comm'r,*

*Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) (citing 28 U.S.C. § 636(b)(1)(A)); *see also* FED.

R. CIV. P. 72(a) ("When a pretrial matter not dispositive of a party's claim or defense is referred to a

magistrate judge to hear and decide . . . [t]he district judge in the case must consider timely objections

and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). And "a

routine pretrial discovery motion . . . is not included in [28 U.S.C. § 636(b)(1)(A)'s] list of dispositive

motions." *Jordan*, 947 F.3d at 1327; *see also Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*

*ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1286 (11th Cir. 2003) ("We review the district court's rulings on discovery issues for abuse of discretion.").

This is an "exacting standard." *Cox Enters., Inc. v. News-J. Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Id.* at 1272 n.92 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). "In the absence of a legal error, a district court may reverse only if there was an 'abuse of discretion' by the magistrate judge." *S.E.C. v. Merkin*, 283 F.R.D. 699, 700 (S.D. Fla. 2012) (Graham, J.) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990)). "A magistrate judge's order is 'contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bradford Emergency Grp., LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2022 WL 4545177, at *1 (S.D. Fla. Sept. 29, 2022) (Singhal, J.) (quoting *Pigott v. Sanibel Dev., LLC*, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008)).

## BACKGROUND

On March 31, 2023, ZAGG Inc. ("ZAGG") filed its Second Amended Complaint against the Defendants, asserting claims of "trademark counterfeiting and infringement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*" Second Amended Complaint (the "SAC") [ECF No. 26] ¶ 1. ZAGG is a manufacturer and seller of "screen protectors, power management solutions, mobile keyboards, cases, and personal audio products." *Id.* ¶ 11. ZAGG seeks injunctive and monetary relief from the Defendants (Menachem Mendel Ichilevici, TX Trading Inc., and DVG), who sell ZAGG products "to customers within the State of Florida and this District through various online commerce sites, including, but not limited to, Amazon.com." *Id.* ¶¶ 12–14.

According to ZAGG, the Defendants "represent that the ZAGG Products they offer for sale on the Internet are 'new,' yet the products actually sold by Defendants and received by consumers are

in 'used,' rather than 'new,' condition" under Amazon's definitions[1] of those terms. *Id.* ¶¶ 43, 47.

Specifically, ZAGG alleges that the Defendants are buying used ZAGG products "at liquidation,"

meaning that the products "have been purchased and sold once previously, are often used and/or

returned products, and may be in damaged condition[.]" *Id.* ¶ 44. Since these liquidated ZAGG

products aren't "new," and "[b]ecause Defendants are not authorized to sell ZAGG Products[,] . . . .

[t]he ZAGG Products offered for sale and sold by Defendants are not covered—and cannot be

covered—by the ZAGG [Manufacturer's] Warranty." *Id.* ¶¶ 47–48. The Defendants are thus "falsely

advertis[ing] the ZAGG Products they offer for sale to consumers as 'new,' when they are not,"

because "Amazon.com's Terms and Conditions require that products advertised as 'new' carry the

manufacturer's warranty." *Id.* ¶ 4. ZAGG also alleges that DVG "intentionally cover[s] and/or

damage[s]" the serial numbers on used ZAGG products "[i]n an effort to hide Defendants' nefarious

acts[.]" *Id.* ¶ 52. ZAGG adds that the "Defendants' resale of ZAGG Products with serial numbers

and warning labels intentionally covered and mutilated product packaging results in a poor brand

experience and harms ZAGG's reputation as customers likely believe that it is ZAGG that caused this

harm to the product packaging." *Id.* ¶ 67.

