UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20304-ALTMAN/Reid

ZAGG INC.,

      *Plaintiff*,

*v.*

MENACHEM MENDEL ICHILEVICI, *et al.*,

      *Defendants*.

_____/

DVG TRADE LLC,

      *Counter-Plaintiff*,

*v.*

ZAGG INC., *et al.*,

      *Counter-Defendants*.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### THE COUNTER-DEFENDANTS' MOTION TO DISMISS

Our Plaintiff, ZAGG, Inc., filed a Second Amended Complaint ("SAC"), accusing the Defendants—Menachem Mendel Ichilevici, TX Trading Inc., and DVG Trade LLC—of "trademark counterfeiting and infringement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*" SAC [ECF No. 26] ¶ 1. In response to these accusations, Defendant DVG filed a Counterclaim against ZAGG and three third parties: Screenya, LLC; Merril Longmore; and Brandon Buckner (the "Counter-Defendants"). *See* Answer, Affirmative Defenses, and Counterclaims ("Counterclaims") [ECF No. 41] at 13.

ZAGG and the other Counter-Defendants have now filed a motion to dismiss the Counterclaims under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion

to Dismiss DVG Trade LLC's Counterclaim and Third-Party Complaint ("MTD") [ECF No. 50] at 1.[1] The three third-party Counter-Defendants (Screenya, Longmore, and Buckner) contend that the Counterclaims against them must be dismissed "for lack of personal jurisdiction," and all four Counter-Defendants insist that Counts II–V of the Counterclaims "fail[ ] to state a claim." *Id.* at 1–2.[2] After careful review, we **GRANT in part** and **DENY in part** the MTD.

THE FACTS

ZAGG "is a Delaware corporation with its principal place of business in Midvale, Utah." SAC ¶ 11. ZAGG "designs, manufactures, and sells a variety of screen protectors, power management solutions, mobile keyboards, cases, and personal audio products"—and then markets those products in the United States under a variety of brand names, such as "ZAGG, Invisible Shield, IFROGZ, mophie, Gear4, and BRAVEN[.]" *Ibid.* ZAGG owns two trademarks (the "ZAGG Marks") issued by the U.S. Patent and Trademark Office ("USPTO"), which it uses to "advertise[ ], distribute[ ], and sell[ ] its products to consumers[.]" *Id.* ¶¶ 24, 27. ZAGG "has invested significant time, money, and effort in advertising, promoting, and developing the ZAGG Marks" and has taken "substantial steps to ensure that products bearing the ZAGG Marks are of the highest quality." *Id.* ¶¶ 30, 33.

According to ZAGG, Defendant Ichilevici "acts by and through Defendants DVG Trade and TX Trading to own and operate the 'Mac N' Cheese' Amazon Seller Account . . . through which

---

[1] The MTD is ripe for adjudication. *See* Opposition to ZAGG Inc. and Screenya, LLC's Motion to Dismiss ("MTD Response") [ECF No. 52]; Reply Brief in Support of Motion to Dismiss Counterclaim and Third-Party Complaint ("MTD Reply") [ECF No. 62].

[2] Counter-Defendants Longmore and Buckner joined the MTD after it was filed. *See* Motion to Join [ECF No. 60] at 2–3 ("Just as the Third-Party Complaint does not allege any conduct within Florida as to ZAGG and Screenya, the Third-Party Complaint is entirely devoid of any factual allegations specific to Longmore and Buckner to satisfy the personal jurisdiction and due process analysis set forth in Section I.A-D of ZAGG and Screenya's Motion to Dismiss. . . . Additionally, for the reasons set forth in Section II.A-D of ZAGG and Screenya's Motion to Dismiss, Counts II–V of the Third-Party Complaint against Longmore and Buckner should also be dismissed for the independent reason that the pleading is entirely devoid of any acts, specific to Longmore and Buckner to support a cause of action.").

Defendants advertise and sell ZAGG Products." *Id.* ¶ 15. While reselling products on Amazon (by itself) wouldn't be an issue, ZAGG accuses the Defendants of "represent[ing] that the ZAGG Products they offer for sale on the Internet are 'new'"—even though "the products actually sold by the Defendants and received by the consumers are in 'used,' rather than 'new' condition." *Id.* ¶ 43. In a prior order, we explained ZAGG's view of this conduct:

> Since these liquidated ZAGG products aren't "new," and "because Defendants are not authorized to sell ZAGG Products, the ZAGG Products offered for sale and sold by Defendants are not covered—and cannot be covered—by the ZAGG Manufacturer's Warranty." [SAC] ¶¶ 47–48. The Defendants are thus "falsely advertising the ZAGG Products they offer for sale to consumers as 'new,' when they are not," because "Amazon.com's Terms and Conditions require that products advertised as 'new' carry the manufacturer's warranty." *Id.* ¶ 4. ZAGG also alleges that DVG "intentionally covers and/or damages" the serial numbers on used ZAGG products "in an effort to hide Defendants' nefarious acts." *Id.* ¶ 52. ZAGG adds that the "Defendants' resale of ZAGG Products with serial numbers and warning labels intentionally covered and mutilated product packaging results in a poor brand experience and harms ZAGG's reputation as customers likely believe that it is ZAGG that caused this harm to the product packaging." *Id.* ¶ 67.

*ZAGG Inc. v. TX Trading, Inc.*, 2024 WL 1833086, at *2 (S.D. Fla. Apr. 26, 2024) (Altman, J.) (cleaned up).

