**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

ZAGG INC,                                             **Case No.: 1:23-cv-20304-ALTMAN/REID**

      Plaintiff,

v.

MENACHEM MENDEL ICHILEVICI;
TX TRADING INC.;
DVG TRADE LLC; and

      Defendants.
_____/

DVG TRADE LLC,

      Counterclaim-Plaintiff,

v.

ZAGG INC., SCREENYA, LLC,
MERRIL LONGMORE, and
BRENDAN BUCKNER,

      Counterclaim-Defendants.
_____/

**DVG TRADE LLC'S RULE 72(a) OBJECTIONS TO THE**
**COURT'S AUGUST 28, 2024 DISCOVERY ORDER**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant DVG Trade LLC ("DVG" or "Defendant") respectfully submits these Objections to the Order of United States Magistrate Judge Lisette M. Reid dated August 28, 2024, and served on DVG on August 29, 2024 "requir[ing] DVG to produce 'Order Details' of ZAGG products sold by DVG from 2020 to the present." (ECF No. 210, "Discovery Order," ¶ 2.).

**I.     INTRODUCTION**

This case relates to the resale of Zagg-brand products ("Zagg Products") on the Amazon.com marketplace ("Amazon"). Zagg's Complaint alleges that the resale of Zagg Products

1

through the "Mac N' Cheese" storefront on Amazon somehow infringes Zagg's trademark rights. Zagg later claimed that that DVG was engaged in "false advertising" because the (brand new and unopened) Zagg Products sold by DVG cannot be advertised as "new." (ECF No. 78 at 5–16.) In reality, each of Zagg's theories fail—DVG's mere acquisition and resale of genuine Zagg Products is not actionable. Rather, this case is simply one of many filed by Zagg to eliminate smaller sellers of Zagg Products.

At the August 28, 2024 conference, Zagg's counsel argued that Zagg required documents from DVG because "[Zagg's] burden as the plaintiff in this case, on a false advertising case, is … to show that the products that [Defendants] have sold were sold in new condition." (ECF No. 217, 8/28/24 Hr'g Tr. 28:6–8.) Zagg argued that "Order Details" should be produced because they contain the product condition. (*See, e.g.*, *id.* at 26:3–9, 28:14–20.) Although Zagg intentionally misled the Court as to what information was included in these "Order Details," the parties understood that production of the "Order Details" would require DVG to create, one-by-one, screenshots of records from more than 40,000 individual orders of Zagg Products, from DVG's password-protected Amazon selling account.

Zagg argued that its request for the "Order Details" was not untimely, because it was supposedly prompted by DVG's production of the sampling of "automated messages containing confirmations of [DVG]'s sales of ZAGG products" from May 1, 2024 to May 15, 2024, which DVG produced in response to the Court's May 24, 2024 Order.

However, as stated in DVG's July 25, 2024 email to the Court (ECF No. 218-6) made in response to Zagg's email request for the "Order Details" and the August 28 discovery conference, Zagg misrepresented the facts. At the May 15, 2024 conference, the Court entertained Zagg's request to see a two-week sampling of the "order confirmation" emails based on Zagg's

2

speculation that they might include new information that Zagg had not already received in discovery. (*See* ECF No. 194, 5/15/24 Hr'g Tr. 55:3-57:15.) DVG produced that sampling, which consisted of 87 emails spanning 500+ pages (DVG911–1432). As DVG had previously advised the Court, those order confirmation emails include no relevant information—they are generic emails saying orders have been received and the products have shipped. One such email was submitted to the Court prior to the August 28 conference as an attachment to DVG's July 25, 2024 email. (*See* ECF Nos. 218-3 & 218-6.)[1]

Zagg's later "Order Details" request had nothing to do with DVG's production of the automated order confirmation emails. Indeed, Zagg's email to the Court requesting a conference (*see* ECF No. 218-6) did not point to *any* of the emails produced in DVG's sampling as containing any new or relevant information. At the August 28, 2024 discovery conference, Zagg argued that its request for "Order Details" was prompted by the fact that such automated emails have a "Manage orders" link included in each email. (*See* ECF No. 218-2 at Slide 1.) But Zagg previously knew that the "Order details" function existed in Amazon's portal, because similar order details were produced by DVG in June of 2023 (*see* ECF No. 218-4) and Zagg uses this same portal as part of its business.

