**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

ZAGG INC,    Case No.: 1:23-cv-20304-RKA

    Plaintiff,

v.

MENACHEM MENDEL ICHILEVICI;
TX TRADING INC.;
DVG TRADE LLC; and

    Defendants.
_____/

DVG TRADE LLC,

    Counterclaim-Plaintiff,

v.

ZAGG INC., SCREENYA, LLC,
MERRIL LONGMORE, and
BRENDAN BUCKNER,

    Counterclaim-Defendants.
_____/

**PLAINTIFF ZAGG INC.'S MOTION FOR SPOLIATION OF EVIDENCE**
**AGAINST DEFENDANT DVG TRADE LLC**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and this Court's September 26, 2024 Order [ECF No. 24], Plaintiff ZAGG, Inc. ("**ZAGG**" or "**Plaintiff**"), by and through its undersigned counsel, hereby files this motion for spoliation of evidence against Defendant DVG Trade LLC ("**DVG**" or "**Defendant**") due to its spoliation of invoices evidencing DVG's purchases of ZAGG products and the condition of those products, from its supplier ("**DVG Supplier**"). Defendant has admitted that it receives paper invoices with every order purchased from DVG Supplier but has failed to retain the majority of them and thus, has failed to produce invoices representing tens of thousands of ZAGG products DVG purchased from DVG Supplier, documents which are undoubtedly crucial in this litigation. For the reasons set forth herein, ZAGG respectfully requests that this Court sanction Defendant due to its spoliation of evidence, including, but not limited to, drawing an adverse inference that all ZAGG products Defendant purchased from DVG Supplier are not in "new" condition and for its costs and reasonable attorney fees incurred in bringing this motion.

## I.     BACKGROUND

DVG has been purchasing ZAGG products, among others, from DVG Supplier for at least three or four years. *See* **Exhibit A**, November 29, 2023 Deposition Transcript of Menachem Mendel Ichilevici ("**Ichilevici Dep. Tr.** ") 136:19–137:1; **Exhibit B**, August 15, 2024 Deposition Transcript of DVG Supplier ("**Supplier Dep. Tr**.") 26:10–27:11. Both DVG and DVG Supplier testified that each time DVG Supplier delivers an order to DVG, the delivery is accompanied by a paper invoice delineating the names of the items purchased, the quantity of each item, and a description of the products purchased. Ichilevici Dep. Tr. 150:18–25; Supplier Dep. Tr. 28:24–29:11. However, DVG has only preserved and produced *three invoices* in this case – one from May of 2022 and two from November of 2022. These three invoices represent ▓▓▓▓

1

▮ that DVG has purchased from DVG Supplier.[1] *See* Ichilevici Dep. Tr. 149:7–16; *see also* **Exhibit C**, Produced Invoices.

DVG's spoliation is more egregious when put into the context of the instant litigation. Since this case was filed on January 26, 2023, DVG has not preserved a single invoice of the ZAGG products it sold. Instead, the testimony is clear that *since this lawsuit was filed each invoice of ZAGG product received by DVG was discarded and/or destroyed*. Indeed, in Ichilevici's November 2023 deposition, Ichilevici confirmed that he receives invoices every time he makes a purchase from DVG's Supplier but reiterated frequently that he could not confirm whether he had saved the invoices. *See, e.g.* Ichilevici Dep. Tr. 149:24–150:4. In fact, the only sales data numbers produced by DVG were produced in a spreadsheet created by Ichilevici for this litigation, and he could not tell counsel for ZAGG whether the data was representative of all ZAGG products sold by DVG or if not, what time period the spreadsheet even covered. *Id.* 156:22–157:21; *see* **Exhibit D**, Ichilevici Spreadsheet of ZAGG Product.[2]

After Ichilevici's deposition in November 2023, counsel for ZAGG became increasingly concerned regarding the absence of these invoices. It served a subpoena on DVG Supplier for its sales documents relevant to this case, including the invoices DVG Supplier provides to DVG upon every delivery. For months, DVG aggressively attempted to block ZAGG from receiving documents from DVG Supplier entirely, first by concealing DVG Supplier's identity, and then

---

[1] There are ▮ ZAGG products total reflected on two invoices produced by DVG. However, the third invoice produced by DVG reflects ▮ "unmanifested accessories." *See* **Ex. C**, at DVG000691. Ichilevici could not determine what quantity, or even an estimate of the quantity, of ZAGG products were represented on the third invoice but stated, *from his memory*, that he remembered ZAGG products were included in the unmanifested lot. *See* Ichilevici Dep. Tr. 148:3–13.