DVG tells a very different story. In its view, ZAGG's "true motivation" in bringing this "sham

litigation" is to "eliminate smaller sellers of Zagg Products" and to "chas[e] off independent

merchants, like DVG, [so that] Zagg can maintain inflated retail prices and avoid refunding money to

retailers." Objections at 5–6. DVG therefore counterclaims "for: (1) a declaratory judgment of non-

infringement; (2) defamation; (3) false or misleading representation, unfair competition, and product

disparagement pursuant to 15 U.S.C. § 1125; (4) civil conspiracy; and (5) violations of the Florida

---

[1] This seemingly minor point—that the critical allegation in our case is about *Amazon's* definition of what constitutes a "new" product for items that are sold on *Amazon's* website—lies at the heart of this Order.

Deceptive & Unfair Trade Practices Act ('FDUTPA')." *Id.* at 7; *see also* Defendants' Answer to Second Amended Complaint, Affirmative Defenses, and Counterclaims (the "Counterclaims") [ECF No. 41] at 13–55.

On October 27, 2023, DVG moved to compel ZAGG to "produce its agreements with its retailers . . . . including the mobile carriers (e.g., Verizon, AT&T and T-Mobile) and big box retailers (e.g., Best Buy)—at the center of each of its theories of liability." DVG's Motion to Compel ZAGG Inc. to Produce Certain Agreements (the "Motion to Compel") [ECF No. 122] at 3. DVG also served subpoenas on five of ZAGG's mobile carriers and retailers,[2] demanding "[a]ll communications with ZAGG concerning the sale of ZAGG products" and "[d]ocuments sufficient to identify each ZAGG Product that you have sold since January 1, 2021." November 14 Order at 5. These subpoenas broadly defined "communications" to include "any conversation or other oral or written contact, formal or informal, at any time or place, under any circumstances whatsoever, whereby information of any nature was transmitted or transferred, whether or not subsequently recorded in any document." *Id.* at 5–6. On November 6, 2023, ZAGG advanced an *Ore Tenus* Motion to Quash DVG's Five Subpoenas (the "Motion to Quash") [ECF No. 131].

On November 14, 2023, Judge Reid issued an Order denying DVG's Motion to Compel and granting ZAGG's *Ore Tenus* Motion to Quash. *See generally* November 14 Order. On November 30, 2023, DVG filed its Rule 72(a) Objections to the November 14, 2023 Discovery Order, *see generally* Objections, and ZAGG responded on December 11, 2023, *see* Plaintiff's Response to Defendant DVG Trade LLC's Rule 72(a) Objections to the Court's November 14, 2023 Discovery Order (the "Response") [ECF No. 148]. This Order follows.

---

[2] DVG served subpoenas on the following mobile carriers and retailers: AT&T, Inc.; Best Buy Co. Inc.; T-Mobile USA, Inc.; Verizon Wireless, Inc.; and Market Performance Group, LLC. *See* November 14 Order at 1.

## ANALYSIS

Neither of Judge Reid's rulings was clearly erroneous. As we've said, we review a magistrate judge's non-dispositive order under the "clearly-erroneous or contrary-to-law standard." *Jordan*, 947 F.3d at 1327. And, "even to the extent the 'contrary to law' standard may invite some level of plenary review, it is evident that because a magistrate is afforded broad discretion as to discovery matters, reversal as to a magistrate's discovery-related order is appropriate only where that discretion is abused." *Bell v. Chambliss*, 2015 WL 5997053, at *1 n.4 (M.D. Fla. Oct. 14, 2015) (Howard, J.).

In her November 14 Order, Judge Reid denied DVG's Motion to Compel because DVG's requests were "irrelevant and disproportionate to the needs of this case." November 14 Order at 5. "Specifically," she said, "it is unclear how *all* agreements and communications between ZAGG and the Mobile Carriers and Retailers associated with ZAGG products is related to ZAGG's claims or DVG's defenses or counterclaims. In its Motion and at the November 6, 2023 hearing, DVG failed to establish this crucial connection." *Ibid* (emphasis in original). Similarly, Judge Reid granted ZAGG's Motion to Quash because the requests in DVG's subpoenas were irrelevant and disproportionate for "essentially the same" reasons. *Id.* at 5. As she explained:

> The Court is not convinced that the documents and communications requested in the subpoenas to the Mobile Carriers and Retailers are relevant to any claims or defenses in this action. Importantly, there is no evidence that DVG buys ZAGG products from any of these Third Parties, thereby eliminating the need to seek certain agreements from these companies. Further, Defendants had not explained what ZAGG's relationships with these companies and the conduct of these companies has to do with Defendants' claims against ZAGG. Indeed, if any of these companies are infringing upon ZAGG's trademarks or are involved in false advertising or unfair competition, that would not be of relevance to this case.