Looking to stop this practice, ZAGG has asserted three claims against the Defendants: (1) "trademark counterfeiting and infringement," in violation of 15 U.S.C. § 1114; (2) "unfair competition and false designation of origin," in violation of 15 U.S.C. § 1125(a); and (3) "piercing the corporate veil and alter ego liability" against Defendants TX Trading and DVG. *See id.* at 19, 21–22.

One of the Defendants, DVG, has hit back. In addition to asserting counterclaims against ZAGG, it also named three new counter-defendants: Screenya, a Delaware corporation with its principal place of business in Utah; Bucker, ZAGG's "former Tax Director" and the "direct[or]" of Screenya's operations; and Longmore, ZAGG's "Director of Ecommerce." *See* Counterclaims ¶¶ 2–7. DVG says that it "is in the business of lawfully acquiring and re-selling various consumer products for a profit." *Id.* ¶ 23. DVG accuses ZAGG of attempting to control "the distribution and pricing of

3

[ZAGG] Products through unlawful means" by participating in a "coordinated effort to preclude select third-parties from reselling [ZAGG] Products on online marketplaces by false allegations of intellectual property infringement and defamation." *Id.* ¶¶ 40–41. The object of these "false complaints and defamatory statements," DVG adds, is to "prevent DVG from selling genuine [ZAGG] Products on Amazon" by "damag[ing] DVG's reputation and goodwill, such that Amazon would suspend or terminate its relationship with DVG." *Id.* ¶¶ 42–43; *see also id.* ¶ 132 ("In furtherance of [ZAGG's] price fixing scheme, [ZAGG] seeks to remove third-party sellers from the Amazon marketplace."). DVG also accuses Screenya of being an "alter ego" of ZAGG, which ZAGG uses "to fool Amazon's algorithms into believing that the market price [of ZAGG products] is higher than that at which Amazon is selling the product" and to "dump used, damaged and defective products on unsuspecting Amazon customers." *Id.* ¶¶ 117–18. The Counter-Defendants accomplish this goal, DVG says, by "list[ing] the same [products] for sale through their 'Screenya' storefront at an inflated price[.]" *Id.* ¶ 116.

DVG advances five counterclaims: (1) a declaratory-judgment claim, asking us to declare "that it has never infringed on any of [ZAGG's] purported trademarks, and in particular, [that] its purchase and resale of [ZAGG] products . . . are lawful under the first-sale doctrine" (Count I), *id.* ¶ 165; (2) a claim of defamation *per se* under Florida law against ZAGG and Longmore (Count II), *id.* ¶ 175; (3) a claim of false or misleading representation, in violation of 15 U.S.C. § 1125, against ZAGG and Longmore, *id.* ¶ 181; (4) a claim of civil conspiracy against all the Counter-Defendants, *see id.* ¶ 199; and (5) a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against all the Counter-Defendants, *see id.* ¶ 220.

## THE LAW

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a claim for lack of personal jurisdiction. "The determination of personal jurisdiction over a nonresident defendant

requires a two-part analysis by the federal courts." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). *First*, the court must satisfy itself that the exercise of personal jurisdiction comports with the forum state's long-arm statute. *See Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989). *Second*, the court must ensure that the exercise of jurisdiction is consistent with the requirements of the Fourteenth Amendment's Due Process Clause. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). "Subjecting [a defendant] to jurisdiction in Florida comports with due process so long as 'minimum contacts' exist between [the defendant] and Florida and exercising jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1220 (cleaned up).

Under Florida law, "[a] plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction." *Id.* at 1214 (cleaned up). "[The] Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If a plaintiff pleads sufficient "material facts" to support the exercise of personal jurisdiction, the burden then shifts to the defendant to challenge the plaintiff's allegations by affidavits or other competent evidence. *Id.* at 1249. If "a nonresident defendant raises a meritorious defense to personal jurisdiction through affidavits, documents or testimony," the plaintiff must then establish the propriety of jurisdiction by affidavits, testimony, or other documents. *Am. Airlines, Inc. v. Despegar.com USA, Inc.*, 2014 WL 11880999, at *3 (S.D. Fla. May 14, 2014) (Altonaga, J.) (cleaned up). In other words, the "district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." *Cable/Home*, 902 F.2d at 855 (cleaned up). But, where "the parties' affidavit and deposition evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Ibid.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). And the "moving party bears the burden to show that the complaint should be dismissed." *Spring Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1229 (S.D. Fla. 2014) (Cohn, J.) (quoting *Mendez-Arriola v. White Wilson Med. Ctr., P.A.*, 2010 WL 3385356, at *3 (M.D. Fla. Aug. 25, 2010) (Rodgers, J.)).

## ANALYSIS

### I.    Personal Jurisdiction

Counter-Defendants Screenya, Longmore, and Buckner ask us to dismiss the Counterclaims against them for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Counter-Defendants contend that "DVG has not alleged—and cannot allege—that either general or specific jurisdiction exists . . . under Florida's long-arm statute," and that, even if it did, "the exercise of jurisdiction in this case would not comport with the due process requirements of

6

the Constitution." MTD at 4. DVG responds with three arguments of its own. *First*, it says that Counter-Defendant Screenya is ZAGG's "alter ego," and that, since we can exercise personal jurisdiction over ZAGG, we can exercise jurisdiction over it, too. MTD Response at 10–11.[3] *Second*, DVG casts the other Counter-Defendants as ZAGG's co-conspirators—who are therefore "subject to this Court's personal jurisdiction pursuant to the conspiracy jurisdiction doctrine." *Id.* at 14. *Third*, DVG argues that we have specific personal jurisdiction over the Counter-Defendants because they "committed a tort directed at a Florida company[.]" *Id.* at 15. Because we agree with DVG's third argument, we needn't address the first two.