Moreover, as explained in DVG's July 25, 2024 email (ECF No. 218-6) as well as at the August 28, 2024 discovery conference (ECF No. 217, 8/28/24 Hr'g Tr. 23:2–14, 32:16–21) the requested "Order Details" do **not** include the product's "stated condition" as falsely claimed by Zagg. Further, as also explained in DVG's email and at the conference, the only way to create the

---

[1] Because there was some confusion at the August 28, 2024 discovery conference (*see, e.g.*, ECF No. 217, 8/28/24 Hr'g Tr. 34:15), DVG respectfully clarifies that the "Order Details" were not the subject of the Court's May 24, 2024 Order (*see* ECF No. 178). The first time Zagg made a request for "Order Details" was by email to DVG's counsel dated July 10, 2024. (*See* ECF No. 218-6.)

3

requested "Order Details" is by clicking into each order and creating an individual screenshot. (*Id.* at 22:11–24.) The Court even agreed that this is "a lot" "to be done one by one." (*Id.* at 35:20–21.) The extreme burden on DVG in creating more than 40,000 screenshots is not justified given that there is no additional substantive information in these screenshots that was not already produced by DVG.

Accordingly, DVG respectfully requests that the Court sustain these Objections and deny Zagg's request for "Order Details" because: (1) the Discovery Order erred in finding that the "Order Details" are relevant—the "Order Details" do **not** "contain information regarding the condition of the products at issue, whether new or used"; and (2) the Discovery Order erred in finding that DVG had not established that production of the "Order Details" was unduly burdensome and/or by not permitting DVG to provide evidence supporting its burden arguments.

## II.  LEGAL STANDARD

"Rule 72(a) requires a district court to modify or vacate a magistrate judge's order to the extent that the order 'is clearly erroneous or is contrary to law.'" *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1366 (S.D. Fla.) (quoting Fed. R. Civ. P. 72(a)) (sustaining Rule 72(a) objections, setting aside the magistrate judge's order, and denying motion to quash), *aff'd sub nom. In re O'Keeffe*, 660 F. App'x 871 (11th Cir. 2016). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.*

## III.  THE COURT ERRONEOUSLY GRANTED ZAGG'S MOTION TO COMPEL

### A.  The Court's Order Is Premised on Erroneous Factual Findings

In granting Zagg's motion concerning the "Order Details," the Discovery Order relied on the factual finding that the "'Order Details' . . . contain information regarding the condition of the

4

products at issue, whether new or used" and thus "are relevant." (Order ¶ 2.)  **This factual determination is unsupported by any evidence proffered on the motion and is factually erroneous.**  Rather, Zagg intentionally misled the Court in an effort to create make-work for DVG.

Zagg submitted a hard-copy slideshow presentation to the Court at the August 28, 2024 discovery conference (ECF No. 218-2, "Zagg's Presentation"). *None* of the screenshots included in Zagg's Presentation included the "Order Details" requested by Zagg (and subsequently ordered to be created and produced by the Court). Instead, Zagg made arguments about various other types of documents (that also do not contain condition information for the Zagg Products sold by DVG).

Zagg first argued that its request for "Order Details" was prompted by the fact that the sampling of automated order confirmation emails produced by DVG have a "Manage orders" link included in each email. (ECF No. 218-2, Slide 1.)  The "Manage orders" link leads to the "Manage Orders" page of a seller's "Seller Central" Amazon.com selling account (i.e., a password protected webpage). (*See also* ECF No. 218-1 ¶ 7.) The "Manage Orders" page on any seller's "Seller Central" account includes a list of orders by customers from that particular seller.  (*See also id.* at ¶ 8.) It lists certain information about each order, but does **not** include information regarding the "condition" of the products ordered (e.g., new or used).  (*See also id.*)



As shown in the above representative screenshot, from the "Manage Orders" page, a seller

can access an "Order Details" page for a single, specific order, by clicking on the Order number. (*See also* ECF No. 218-1 ¶ 10.)  Zagg's Presentation does not include any example of what the "Order Details" page looks like. (*See* ECF No. 218-2.)

An example of the "Order Details" page, was submitted **by DVG** both in its July 25, 2024 email to the Court on this issue, and in-person at the August 28, 2024 discovery conference. (*See* ECF Nos. 218-4 & 218-6.) As can be seen in ECF No. 218-4, the "Order details" page for any given order does **not** include information regarding the "condition" of the product ordered (e.g., new or used).  (*See also* ECF No. 218-1 ¶ 11.)