[2] This spreadsheet, produced on or about July 6, 2023, shows a total of ▮ units sold (though the time period is not known). In the best circumstance, assuming this spreadsheet had *all* ZAGG products sold by DVG until July 6, 2023, the invoices produced in this matter prior to that date (again, only three of which were produced by DVG which reflected 2022 sales) reflect ▮ ZAGG products, leaving a delta of ***at least*** ▮ ZAGG products that are not represented on invoices produced.

later by arguing against DVG Supplier being required to produce documents both in unnecessary motions and hearings before this Court. In numerous hearings, upon repeated questioning by this Court as to where the missing invoices could be, counsel for DVG repeatedly stated that they had "produced the invoices we have" or "[w]hatever we could find," all three of them. *See* Transcript of March 18, 2024 Discovery Hearing [ECF No. 171] 58:13–15; Transcript of May 15, 2024 Discovery Hearing [ECF No. 194] 39:22–40:15. In fact, counsel for DVG admitted that its production of invoices was incomplete and when asked by this Court what happened to the other invoices, counsel responded: "I don't know offhand." *See* Transcript of May 15, 2024 Discovery Hearing [ECF No. 194] 50:2–50:19. Nearly a year after ZAGG first requested documents from DVG Supplier, it received, in two separate productions, twelve (12) invoices representing sales to DVG partially demonstrating the misconduct of DVG. Furthermore, neither DVG nor DVG Supplier has supplemented its production with a single invoice from 2021, nine months of 2022, or 2024, all periods in which DVG received product from DVG Supplier. *See* Ichilevici Dep. Tr. 136:19–137:1; Supplier Dep. Tr. 26:10–27:11. To be sure, ZAGG would have at least expected DVG to preserve every invoice after Ichilevici's November 2023 deposition. However, this has not happened, despite the fact that DVG Supplier's production reflects at least one invoice it issued to DVG between the date of the deposition and the end of 2023. *See* **Exhibit C**, at SUP_502. Therefore, it appears that DVG not only failed to preserve the invoices when it was put on notice when this action was filed in January 2023, but worse, has failed to preserve invoices even after November 2023, after it was on undeniable notice to do so.

## II.  LEGAL STANDARD

Spoliation is the destruction or significant alteration of evidence or the failure to preserve evidence properly for another's use in pending or reasonably foreseeable litigation. *Penick v.*

3

*Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1291 (S.D. Fla. 2020) (quoting *Graff v. Baja Marine Corp.*, 130 F. App'x 298, 301 (11th Cir. 2009)); *see also Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citation omitted) ("Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence."). To establish spoliation, the movant must show that: (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence is crucial to the movant being able to prove its *prima facie* case or defense. *Penick*, 481 F. Supp. 3d at 1291–92 (quoting *Walter* 2010 WL 2927962, at *2 (additional citations omitted)). Once the Court determines that DVG's actions meet the three elements, it then considers whether the spoliation was done in bad faith. *Id.* at 1292.

In the Eleventh Circuit, "bad faith in the spoliation context [is interpreted] to not require a showing of malice or ill-will, but rather conduct evidencing more than mere negligence." *Penick*, 481 F. Supp. 3d at 1293 (internal quotation marks omitted); *see also Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009) ("[T]he spoliating party need not have acted with malice when spoliating the evidence in order for the court to draw an adverse inference."). Where direct evidence of bad faith is unavailable, the moving party may establish bad faith by circumstantial evidence. To successfully establish bad faith by circumstantial evidence, a movant must show: "(1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *In Matter of Compl. of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 520 (S.D. Fla. 2015).

4

Upon a finding of bad faith, courts have "broad discretion to fashion a remedy for spoliation." *Boston Boat*, 310 F.R.D. at 523; *see also Swofford*, 671 F. Supp. 2d at 1280. Sanctions range from complete dismissal or default judgment to excluding certain evidence or issuing an adverse inference (*i.e.*, jury instruction) on the spoliation, raising a presumption against the spoliator. *Schultze v. 2K Clevelander, LLC*, No. 17-CV-22684-MORENO/LOUIS, 2018 WL 4859071, at *3 (S.D. Fla. Oct. 4, 2018). Factors to consider when determining the seriousness of the sanction to impose include: "(1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *Penick*, 481 F. Supp. 3d at 1294) (quoting *Boston Boat*, 310 F.R.D. at 523).