> Moreover, as stated in Fed. R. Civ. P. 26(b)(2)(C)(ii)–(iii), the Court can limit discovery if it determines that "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or [ ] the proposed discovery is outside the scope permitted by Rule 26(b)(1)." According to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action" as well as "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." As the Court outlined above, the sought-out documents
are not relevant to the case. The requests are also disproportionate given the attenuated
connection between the requests and DVG's defenses and counterclaims.

*Id.* at 7. We don't think this reasoned (and thorough) analysis constitutes an abuse of discretion. And

we reiterate our view that a "magistrate judge, 'having fully managed the pre-trial aspect of [the] case

and otherwise being fully informed with the conduct of the parties and non-parties in the discovery

process, is in the best position' to resolve" discovery disputes she herself has overseen. *Mad Room,*

*LLC v. City of Miami*, 2023 WL 4571157, at *9 (S.D. Fla. July 18, 2023) (Altman, J.) (quoting *Crable v.*

*State Farm Mut. Auto. Ins. Co.*, 2012 WL 1325831, at *4 (M.D. Fla. Apr. 17, 2012) (Dalton, J.)). We'll

explain why we say so in two steps: *first*, by showing that the information DVG seeks isn't at all relevant

to our case; and *second*, by agreeing that DVG's requests are both overbroad and disproportionate to

the needs of our case.

### I.       DVG's Requests are Not Relevant

*First*, Judge Reid didn't commit clear error in holding that DVG's requests were irrelevant to

the claims and defenses in this case. In its Objections, DVG contends that "the requested agreements"

are indeed "highly relevant" to ZAGG's "theories of liability" and "to DVG's defenses and

counterclaims (e.g., defamation and conspiracy)" because "the agreements between Z[AGG] and its

'authorized' customers are highly relevant to almost every issue in this action." Objections at 14, 16.

In support, DVG offers two arguments—both unpersuasive.

*One*, DVG says that ZAGG "never contested the relevance of the agreements sought by DVG

at the October 18, 2023 conference at which the Court ordered briefing." *Id.* at 14. But that's irrelevant:

Our job is to review the *magistrate judge's* order—not the quality of an opposing party's advocacy.

*Two*, DVG takes issue with the fact that, in her November 14 Order, Judge Reid "stated that

DVG '[chose] not to cite to *any* of [ZAGG's] alleged theories [of liability]' in its motion to compel."

*Id.* at 14–15. Remember, DVG claims that the agreements it seeks are "at the center of each of

[ZAGG's] theories of liability." *Id.* at 14. DVG insists that it did "explain[ ] these theories in . . . its written Motion to Compel . . . and at numerous discovery conferences[.]" *Id.* at 15. But DVG misunderstands Judge Reid's Order (and ZAGG's allegations). In emphasizing that DVG "[chose] not to cite to any of [ZAGG's] alleged theories," Judge Reid was saying that "DVG cannot simply state that the agreements it seeks are 'at the center of each of [ZAGG's] theories of liability' yet choose not to cite to any of [ZAGG's actual] theories." November 14 Order at 6.