The Counter-Defendants maintain that we lack specific personal jurisdiction under Florida's long-arm statute because the Counterclaims "only allege[ ] acts that have taken place in Utah and the state of Washington, thousands of miles from Florida." MTD at 10. To exercise "personal jurisdiction over a nonresident defendant," we must first consider "[i]f there is a basis for the assertion of personal jurisdiction under the state statute"—and (if there is) we must then determine "whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment[.]" *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "Florida's long-arm statute, FLA. STAT. § 48.193(1), states in relevant part that [courts] have specific personal jurisdiction over defendants for any cause of action

---

[3] The Counter-Defendants do not challenge our authority to exercise personal jurisdiction over ZAGG. *See generally* MTD; MTD Reply. We therefore find that ZAGG has waived any objection to our personal jurisdiction. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("[A] party is deemed to have waived any objection to personal jurisdiction or service of process if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion."); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.").

arising" from a list of specifically enumerated acts. *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1292 (S.D. Fla. 2021) (Bloom, J.).

DVG insists that we can exercise specific jurisdiction over the Counter-Defendants under two separate provisions of the long-arm statute: § 48.193(1)(a)(2), which applies when a party "commit[s] a tortious act within [the] state"; and § 48.193(1)(a)(6), because the Counter-Defendants "caus[ed] injury to person or property within [the] state" while they were "engaged in solicitation or service activities within [the] state[.]" MTD Response at 15–16.

We agree with DVG that FLA. STAT. § 48.193(1)(a)(2) authorizes us to exercise specific personal jurisdiction over the Counter-Defendants. The Eleventh Circuit has repeatedly held that, "under Florida law, a nonresident defendant commits 'a tortious act within Florida' when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (emphasis added) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)); *see also Kountze v. Kountze*, 996 So. 2d 246, 252 (Fla. 2d DCA 2008) ("The reach of subsection [(1)(a)(2)] has been expanded in more recent cases to include defendants who commit acts outside the State of Florida that have been regarded as tortious acts within the state."); *Nat'l Numismatic Certification, LLC v. eBay, Inc.*, 2008 WL 2704404, at *11 (M.D. Fla. July 8, 2008) (Fawsett, J.) ("[C]ourts interpreting subsection [(1)(a)(2)] of the long-arm statute have routinely found personal jurisdiction over foreign defendants who committed intentional torts outside of Florida that caused injuries inside Florida." (citing *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996))).

DVG alleges that the Counter-Defendants violated FDUTPA. *See generally* Counterclaims ¶¶ 214–25. Florida law is clear that a court can exercise personal jurisdiction over a foreign defendant— even if that defendant has no *other* contacts with the State of Florida—where that plaintiff alleges that the defendant violated FDUTPA in a way that caused harm to the plaintiff in Florida. *See, e.g., Execu-Tech Business Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582, 585 (Fla. 2000) ("As noted above,

Execu–Tech alleged that New Oji and other major manufacturers and trading houses of thermal fax paper deliberately conspired to fix the wholesale price of their product throughout the United States, including Florida. This conduct constitutes a violation of [FDUTPA]. . . . Thus, according to Execu–Tech's complaint, New Oji and the other conspirators committed a tortious act (i.e., a violation of the Act) on Florida soil and subjected themselves to the jurisdiction of Florida courts." (footnotes omitted)); *accord Rogers v. Omni Sol., Inc.*, 2010 WL 4136145, at \*4 (S.D. Fla. Oct. 19, 2010) (Huck, J.) ("The Supreme Court of Florida's decision in *Execu–Tech* leaves little doubt that a violation of the [FDUTPA], which causes injury in Florida, confers jurisdiction under Florida's long arm statute."); *Am. Airlines*, 2014 WL 11880999, at \*6 ("Since American has plead facts alleging Foreign Defendants acted tortiously in violating the FDUTPA, the Court may properly exercise specific personal jurisdiction over Foreign Defendants on that basis as well.").

Because DVG alleges that the Counter-Defendants violated FDUTPA, *see generally* Counterclaims ¶¶ 214–25—and since DVG claims that the Counter-Defendants' actions caused harm in Florida, *see id.* ¶¶ 221, 223 ("[The Counter-Defendants] established, maintained or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market, for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level . . . . [The Counter-Defendants'] unlawful conduct substantially affected Florida's trade and commerce.")—we can exercise specific personal jurisdiction over the Counter-Defendants under FLA. STAT. § 48.193(1)(a)(2).[4]

And we don't think that our decision to exercise personal jurisdiction over the Counter-Defendants violates the Due Process Clause. Where (as here) a state long-arm statute authorizes a federal court to exercise specific personal jurisdiction over a party, the court must conduct a three-

---

[4] We'll address the viability of DVG's FDUTPA claim below. *See post*, at 21–23.

part due-process test, "which examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Mosseri*, 736 F.3d at 1355 (cleaned up). DVG "bears the burden of establishing the first two prongs," whereas the Counter-Defendants "must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Ibid.* (quoting *Diamond Crystal Brands, Inc v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). The Counter-Defendants believe that DVG cannot meet its burden because "[t]here is no connection between [the Counter-Defendants'] conduct and Florida, other than DVG's place of business." MTD at 12. We disagree and find that the exercise of personal jurisdiction in the circumstances of this case comports with due process.