Both before and after the August 28, 2024 discovery conference, DVG clicked through dozens of Amazon customer orders and confirmed that the "Order Details" page does **not** include information regarding the "condition" of the product sold in that order. (*See also id.* at ¶ 12–13; ECF No. 218-5.)  Thus, the Court's factual basis for finding that the "Order Details" are relevant is incorrect—the "Order Details" discussed at the August 28, 2024 discovery conference do **not** include information regarding the "condition" of the product ordered (e.g., new or used).

Zagg's Presentation also included several other types of documents to mislead the court. On Slide 2 of Zagg's Presentation, Zagg included a third type of document, i.e., an automated email that solicits Amazon **customers** to leave feedback for a seller. (ECF No. 218-2, Slide 2; *see also* ECF No. 218-1 ¶¶ 17–18.)  DVG, as a **seller** of products does not receive any such emails concerning the products it sells. (ECF No. 218-1 ¶ 18.)  As an Amazon seller itself, Zagg knows this, but chose to (falsely) imply that DVG was withholding "emails displaying product condition." (ECF No. 218-2, Slide 2.)  Zagg's assertion that such emails "display[] product condition" is also incorrect; Zagg is pointing to part of the **title** of the product sold on that particular Amazon listing, not the **condition** information, which is something separate. (ECF No. 218-1 ¶ 19.)  And, if Zagg

6

was truly interested in this title information, it does not need DVG to produce anything—that title information is publicly available to anyone by searching Amazon.com, and is already available to Zagg and has been for years. (*Id.*)

Next, Slides 3 and 4 of Zagg's Presentation pointed to a fourth type of document, namely, customer-side invoices. (ECF No. 218-2, Slides 3 & 4.)  Those are documents that a **customer** can download from their Amazon account after purchasing a product on Amazon. (*See also* ECF No. 218-1 ¶ 20.)  DVG, as a **seller** of products, does not have anything equivalent with the product condition on it concerning the products it sells.  (*See also id.*)

Finally, after the August 28, 2024 discovery conference, Zagg's counsel pointed to a fifth type of document as supposedly relating to the "order details" documents it had sought to compel. On September 3, 2024, Zagg's counsel wrote to DVG's counsel stating the following:

> As discussed at the hearing, in the "Manage Orders" section there is a list of all products bought and sold through DVG's AMZN account. The Manage Orders contains both the price the product was sold and the condition it was sold in. …
> As for the condition of the product, you must simply click through the order number. Here is an example:

> ☐ 12 months ago         rl036oP6XZ
> 7/25/2023              Fulfillment method: Amazon
> 3:51 PM PDT            Sales channel: Non-Amazon
>                        Billing Country/Region: US
>                        Seller order ID: rl036oP6XZ

> If you click on the order number – rl036oP6XZ above – it brings you to the order details page which provides the condition sold.  Here is an example:

**Product Details**

Braven 405 Wireless Portable Bluetooth 2100 mAh Waterproof Speaker - Raspberry
**Merchant SKU:** B405RGG
**FNSKU:** B01L9YU4II
**ASIN :** B01L9YU4II
**Order Item ID:** B01L9YU4II#SELLABLE#1
**Disposition:** Sellable
**Condition:** New
**EAN:** 0817729012883
**UPC:** 817729012883

But Zagg's counsel's explanation above is incorrect. (*See also* ECF No. 218-1 ¶¶ 21–22.) The screenshots provided by Zagg's counsel do **not** relate to products sold to Amazon customers, rather they relate to, sales made on a different e-commerce platform (e.g., www.zagg.com), but fulfilled using Amazon's fulfilment services. (*See also id.* at ¶ 22.) Indeed, the screenshot clearly states "Sales Channel: Non-Amazon." DVG does not sell products on other platforms (like Zagg does) and, therefore, has no analogous records. There is no equivalent process for a seller to create a screenshot for Amazon-based sales with the product condition. (*See also id.*)

In sum, the factual basis for the August 28 Order that the "Order Details" "contain information regarding the condition of the products at issue, whether new or used" is incorrect. (*See also id.* at ¶ 23.) Accordingly, DVG respectfully requests reconsideration of the August 28 Order and that Zagg's request for "Order Details" be denied.