Perhaps the most common remedy imposed is some version of an adverse inference, which "makes a finding or imposes a rebuttable presumption that the missing evidence would have been unfavorable to the party engaging in the misconduct." *Schultze*, 2018 WL 4859071, at *3. The key to a proper spoliation sanction is balance: the movant's prejudice from the missing evidence must be sufficiently mitigated while the spoliator's ability to benefit from the evidentiary problem created by its actions is lessened. *Penick*, 481 F. 2upp. 3d at 1296.

### III.     ARGUMENT

Here, spoliation undoubtedly occurred as DVG has not preserved a single invoice since this lawsuit was filed in January of 2023. As such, it is not surprising that ZAGG easily meets the foundational elements required for a finding of spoliation.

First, it is undisputed that the missing invoices existed at one time, as both representatives for DVG and DVG Supplier testified that a paper invoice accompanies each delivery. *See* Ichilevici Dep. Tr. 150:18–25; Supplier Dep. Tr. 28:24–29:11. Second, there is also no cogent argument that

5

DVG did not have a duty to preserve these invoices. Rather, at the very least, DVG had an active and clear obligation to preserve all evidence relating to ZAGG product the moment it became aware of this action, originally filed in January 2023. Moreover, DVG was put on blatant and unequivocable notice as to these invoices in Ichilevici's November 2023 deposition. Finally, the invoices reflecting the sale of ZAGG products from DVG Supplier to DVG are crucial to ZAGG being able to prove its *prima facie* case. ZAGG's claims against DVG center around the allegation that DVG offers for sale "new" ZAGG products on the internet, including, but not limited to Amazon.com, but fulfills the orders to consumers with used, closed-out, or liquidated products. *See* ECF No. 26, ¶¶ 42–45. From the limited number of invoices that ZAGG *has* received, it is clear that these invoices all contain a description of the product being sold. *See* **Ex. C**. Moreover, ZAGG has the burden to prove its damages in this action, which requires discovery into DVG's financials, including its purchases of the ZAGG products from DVG Supplier. *See Schultze*, 2018 WL 4859071, at *5 (finding missing documents were crucial to plaintiff's claim and ability to calculate damage and that it was not an adequate replacement to have plaintiff rely on second-level data rather than the original data that had been destroyed).

  Moreover, DVG's bad faith is palpable. First, as discussed above, the missing invoices existed at one time and are material to the proof of ZAGG's claims in this case. Second, DVG engaged in an affirmative act causing the evidence to be lost. In his November 2023 deposition, Ichilevici confirmed that he receives a paper invoice with every delivery of product from DVG Supplier but admitted that he is responsible for keeping them and that he does not always save them. *See* Ichilevici Dep. Tr. 149:17–150:4, 150:15–151:4; *see id.* 15:15–17. Third, DVG has engaged in spoliation while it had a duty to preserve evidence, with that duty beginning at least in January 2023 when this action was filed, and undeniably after Ichilevici's November 2023

6

deposition. Finally, DVG can provide "no cogent, benign explanation" for its spoliation of these highly relevant invoices. *See Swofford*, 671 F. Supp. 2d at 1284. In other words, DVG has had a clear duty to preserve all documents that may relate to its purchase and/or sale of ZAGG products and, despite this duty, destroyed key evidence. *See id.* (issuing adverse jury instruction where defendant could offer no legitimate explanation for his failure). While the stench of bad faith follows the spoliation of all invoices by DVG since its duty to preserve began, it is especially strong with respect to those invoices spoliated since Ichilevici's deposition at which he was specifically asked about his preservation of these crucial documents. *See Skanska USA Civil Southeast, Inc. v. Bagelheads, Inc.*, 75 F. 4th 1290, 1313 (11th Cir. 2023) (citing *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1186 (11th Cir. 2020)) (explaining that courts should be "highly skeptical of a claim that evidence was unintentionally destroyed 'pursuant to a routine policy' after a request that the evidence be preserved").