And we agree. In this trademark-infringement case, ZAGG accuses DVG of listing and selling ZAGG's products as "new" on *Amazon.com* despite the fact that *Amazon's* "Terms and Conditions require that products advertised as 'new' carry the manufacturer's warranty"—which DVG has apparently not obtained. SAC ¶ 4; *see also id.* ¶¶ 47, 50 ("Amazon's announced Terms and Conditions require that 'new' products carry the manufacturer's warranty . . . . Because Defendants' ZAGG Products are not covered by the ZAGG Warranty, the ZAGG Products advertised and offered for sale by Defendants are not in 'new' condition pursuant to Amazon's Terms and Conditions, as advertised."). The crux of the case, then, is a requirement *Amazon* imposes for products sold on *Amazon.com*—not a requirement *ZAGG* imposes for retailers who sell *ZAGG* products. In its Objections, DVG contends that "[t]he carriers (i.e., Verizon, AT&T, T-Mobile) and Best Buy account for the vast majority of Z[AAG]'s sales, and thus the terms of their agreements with Z[AGG] are critical to challenging Z[AAG]'s factual allegations[.]" Objections at 15. But that misses the point. ZAGG doesn't allege that the carriers and Best Buy sell these products on Amazon.com, *see generally* SAC—and remember that it's Amazon.com that requires "new" ZAGG products to come with a warranty. So, the general relationship between ZAGG and its "network of authorized retailers"—and,

in particular, whether ZAGG requires those retailers to include a warranty with their "new" products—is totally irrelevant to this case.[3]

As Judge Reid explained at the parties' November 6 Hearing: "[W]hether something is used or not used" in this case "has to do with Amazon's definition"—not ZAGG's. November 6 Hr'g Tr. [ECF No. 136] at 18:8–9; *see also id.* at 18:7–13 ("It seems to me that the dispute [ ] as to whether something is used or not has to do with Amazon's definition and not Verizon, T-Mobile, AT&T, Best Buy. They're not the arbiter. If you need to defend, Mr. Berkowitz, the argument that the product is new, I'm not sure how knowing the pricing or the agreements with these third parties helps you."). It thus doesn't matter whether Best Buy, Verizon, and the other retailers sell ZAGG products on their own websites or in their own brick-and-mortar stores. And we don't care about the requirements ZAGG imposes (or doesn't impose) when they do. We therefore agree with Judge Reid that DVG's requests for *all* communications, business agreements, and pricing-related documents between ZAGG and these retailers are irrelevant to our case because there's "no evidence that DVG buys ZAGG products from any of these Third Parties" and because the Defendants haven't "explained what ZAGG's relationships with these companies and the conduct of these companies has to do with Defendants' claims against ZAGG." November 14 Order at 7.

## II.   DVG's Requests and Third-Party Subpoenas are Overbroad and Disproportionate to the Needs of the Case

Even if DVG's requests were relevant, we'd still overrule DVG's Objections because its requests and subpoenas are overbroad and disproportionate to the needs of the case.

---

[3] DVG also claims that "Z[AGG] has an agreement with Best Buy—one of the largest consumer electronics retailers in the United States—that allows Best Buy to price match against other websites and, where the price is lower, Z[AGG] must pay Best Buy the difference." Objections at 16. But (again) we're not sure what this has to do with ZAGG's central claim that, "[d]espite advertising ZAGG Products as 'new,' the liquidation products Defendants actually deliver to consumers have been purchased and sold once previously, are often used and/or returned products, and may be in damaged condition, and, therefore, are used and not 'new' as Defendants advertise." SAC ¶ 3.

To begin with, DVG completely ignores Judge Reid's alternative ground for denying its requests: her view that ZAGG's demands were disproportionate to the needs of the case. *See* November 14 Order at 5 ("[T]he Court agrees with ZAGG that the requests are irrelevant *and disproportionate to the needs of this case*. Specifically, it is unclear how *all* agreements and communications between ZAGG and the Mobile Carriers and Retailers associated with ZAGG products is related to ZAGG's claims or DVG's defenses or counterclaims." (emphasis added)). As ZAGG correctly notes, "[DVG's] Objections do not even address Judge Reid's ruling that the discovery sought by [DVG] is unnecessarily 'driving up litigation costs for both parties' and disproportionate to the needs of this case. For this reason alone, DVG's Objections should be overruled." Response at 4 n.1. Having failed to address this alternative holding, DVG has forfeited any objection it could've raised to Judge Reid's proportionality analysis. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). DVG has thus failed to show that Judge Reid clearly erred—or that she abused her discretion—in denying its Motion to Compel.