*First*, DVG has met its burden of showing that its claims relate to the Counter-Defendants' contacts with Florida and that the Counter-Defendants purposely availed themselves of the privilege of conducting business in Florida. DVG alleges that the Counter-Defendants "regularly, systemically, and continuously solicit business within Florida" (and other states) by selling their products on "their respective websites" and Amazon. Counterclaims ¶ 12. DVG adds that, to "monopolize . . . trade or commerce pertaining to [ZAGG] Products" throughout the country (including in Florida), the Counter-Defendants acted "for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level[.]" *Id.* ¶¶ 220–21. According to DVG, the Counter-Defendants accomplished this goal in two ways. *One*, they "us[ed] the Screenya storefront to manipulate pricing" by selling ZAGG products "at an inflated price" to Amazon users (including Florida consumers). *Id.* ¶¶ 116, 118. *Two*, they removed third-party sellers (like DVG, a corporation with its "principal place of business" in Florida) from Amazon by

"intentionally submit[ting] false allegations of intellectual property infringement to Amazon" and engaging in "sham litigation" against those third-party sellers. *Id.* ¶¶ 133–34. These allegations are sufficient to establish that DVG's counterclaims relate to the Counter-Defendants' purported scheme to conduct uncompetitive business practices in Florida (and elsewhere) and that the Counter-Defendants purposely availed themselves of the privilege of conducting business in Florida.

While we certainly agree with the Counter-Defendants that these allegations are not *exclusively* related to Florida, we can still exercise personal jurisdiction in a manner consistent with the Counter-Defendants' due-process rights because they sold goods in Florida and (allegedly) engaged in uncompetitive business practices that adversely affected Florida residents (*e.g.*, DVG and other Florida consumers). *See Mosseri*, 736 F.3d at 1358 ("But we are saying purposeful availment for due process was shown here because . . . [Mosseri] s[old] and distribut[ed] infringing goods through his website to Florida consumers"); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 2014 WL 11880964, at *8 (S.D. Fla. Jan. 24, 2014) (Moore, J.) ("Buccellati Watches sells its products in Florida and thus the corporation has purposefully availed itself of the privilege of conducting business in Florida."); *Thursday LLC v. Klhip Inc.*, 2018 WL 4216389, at *7 (M.D. Fla. Sept. 5, 2018) (Honeywell, J.) ("The Margiano Defendants' repeated activities, directed specifically toward Plaintiff [in Florida], were not so random that they could not anticipate being haled into court in Plaintiff's home state." (citing *Licciardello*, 544 F.3d at 1288)).[5]

_____

[5] We also reject the Counter-Defendants' position that "'online sales to a national marketplace' does not satisfy the elements of due process." MTD Reply at 3 (quoting *Oceanside Health Prod. LLC v. Instock Goodies Inc.*, 2023 WL 3781649, at *3 (C.D. Cal. May 2, 2023)). This argument ignores the relevant cases we've cited from our Circuit, which held that online sales to a state's residents is sufficient to establish purposeful availment. *See Mosseri*, 736 F.3d at 1358; *Buccellati Holding*, 2014 WL 11880964, at *8. And the holding of the one district-court decision the Counter-Defendants rely on for this proposition, *see Oceanside Health*, 2023 WL 3781649, at *3 ("Defendant's online sales to a national marketplace do not constitute the kind of California-focused conduct necessary to show express aiming [under California law]."), was *reversed* by the Ninth Circuit, which found that "selling consumer goods through their Amazon storefronts on Amazon.com in the regular course of business" was

And, in *Execu-Tech*, the Florida Supreme Court held (as we do here) that there were sufficient "minimum contacts" to show purposeful availment where a foreign company conspired to sell "thermal fax paper" at "a correspondingly inflated retail price in every state, including Florida"—even though the conspiracy was formed in Japan, the defendant "maintain[ed] no office in Florida," and none of the defendant's thermal fax paper "was sold in Florida" during the relevant time period. 752 So. 2d at 584–85; *cf. Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 235 (Fla. 4th DCA 2007) (finding no minimum contacts with Florida where the defendant "[did] not compete for customers in Florida or have any business interests in this state"). That's very similar to our facts because DVG alleges that the Counter-Defendants agreed to artificially "exclud[e] competition" by "fixing or maintaining prices *in Florida* at a level higher than the competitive market level[.]" Counterclaims ¶ 221 (emphasis added). We therefore find that DVG's claims relate to the Counter-Defendants' contacts with Florida and that the Counter-Defendants purposely availed themselves of Florida's laws.