**B.    It Would Be Unduly Burdensome (and Result in No Substantive Benefit to Zagg) to Require DVG to Create More than 40,000 Screenshots**

In addition to the lack of relevance of the "Order Details" (and the lack of any conceivable need of Zagg to have those screenshots created), the overwhelming burden to DVG in creating those documents also warrants denying Zagg's request for them. During the August 28, 2024 discovery conference, it was agreed that production of the "Order Details" would involve one-by-

8

one creation of more than 40,000 individual screenshots, which the Court agreed was "a lot" "to be done one by one." (ECF No. 217, 8/28/24 Hr'g Tr. 35:20–21.) Nonetheless, the Discovery Order found that "DVG . . . failed to meet its burden of demonstrating to the Court how the objected-to request is unreasonable or otherwise unduly burdensome." However, DVG never had a true opportunity to submit evidence on this issue (there was no briefing on Zagg's request for the "Order Details"); and the creation of more than 40,000 individual screenshots is inherently burdensome (especially where the screenshots will not include the "condition" or any other non-cumulative information).

If one does the math on the creation of 40,000 individual screenshots, it would take DVG, a small-business with a single employee, almost four months of full-time work to create the documents. (ECF No. 218-1 ¶¶ 15–16.) Specifically, assuming a screenshot can be generated every minute, it would take approximately 667 hours of time (i.e., 83 eight-hour workdays, which is equivalent to 16 workweeks, which is almost four months of fulltime work). (*Id.* at ¶ 15.) This estimate is based on the more than 40,000 orders for Zagg Products in DVG's "Seller Central" Account, and assumes that a screenshot can be generated each minute for every single minute of a 40-hour workweek. (*Id.*)

To complete such a time-consuming task, the sole employee of DVG, Mr. Ichilevici would have to put his business aside and instead work full-time on create the "Order Details" screenshots. (*Id.* at ¶ 16.) If, instead, DVG were hire an ESI vendor with creating the screenshots (thereby entrusting a third-party with access to one of his most valuable business assets, i.e., his Amazon account), it would cost upwards of $100,000. (*Id.*) Clearly, neither option is proportional to the needs of discovery in this case, especially where, as explained above, the "Order Details" screenshots that would be created do **not** contain any condition information about the products.

9

Courts have found similar circumstances, where the requested discovery would require "thousands of dollars and well over one hundred hours of . . . time," to warrant denial of the discovery due to undue burden. *See, e.g.*, *Atwater v. Nat'l Football League Players Ass'n*, No. 1:06-CV-1510-JEC, 2008 WL 11334165, at *3 (N.D. Ga. July 16, 2008) (denying motion to compel due to undue burden and cost, where defendant's representative explained that the requested collection "would require the expenditure of thousands of dollars and well over one hundred hours of . . . time"); *In re Degitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *2 (W.D. Wash. May 8, 2007) (agreeing that, among other factors, burden of collection that would take "three months to complete, and would cost hundreds of thousands of dollars" warranted quashing of subpoena).

Accordingly, for this reason too, the Order erred in finding that DVG "failed to meet its burden of demonstrating to the Court how the objected-to request is unreasonable or otherwise unduly burdensome."

## IV.   CONCLUSION

For at least the foregoing reasons, DVG respectfully requests that the Court sustain these Objections, and deny "ZAGG's request to require DVG to produce 'Order Details' of ZAGG products sold by DVG from 2020 to the present."

Dated: September 12, 2024

                                                Respectfully submitted,

By:   */s/ Geoffrey M. Cahen*
     Geoffrey M. Cahen
     Florida Bar No. 0013319
     CAHEN LAW, P.A.
     1900 Glades Road, Suite 270
     Boca Raton, Florida  33431
     Tel. No.: (561) 922-0430
     Geoff@cahenlaw.com

     Mark Berkowitz (*Pro Hac Vice*)
     Sandra A. Hudak (*Pro Hac Vice*)
     TARTER KRINSKY & DROGIN LLP
     1350 Broadway
     New York, NY  10018
     Tel. No: (212) 216-8000
     mberkowitz@tarterkrinsky.com
     shudak@tarterkrinsky.com

     *Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed, this **12th day of September, 2024** to:

*Counsel for Plaintiff*

Mallory Meagan Cooney
K&L Gates LLP
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131
Email: mallory.cooney@klgates.com

Morgan T. Nickerson
K&L Gates LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Email: morgan.nickerson@klgates.com

By: */s/ Geoffrey M. Cahen*