The prejudice to ZAGG is not theoretical. ZAGG is missing invoices entirely from 2021, the first five months of 2022, and the almost six-month period between May 21, 2022 and November 2, 2022. ZAGG is also missing invoices entirely between November 9, 2022 and January 15, 2023, between May 1, 2023 and July 25, 2023, and *zero* invoices have been produced reflecting purchases from DVG Supplier in 2024. Because the invoices go straight to the heart of ZAGG's claims in this case, ZAGG has been substantially prejudiced by DVG's misconduct. It is undisputed that these destroyed invoices could have provided evidence that the ZAGG products were not in "new" condition – like many of the recovered invoices produced by DVG Supplier show. Because DVG engaged in spoliation of the invoices and did so acting in bad faith, this conduct should be sanctioned appropriately to remedy the prejudice to ZAGG. Without these invoices, it is more difficult for ZAGG to prove the condition or the quantity of ZAGG products

7

that were sold to DVG by its Supplier (and later sold by DVG on Amazon.com). For example, of the few invoices ZAGG *does* have, some indicate that the ZAGG products are "new," while others indicate that the products are all bunched together in "unmanifested lots," and still others do not indicate a condition one way or another. *See* **Ex. C**.

Because of this prejudice, as well as the bad faith failure to preserve highly relevant invoices and DVG's efforts to prevent discovery from DVG Supplier, ZAGG asks that this Court issue a rebuttable adverse inference that the condition of the ZAGG products reflected in the missing invoices was unfavorable to DVG (*i.e.*, that the products were not in "new" condition). By shifting the burden of proof on product condition to DVG, this proposed spoliation remedy appropriately balances the prejudice to ZAGG while still allowing DVG to make arguments and present other evidence that the ZAGG products it sold were in "new" condition as it advertised to consumers.

Lastly, Fed. R. Civ. P. 37(a)(5) states that a Court "must" require the reimbursement of attorney fees and costs if a motion under the rule is allowed unless such an award would be, *inter alia*, unjust. Here, the facts dictate and require that ZAGG be awarded its costs and attorneys' fees related to this motion.

### IV.    CONCLUSION

For the reasons set forth above, Plaintiff ZAGG Inc. respectfully requests that the Court sanction Defendant DVG Trade LLC for its spoliation of evidence by drawing an adverse inference that these invoices would reflect that the ZAGG products purchased were not in "new" condition and for the reimbursement of its costs and attorney fees in filing this motion.

Dated: October 15, 2024                              Respectfully submitted,

                                                               By: */s/ Mallory M. Cooney*
                                                                       Mallory M. Cooney
                                                                       Florida Bar No. 125659
                                                                       K&L GATES LLP
                                                                       200 South Biscayne Boulevard, Suite 3900
                                                                       Miami, Florida 33131
                                                                       Tel.: (305) 539-3300
                                                                       Fax.: (305) 358-7095
                                                                       mallory.cooney@klgates.com

                                                                       Morgan T. Nickerson (*Pro Hac Vice*)
                                                                       K&L GATES LLP
                                                                       One Congress Street, Suite 2900
                                                                       Boston, MA 02114
                                                                       Tel.: (617) 261-3100
                                                                       Fax.: (617) 261-3175
                                                                       morgan.nickerson@klgates.com

                                                                       *Attorneys for ZAGG, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record on this 15th day of October, 2024.

_Mallory M. Cooney_
Mallory M. Cooney

# EXHIBIT A

# TO

# PLAINTIFF ZAGG INC.'S MOTION FOR SPOLIATION OF EVIDENCE AGAINST DEFENDANT DVG TRADE LLC

# FILED UNDER SEAL

# EXHIBIT B
# TO
# PLAINTIFF ZAGG INC.'S MOTION FOR SPOLIATION OF EVIDENCE AGAINST DEFENDANT DVG TRADE LLC

# FILED UNDER SEAL

# EXHIBIT C

# TO

# PLAINTIFF ZAGG INC.'S MOTION FOR SPOLIATION OF EVIDENCE AGAINST DEFENDANT DVG TRADE LLC

# FILED UNDER SEAL

# EXHIBIT D

# TO

# PLAINTIFF ZAGG INC.'S MOTION FOR SPOLIATION OF EVIDENCE AGAINST DEFENDANT DVG TRADE LLC

# FILED UNDER SEAL