We also deny DVG's Objections to Judge Reid's Order Granting ZAGG's *Ore Tenus* Motion to Quash because DVG hasn't shown that Judge Reid clearly erred in finding that its third-party subpoenas were disproportionate to the needs of the case. Federal Rule of Civil Procedure 26(b)(1)

provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Although Rule 45 of the Federal Rules—which governs subpoenas—"does not list irrelevance or overbreadth as reasons for quashing a subpoena," courts in our District "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Barrington v. Mortgage IT, Inc.*, 2007 WL 4370647, at *8 (S.D. Fla. Dec. 10, 2007) (Seltzer, Mag. J.). And we agree with Judge Reid that DVG's subpoenas were overbroad "given the attenuated connection between the requests and DVG's defenses and counterclaims." November 14 Order at 7. As Judge Reid explained:

> Defendants are requesting each Mobile Carrier and Retailer produce a list of 20 categories of documents including "[a]ll communications with ZAGG concerning the sale of ZAGG Products" and "[d]ocuments sufficient to identify each ZAGG Product that You have sold since January 1, 2021." The Requests define communications to include "any conversation or other oral or written contact, formal or informal, at any time or place, under any circumstances whatsoever, whereby information of any nature was transmitted or transferred, whether or not subsequently recorded in any document." The lists of deposition topics range from "[y]our sales of ZAGG Products, including Your channels of distribution and Your advertising and offering for sale of ZAGG Products online, from January 1, 2021, until the present" to "[y]our policies for handling customer complaints and inquiries regarding ZAGG Products, including, but not limited to, any complaints or inquiries related to counterfeit products, knockoff products, used products, defective products, damaged products, any quality issues, and/or warranty." Each subpoena, including instructions, definitions, Schedules A and B, lists of documents to be produced and deposition topics, along with the Defendants' Answer to the Complaint and Counterclaim and other pleadings attached is approximately 76 pages long.

*Id.* at 5 (cleaned up).

In its Objections, DVG argues that "the documents requested . . . are highly *relevant* to DVG's defenses and counterclaims" because "the subpoenas to the carriers and Best Buy seek documents . . . 'concerning any quality controls implemented or required by Z[AGG] in connection with the Z[AGG] Products,' which relates to the condition of the products that ZAGG allegedly authorizes to be sold as new in the marketplace[.]" Objections at 19. DVG adds that "[t]hese subpoenas also seek documents concerning any equivalency of the model numbers sold by the carriers and Best Buy to

products sold in other retail channels." *Ibid.* But these are just a subset of the large swath of documents DVG requested in those subpoenas. *See* November 14 Order at 5 ("The five subpoenas to the Mobile Carriers and Retailers . . . . request[ ] each Mobile Carrier and Retailer produce a list of 20 categories of documents including '[a]ll communications with ZAGG concerning the sale of ZAGG Products' and '[d]ocuments sufficient to identify each ZAGG Product that You have sold since January 1, 2021.'"). Judge Reid found that the subpoenaed parties had "no direct ties to the allegations or defenses" in this case, and (as we've seen) she was "not convinced" that *all* "the documents and communications requested in the subpoenas" were "relevant to any claims or defenses in this action." *Id.* at 7. So, the fact that *some* of DVG's requests *may* have been relevant and proportionate to the needs of this case doesn't come close to establishing that Judge Reid committed clear error in quashing the subpoenas on the ground that, *on the whole*, they were *mostly* overbroad. In any event, as we've noted, DVG's contention that its subpoenas contained *relevant* requests doesn't address at all Judge Reid's alternate holding that the subpoenas were disproportionate and overly "burdensome." November 14 Order at 8.