*Second*, the Counter-Defendants have failed to show that "fair play and substantial justice considerations" militate against our exercise of personal jurisdiction. The Counter-Defendants' sole argument on this point is that it would be unfair to maintain a case against parties that have no affiliation with the State of Florida. *See* MTD at 13 ("DVG filed [the Counterclaims], naming current and past employees of ZAGG, as well as Screenya—none of whom has any affiliation with Florida—in nothing more than a veiled attempt to drum up controversy, drag them into court across the country, and gain leverage in this case. This is precisely what the due process clause is intended to prevent."). While we're sympathetic to the burdens this litigation might impose on the Counter-Defendants, this argument simply ignores the injuries the Counter-Defendants allegedly caused to Florida residents. *See, e.g.*, Counterclaims ¶ 222 (alleging that the Counter-Defendants engaged in "an

---

sufficient to show purposeful availment, *Oceanside Health Prods., LLC v. Dvir Deri, LLC*, 2024 WL 2269270, at \*2 (9th Cir. May 20, 2024).

unfair or deceptive act or practice within the conduct of commerce within the State of Florida"); *id.* ¶ 224 ("As a direct and proximate cause of [the Counter-Defendants'] unlawful conduct, DVG has been injured in their business, including by lost sales, and are threatened with further injury."); *cf. Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal.*, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

Although the Counter-Defendants insist that "the state of Florida has no overriding interest in haling parties into Florida courts who have never set foot in Florida," *Hartman v. Shakeri*, 2013 WL 12094629, at *7 (S.D. Fla. June 14, 2013) (Seitz, J.), Florida is unquestionably interested in having Florida courts exercise personal jurisdiction over non-residents who harm Florida residents, *see, e.g.*, *Licciardello*, 544 F.3d at 1288 ("Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida. The Constitution is not offended by Florida's assertion of its jurisdiction over such nonresident tortfeasors."); *Sinclair & Wilde, Ltd. v. TWA Int'l, Inc.*, 2020 WL 1929262, at *4 (S.D. Fla. Apr. 21, 2020) (Scola, J.) ("The Defendants argue that the Court's exercise of jurisdiction would violate fair play and substantial justice because the Defendants are unduly burdened by litigating in Florida because they are citizens of other states and because Florida has no interest in this dispute. . . . Florida has an interest in litigating this dispute because to ensure these violations of law do not occur in Florida and because the alleged harm to Plaintiff has been felt in Florida." (cleaned up)). We therefore conclude that "the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Mosseri*, 736 F.3d at 1355.

*     *     *

DVG has satisfied us that we may exercise specific personal jurisdiction over the Counter-Defendants under FLA. STAT. § 48.193(1)(a)(2) and the Due Process Clause. Accordingly, we **DENY**

the MTD insofar as it asks us to dismiss this case for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2).[6]

## II.     Failure to State a Claim

The second part of the MTD attacks Counts II through V of the Counterclaims for their alleged failure to state a claim under Rule 12(b)(6). *See* MTD at 14 ("Counts II–V of the Counterclaim and Third-Party Complaint against ZAGG and Screenya should also be dismissed for the independent reason that they fail to state a claim."). We'll address each count in turn.

### A.     Count II: Defamation

To plead a viable defamation claim under Florida law, a party must properly allege five elements: "(1) publication; (2) falsity; (3) actor must act . . . negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing RESTATEMENT (SECOND) OF TORTS §§ 558B, 580A–580B). The Counter-Defendants' argument here is simple: "DVG does not allege how or why [the] statement[s] [are] false[.]" MTD at 15. We disagree.

---

[6] In this Order (it's true), we've only shown that we can exercise specific personal jurisdiction over the FDUTPA Counterclaim. But, under the doctrine of pendent-*claim* personal jurisdiction, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004); *see also Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) ("Pendent[-claim] personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002)); *accord Carter v. Ford Motor Co.*, 2021 WL 1165248, at *8 & n.12 (S.D. Fla. Mar. 26, 2021) (Altman, J.). And our Counter-Defendants never suggest that the *other* three Counterclaims—defamation, false advertising, and civil conspiracy—*don't* arise out of the same common nucleus of operative facts as the FDUTPA Counterclaim. We therefore find that (at the very least) we can exercise pendent-claim personal jurisdiction over those other Counterclaims.

In its Counterclaims, DVG produces four statements—purportedly drafted by Defendant Longmore on behalf of ZAGG—and specifically alleges that "Zagg and Longmore falsely reported to Amazon that the [ZAGG] Product sold by DVG infringed [ZAGG's] rights in the [ZAGG] Registration." Counterclaims ¶ 59; *see also id.* ¶¶ 67–68 ("Longmore falsely reported to Amazon that the 'product we received is the wrong product' [and] that the [ZAGG] Product sold by DVG infringed [ZAGG's] rights in the [ZAGG] Registration."); *id.* ¶¶ 77–78 (same); *id.* ¶¶ 87–88 (same). DVG also alleges that ZAGG and Longmore knew these statements were false because the Counter-Defendants had previously purchased DVG's products and had seen that DVG's listings were accurate and did not infringe on ZAGG's trademarks. *See id.* ¶¶ 69–71 ("Prior to filing the above report, [ZAGG] and Longmore performed a test purchase and knew that their statements to Amazon were false. . . . [ZAGG] and Longmore's allegation[s] . . . were knowingly false and made in bad faith.").