*          *          *

One last thing: Throughout its Objections, DVG suggests that it's been treated unfairly. For example, DVG says that Judge Reid's Order "unjustly punished DVG, while rewarding Z[AGG.]" Objections at 21; *see also id.* at 22 ("[W]hen it came to subpoenas issued by Z[AGG], which were also too 'broad', they were not quashed in their entireties, but instead were narrowed by the Court . . . . Although the Court has the discretion to quash subpoenas in their entirety; the Court was not equitable in the exercise of that discretion." (errors in original)); *see also id.* at 17 ("[B]y denying DVG the agreements, which would include terms related to, e.g., storage, shipping, and any restrictions on how the carriers may treat returned products, the Court allowed only one-sided discovery—Z[AGG] was entitled to discovery on the condition of the products purportedly obtained by DVG but DVG was

11

prohibited from obtaining discovery on the condition of the products sold by Z[AGG]'s purported

'authorized' sellers. This is clear error."). We find these complaints unpersuasive for two reasons.

*One*, in deciding whether to grant a motion to compel (or to quash a third-party subpoena),

"[t]he relevance issue must . . . be decided on a case-by-case basis." *Dees v. Hyundai Motor Mfg. Ala.,*

*LLC*, 524 F. Supp. 2d 1348, 1352 (M.D. Ala. 2007). DVG claims that "subpoenas issued by

Z[AGG] . . . were also too broad" and that Judge Reid "was not equitable" in her rulings because,

rather than deny ZAGG's discovery requests in their entirety, she "narrowed" their scope—something

she didn't do for DVG. *See* Objections at 22 (cleaned up). As DVG acknowledges, however, a

magistrate judge doesn't have to do the lawyer's work for him. Sometimes, if the discovery requests

are only moderately overbroad, the task of limiting them might be relatively straightforward. In such

circumstances, a magistrate judge may feel empowered to help the parties resolve their dispute by

giving the requesting party only a part of what he's requested. But, when a party asks, seemingly

without limitation, for *everything* from *everyone*, a magistrate judge might justifiably feel that it would be

impossible—or, perhaps, impractical—to engage in the time-consuming work of narrowing that

party's demands. Since DVG never appealed Judge Reid's order on ZAGG's requests, we have no

way of knowing whether Judge Reid's decision to narrow *those* discovery requests was animated by

these (or other) considerations. The point we're trying to make here, though, is that a magistrate judge

doesn't behave unfairly just because she gives one party more than she gives the other.

*Two*, we reiterate that there's no "hard and fast rule" when it comes to "rul[ing] on [a] discovery

dispute[.]" *Runton v. Brookdale Senior Living, Inc.*, 2018 WL 1083493, at \*7 (S.D. Fla. Feb. 27, 2018)

(Goodman, Mag. J.). "[I]ndeed, on virtually identical facts, two decision makers can arrive at opposite

conclusions, both of which constitute appropriate exercises of discretion." *Ibid.* (cleaned up). But that

possibility for reasonable disagreement doesn't mean the magistrate judge erred—clearly or otherwise.

Again, as we explained in *Mad Room* (where we dealt with a similar discovery issue), "while we

acknowledge that Judge Reid *could* have gone a different way . . . she didn't *have* to do that. Nothing in the Federal Rules requires the judge to save a party from the extreme positions its lawyers have chosen to take in litigation. 'To be clearly erroneous, [Judge Reid's] decision must be dead wrong, and we do not believe it is.'" 2023 WL 4571157, at *19 (quoting *Parts & Elec. Motors*, 866 F.2d at 233). Here, too, DVG hasn't shown that Judge Reid was "dead wrong" in either of her rulings.

### CONCLUSION

Accordingly, after careful review, we hereby **ORDER and ADJUDGE** that DVG's Objections [ECF No. 145] to Judge Reid's Order [ECF No. 132] Denying DVG's Motion to Compel and Granting ZAGG's *Ore Tenus* Motion to Quash are **OVERRULED**.

**DONE AND ORDERED** in the Southern District of Florida on April 25, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record

13