These allegations—which we assume to be true at this stage of the case—are plainly sufficient to establish falsity under Florida law.[7] *See, e.g.*, *SZS Sols., Inc. v. Brothers Int'l Corp.*, 2018 WL 3126220, at *3 (S.D. Fla. June 26, 2018) (Gayles, J.) ("[T]he Complaint described the allegedly defamatory statement and stated when it was communicated to Amazon by Brother. The information in the Complaint is sufficient to give Brother fair notice of the basis of Plaintiff's claim."); *Wilco Trading LLC*

---

[7] The Counter-Defendants rely on *Trump v. Clinton*, 626 F. Supp. 3d 1264 (S.D. Fla. 2022) (Middlebrooks, J.), for the proposition that "bare, conclusory allegations of falsity are insufficient to state a claim premised upon falsity." MTD at 15; *see also* MTD Reply at 7 (same). But, in *Trump*, the plaintiff alleged that the defendants' statements were false *without* explaining how or why they were false. *See* 626 F. Supp. 3d at 1310 n.17 ("Plaintiff's conclusory allegations that 'Defendants . . . made, disseminated and/or published false and damaging statements concerning Plaintiff, specifically that he was colluding with Russia and its President Vladimir Putin' are not sufficient under *Twombly* absent some allegations explaining the basis for Plaintiff's falsity claim."). Here, by contrast, DVG alleges that ZAGG and Longmore purchased DVG's items from Amazon, knew that they received a ZAGG product that *didn't* infringe on ZAGG's trademarks, and yet falsely told Amazon that the products violated ZAGG's trademarks. *See, e.g.*, Counterclaims ¶ 69. Contra the Counter-Defendants' characterization, in other words, DVG has done far more than "simply allege that the statement is 'false[.]'" MTD Reply at 8.

*v. Shabat*, 2021 WL 1146634, at *8 (M.D. Fla. Mar. 8, 2021) (Sneed, Mag. J.) ("Here, Plaintiff sufficiently alleges that Defendants committed defamation *per se* by making false complaints to Amazon that Plaintiff was selling counterfeit goods. According to the Complaint, Defendant accused Plaintiff of unlawful activity for the purpose of having Plaintiff's listings of competing products removed from Amazon. The Court finds that Plaintiff's allegations as set forth in its Complaint are sufficient to state a claim of defamation under Florida law."), *report and recommendation adopted*, 2021 WL 1140097 (M.D. Fla. Mar. 25, 2021) (Barber, J.). We therefore **DENY** the MTD as to Count II.

### B.    Count III: False Advertising

Count III of the Counterclaims alleges that Counter-Defendants ZAGG and Longmore "knowingly made false, misleading, disparaging and defamatory statements in commerce through the notices to Amazon of infringement relating to the products associated with DVG's product listings," in violation of the Lanham Act. Counterclaims ¶ 184. To assert a plausible "false advertising" claim under 15 U.S.C. § 1125(a)(1)(B), DVG must show that (1) the Counter-Defendants "made 'false or misleading' statements," and that (2) those statements "deceived, or had the capacity to deceive, consumers." *Belcher Pharms., LLC v. Hospira, Inc.*, 1 F.4th 1374, 1378 (11th Cir. 2021) (quoting *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018)).

The Counter-Defendants identify two purported flaws in Count III. *First*, they say that DVG failed to allege that the Counter-Defendants' statements were "false or misleading." MTD at 15. This one's easy: As we've said, DVG specifically alleges that the Counter-Defendants "knowingly made false, misleading, disparaging and defamatory statements in commerce through the notices to Amazon of infringement relating to the products associated with DVG's product listings." Counterclaims ¶ 184. That's sufficient for us to reject the Counter-Defendants' first argument. *Second*, the Counter-Defendants contend that the "purportedly false statements serving as the basis of the claim—the

takedown notices to Amazon—were not statements made in 'commercial advertising or promotion.'" MTD at 16. We agree—and therefore dismiss Count III *without* prejudice.

The Eleventh Circuit has adopted the following four-part test for determining whether a statement constitutes "false advertising" under the Lanham Act:

> [The representation] must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Suntree Techs., Inc v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012) (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994) (Sand, J.)).

The Counter-Defendants insist that their alleged statements to Amazon do not satisfy this test because "the takedown notices were submitted directly and privately to Amazon, not disseminated to the public 'in commercial advertising or promotion.' In other words, the statements were not made 'to influence consumers to purchase [ZAGG's] product.'" MTD at 16 (quoting *Suntree Techs., Inc v. Ecosense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1287 (M.D. Fla. 2011) (Antoon, J.), *aff'd*, 693 F.3d 1338 (11th Cir. 2012)). We agree. The takedown messages DVG is complaining about were addressed *solely* to Amazon, were not directed at consumers, and thus could not have been "disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion" under the Lanham Act. *Suntree Techs.*, 693 F.3d at 1349 (quoting *Gordon & Breach*, 859 F. Supp. at 1536*); see also ibid.* ("The record shows that the [allegedly false] maintenance presentation was created at the request of an existing client. It was not created to promote or advertise Ecosense's products, but for training customers who had already purchased the product. . . . Suntree also failed to present any evidence that the brochure was actually disseminated to any potential customers."); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1251 (11th Cir. 2002) (rejecting false-advertising claim where (as here) "there would be no reason for consumers to see [the allegedly false pamphlet]").

DVG believes it successfully alleged that the Counter-Defendants' "false and misleading representations were *sufficiently disseminated to actual and prospective customers* by way of the Notices to Amazon so as to constitute advertising." Counterclaims ¶ 187 (emphasis added); *see also, e.g.*, *Verbena Prods. LLC v. BeSweet Creations Inc.*, 2022 WL 18864660, at *5 (S.D. Fla. Feb. 16, 2022) (Huck, J.) ("The Court notes, however, that the Amended Complaint contains allegations—which, of course, must be taken as true at this stage of the proceedings—indicating that the report Defendants sent to Amazon constitute commercial advertising. For example, Beautyvice alleges that Defendants' statements deceived Amazon and 'are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Plaintiff's products are counterfeit.'"). But this allegation is wholly conclusory. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). DVG never explains how these notices were disseminated to customers—especially given that the notices themselves include no information from which we could reasonably infer that they were made publicly available. *See, e.g.*, Counterclaims ¶ 58 ("We [Amazon] removed some of your [DVG] listings because we received a report from a rights owner that they may violate the rights owner's intellectual property."); *see also id.* ¶ 57 ("Longmore proceeded to file a false report of trademark infringement *with Amazon*." (emphasis added)). And, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Still, we'll give DVG one final opportunity to plead this claim. If DVG believes in good faith that it can maintain a false-advertising claim against the Counter-Defendants, it must file an amended answer and counterclaim, specifically alleging how the takedown notices were made "'for the purpose of influencing consumers to buy [the Counter-Defendants'] goods or services' and [how] they were 'disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion'

within that industry.'" *Suntree Techs.*, 693 F.3d at 1349 (quoting *Gordon & Breach*, 859 F. Supp. at 1535–36). Until then, we **GRANT** the MTD and **DISMISS** Count III *without prejudice*.[8]

### C.    Count IV: Civil Conspiracy

Next, the Counter-Defendants allege that "DVG has not met its burden to adequately plead civil conspiracy" because it "has not alleged anything beyond the mere existence of the Screenya Amazon seller account and its listed business address to concoct its theory of a civil conspiracy involving [the Counter-Defendants]." MTD at 17–18. To assert a proper civil-conspiracy claim, "a plaintiff must allege '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (Bloom, J.) (quoting *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014)).

Because civil conspiracy sounds in fraud, DVG's factual allegations must also comport with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) ("The insurers' civil conspiracy claims also fail to comport with the standards of Rule 9(b)."). Rule 9(b) requires plaintiffs to "set[ ] forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements

---

[8] We've decided to give DVG one final chance to plead this case *both* because it asked for leave to amend any deficiency in its Counterclaims, *see* MTD Response at 22, *and* because we cannot say—on the limited record before us—that any such amendment would be futile, *see Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) ("[W]e have noted that a district court's discretion to dismiss a complaint without leave to amend is severely restricted by Federal Rule of Civil Procedure 15(a)(2), which mandates that leave to amend, when requested by the plaintiff, 'be freely given when justice so requires.'" (cleaned up)).

and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

DVG's civil-conspiracy claim easily meets this heightened standard. DVG alleges that all of the Counter-Defendants agreed to commit unlawful acts (wire fraud under 18 U.S.C. § 1343 and "tortious interference with DVG's contractual and business relationships," Counterclaims ¶¶ 208–09); that they took overt acts to further that conspiracy (by "unfairly and illegally manipulat[ing] Amazon's pricing algorithms to drive up the retail price of [ZAGG] Products" and by raising "frivolous claims of infringement with Amazon" *id.* ¶ 205); and that these actions injured DVG (by causing their products to be removed "from Amazon's website," *id.* ¶ 209).

Count IV also meets the requirements of Rule 9(b). DVG (1) listed the statements the Counter-Defendants made in furtherance of the conspiracy (the four allegedly false takedown notices to Amazon), *see id.* ¶¶ 58 ("We received a report from a rights owner alleging that one or more of your listings may be violating the intellectual property rights of others.");[9] (2) identified *who* made these fraudulent statements and *when*, *see id.* ¶¶ 57–58 (alleging that, "[o]n or about April 27, 2022," Defendant "Longmore proceeded to file a false report of trademark infringement with Amazon");[10] *id.* ¶¶ 102–03 (alleging that, "on or about May 10, 2022, [ZAGG] formed Screenya as a Delaware company" as part of "a scheme to evade Amazon's policies and prevent fair competition in the marketplace"); (3) described the contents of the statements and their misleading character, *see id.* ¶¶ 59–60 (averring that the Counter-Defendants "falsely reported to Amazon" that "the product we received is the wrong product" and that the product "sold by DVG infringed [ZAGG's] rights in the

---

[9] *See also id.* ¶ 66 (same); *id.* ¶ 76 (same); *id.* ¶ 86 (same).
[10] *See also id.* ¶¶ 65–66 (same, but on May 11, 2022); ¶¶ 75–76 (same, but on December 23, 2022); *id.* ¶¶ 85–86 (same, but on January 5, 2023).

[ZAGG] Registration"); and (4) outlined exactly what the Counter-Defendants obtained as a result of their alleged fraud, *see id.* ¶ 205 (alleging that the Counter-Defendants "unfairly and illegally manipulate[d] Amazon's pricing algorithms to drive up the retail price" of ZAGG's products). That's enough for now.

We therefore **DENY** the MTD as to Count IV.

### D.    Count V: FDUTPA

The Counter-Defendants' final argument is that "DVG fails to state a claim under FDUTPA, FLA. STAT. § 501.201, because it has not alleged that the offending conduct took place in Florida." MTD at 18. DVG counters that FDUTPA applies here because "a substantial part of the Counter-Defendants' conspiracy occurred within Florida," since they "attempted to fix or maintain prices in Florida" in a way that "substantially affected Florida's trade and commerce." MTD Response at 17 (cleaned up). Again, we agree with DVG.

"To establish a claim under the FDUTPA, Plaintiffs must allege (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 3d 1321, 1330 (S.D. Fla. 2012) (Seitz, J.) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). "FDUTPA applies only to action[s] that occurred within the state of Florida." *Carnival Corp. v. Rolls-Royce PLC*, 2009 WL 3861450, at *6 (S.D. Fla. Nov. 17, 2009) (Seitz, J.) (citing *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000)).[11] That said, the allegedly violative conduct needn't occur *exclusively* in Florida. *See Karhu*, 2013 WL 4047016, at *9 (explaining that FDUTPA applies "if the offending conduct occurred *predominantly* or exclusively in Florida" (emphasis added)); *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, 2012 WL 1570057, at *6 (S.D. Fla.

---

[11] "Nothing in the language of [FDUTPA] suggests that it is limited to transactions involving Florida consumers." *Karhu v. Vital Pharms.*, 2013 WL 4047016, at *10 (S.D. Fla. Aug. 9, 2013) (Cohn, J.) (citing FLA. STAT. §§ 501.202–.204).

May 2, 2012) (Altonaga, J.) ("Further, the Court finds nothing in *Millennium* suggests that the FDUTPA applies *only* when conduct occurs *entirely within Florida.* To the contrary, *Millennium* highlighted the broad statutory language used in the FDUTPA. . . . The FDUTPA is to be applied broadly and is not limited in the manner espoused by Defendants." (emphasis added)); *Eli Lilly & Co. v. Tyco Integrated Sec.*, 2015 WL 11251732, at *4 (S.D. Fla. Feb. 10, 2015) (Bloom, J.) ("[T]here was nothing in [FDUTPA] that limited relief to Florida consumers or situations where the conduct occurs only in Florida.").

DVG alleges that the Counter-Defendants "entered into a contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce pertaining to [ZAGG] Products, a substantial part of which occurred within Florida." Counterclaims ¶ 220. In other words, DVG believes that the Counter-Defendants' allegedly unfair and deceptive practices—*viz.*, their scheme to artificially inflate the prices of their goods by manipulating Amazon's pricing algorithm and by harassing third-party sellers like DVG—were designed to cause harm to both DVG (a company whose primary place of business is in Florida) and Florida consumers. *See id.* ¶ 221 ("Defendants established, maintained or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market, for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level[.]"); *id.* ¶ 224 ("As a direct and proximate cause of Counterclaim-Defendants' unlawful conduct, DVG has been injured in their business, including by lost sales, and are threatened with further injury.").

These allegations are sufficient to state a claim under FDUTPA because DVG avers that (1) the Counter-Defendants engaged in deceptive or unfair business practices, and that (2) these deceptive or unfair acts caused DVG (and other consumers) to suffer an injury in Florida. *See, e.g.*, *Execu-Tech*, 752 So. 2d at 585 ("As noted above, Execu–Tech alleged that New Oji and other major manufacturers and trading houses of thermal fax paper deliberately conspired to fix the wholesale price of their

product throughout the United States, including Florida. This conduct constitutes a violation of the [FDUTPA], which prohibits 'unfair or deceptive acts or practices in the conduct of any trade or commerce.'" (quoting FLA. STAT. § 501.204(1))); *Weiner v. Podesto*, 2019 WL 7708494, at *5 (S.D. Fla. Aug. 2, 2019) (Cohn, J.) (finding that the Florida plaintiff had stated a legally sufficient FDUTPA claim against the Colorado defendant "[b]y alleging that [the defendant] deceived consumers into utilizing his services instead of [the plaintiff's] services"). Although we accept that much of the Counter-Defendants' alleged conduct occurred *outside* Florida, *see ante*, at 11–12, it's just not the case that "there are no factual allegations . . . that indicate that any offending conduct took place in Florida," MTD Reply at 11. As we've said, the Counter-Defendants stand accused of "excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level" in a way that "substantially affected Florida's trade and commerce"—including through "lost sales" for DVG, whose principal place of business is in Florida. Counterclaims ¶¶ 221–24. And that's enough at this pleading phase of the case. *See Barnext Offshore*, 2012 WL 1570057, at *6 ("The FDUTPA is to be applied broadly and is not limited in the manner espoused by Defendants."). We therefore **DENY** the motion to dismiss Count V.

CONCLUSION

Accordingly, after careful review, we hereby **ORDER and ADJUDGE** as follows:

1.  The Counter-Defendants' Motion to Dismiss the Counterclaims [ECF No. 50] is **GRANTED in part** and **DENIED in part**. Count III of the Counterclaims is **DISMISSED without prejudice**. The Motion to Dismiss is otherwise **DENIED**.

2.  The Counter-Plaintiff may (if it can in good faith) amend Count III of its Counterclaims within **fourteen days** of this Order. **But the Counter-Plaintiff may not amend any other part of its Counterclaims or add any new counts or defendants**.

3.  The parties shall prepare and file an amended joint scheduling report, as required by Local

Rule 16.1, within **ten days** of this Order. An amended scheduling order will issue shortly thereafter.

4. The Clerk is directed to **REOPEN** the case and **LIFT** the stay.

**DONE AND ORDERED** in the Southern District of Florida on August 20, 2024.

 

 

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record