UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-20304-RKA

ZAGG INC.,

Plaintiff(s),

vs.

TX TRADING, INC., *et al.*,

Defendant(s).

Miami, Florida

November 28, 2023

Pages 1 - 36

---

DISCOVERY HEARING
TRANSCRIBED FROM DIGITAL AUDIO RECORDING
BEFORE THE HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S):

MORGAN T. NICKERSON, ESQ.
K&L GATES, LLP
One Lincoln Street
Boston, MA 02111
617-261-3134
morgan.nickerson@klgates.com

MALLORY M. COONEY, ESQ.
K&L GATES, LLP
200 South Biscayne Boulevard
Miami, FL 33131
305-539-3342
mallory.cooney@klgates.com

APPEARANCES (CONT'D)

FOR THE DEFENDANT(S): SANDRA HUDAK, ESQ.

TARTER KRINSKY & DROGIN, LLP
1350 Broadway
New York, NY 10018
212-216-8000
shudak@tarterkrinsky.com

TRANSCRIBED BY: Joanne Mancari, RPR, CRR, CSR

Court Reporter
jemancari@gmail.com

Thereupon,
the following proceedings were held:

THE COURT: This is case No. 23 20304.

Can I get appearances from counsel.

MR. NICKERSON: Good afternoon, I guess it is now, your Honor. Morgan Nickerson and Mallory Cooney on behalf of plaintiff Zagg.

THE COURT: Very good.

MS. HUDAK: Afternoon, your Honor. Sandra Hudak, of Tarter Krinsky & Drogin, on behalf of the defendants.

THE COURT: Very good. I just want to frame the matters that we're hearing today.

The first matter is, I think, DVG has proposed to reissue some subpoenas to third parties, and I have your email regarding that. Then the plaintiff Zagg would like to have additional deposition time with the witness Jennifer Doran.

So let's start with the subpoenas that DVG has reframed.

As I see the request, they are now more narrowed, I'll give you that. Communications with Zagg sufficient to demonstrate Zagg's knowledge of the third-party disposition of excess inventory; documents sufficient to demonstrate all of the sales and the condition of Zagg products sold by these entities; documents sufficient to demonstrate all quality controls implemented by Zagg; documents sufficient to identify

these entities' reseller status with Zagg, and documents sufficient to identify the SKUs.

So it is still very extensive, but I still don't see the relevance and I still don't see how this helps the defendant in any way with its case.

I will let you give me some help with that, Ms. Hudak.

MS. HUDAK: Thank you, your Honor.

So as for your prior order on the subpoenas, we understood that the order was issued based on a determination that the subpoenas were overly broad. So these document requests are intended to be much more narrowed, showing issues that Zagg has raised in this case.

For example, Zagg has raised an argument in this case that liquidation products cannot be sold as new. And so the first document request here relates to Zagg's knowledge of the disposition of its excess inventory by its supposed authorized sellers by liquidation.

They knew that this process was going on. They knew that their authorized sellers were putting all of this new product into the marketplace, and now their motivation for alleging that these products are not new is not based on any genuine argument. It's based on the fact that they didn't want to buy back the inventory from their customers.

They're making large sales of products to these customers. They knew that it was being liquidated for resale

as new product on the marketplace. Now they're trying to stop the resale of those products because of this false argument that liquidation products cannot be sold as new.

Other of the document requests relate to quality controls implemented by Zagg or required by the carriers or its largest retailer, because Zagg has made certain arguments here about the placement of stickers on the product and whether that creates a difference between new and used products, whether return products can ever be sold as new, and certain other arguments relating to the condition of the products. So these document requests are tailored to these specific issues of the condition that Zagg was authorizing new products to be sold as in the marketplace.

Then the document requests relating to SKUs or S-K-U-s is related to an argument raised by Zagg that different -- identical products that have a specific carrier SKU are somehow different than a Zagg version of the same SKU. So the document request is asking for documents showing equivalency between, for example, a Verizon-specific SKU and a Zagg SKU of the same identical product.

THE COURT: So let me ask you this. I have a couple of questions. Let's say everything you say is true and these retailers are also selling Zagg products to liquidators and knowing that these liquidators are selling them as new, how does that make Zagg or make DVG any less, I guess in this

sense, liable for doing that?

Let's say they're doing that and they're doing exactly what DVG is doing. Does that make DVG less liable? Wouldn't that mean that Zagg also has a cause of action against these resellers as well as DVG?

MS. HUDAK: Well, I mean, so Zagg has made an argument here that these carriers are their authorized resellers. They're authorizing the sales of Zagg product through these customers. So what these carriers are selling is relevant to what Zagg is authorizing to have put in the marketplace.

THE COURT: I know. Here's my question. That's true that Zagg has a product and they're allowing certain people to sell it but they're not allowing other people to sell it. Wouldn't they have a right to do that? Is there some statute that says that Zagg can only -- that Zagg can't control who sells its product?

MS. HUDAK: No. So going back to the claims that Zagg is making in this complaint, they're making a trademark infringement claim --

THE COURT: Right.

MS. HUDAK: -- because the products that are being sold have the Zagg trademark on it. Under the first sale doctrine, once that product is put into the marketplace, anybody can resell it. So Zagg is not permitted to control the distribution after that first sale based on this trademark

infringement argument.

THE COURT: I see. Because of the trademark infringement argument. So if I make something and it's in the public domain, anyone can sell it, and if they do, I can't claim any kind of trademark infringement. All right.

So let me ask you this. I understand Zagg's claim as saying, well, DVG is selling this product through Amazon and selling it claiming it to be new, but it's Amazon's rules that are stating that it can't be new under certain circumstances. So DVG is misrepresenting the Zagg product that it is selling. Am I wrong? Isn't that the argument they're making?

MS. HUDAK: That is one of the arguments that they are making, and that is the argument that they relied on in arguing to quash these subpoenas. However, at the later hearing that we had, where Zagg was moving to compel deposition and documents from DVG suppliers, they argued that the condition of the products that DVG was sourcing from the supplier and somehow the identity of the supplier was relevant to their claims. So Zagg has put at issue here the supply chain, the condition of the products, as they travel through the marketplace.

Zagg made an argument that it would be different somehow if DVG was obtaining the products directly from Verizon verses Joe the Liquidator. So Zagg itself is putting the condition of the products at issue, the condition that they're

sold by their authorized sellers as part of their claims, and they've argued that in order to get discovery in the case.

So it would be unequal to allow Zagg discovery from DVG's supplier because somehow the condition of the product and the identity of the supplier is relevant but not allow DVG discovery into what Zagg is allowing to be put into the marketplace and what they're permitting their authorized sellers to sell and if they have any condition requirements for those sales.

THE COURT: Right. But I don't think discovery is based on equality; I think it's based on relevance.

OK. Let me hear then from Mr. Nickerson on those questions that I just asked.

MR. NICKERSON: Sure. Thank you, Judge.

THE COURT: OK. Go ahead. I don't know if you want me to reiterate.

MR. NICKERSON: No. I'll just make an initial point first that this is the third hearing that we've had on this issue of relevance and burden. We've had a pre-conference like this before. Your Honor ordered full briefing on this issue. Your Honor issued a ruling on this issue, finding that this was irrelevant, finding that it was unduly burdensome, and finding that the subpoenas were untimely.

This is, in essence, a motion for reconsideration. I have not heard any new information provided. This is just a

rehashing of the same arguments that we have had three hearings on now. There is no newly-discovered evidence, and I think just as a matter of law it's improper.

A motion for reconsideration such as this has to be denied when there is no new evidence and we are just rearguing the same thing over and over. It becomes particularly burdensome if we have to have the same argument over and over. We've had this argument. The court has ruled. There is a process in place if there is a motion for reconsideration, if something new has come up or if your Honor made a gross error of law, which of course you did not having heard that argument. That's what would be proper here today.

If you want our arguments again, they are in the briefing that we've submitted.

I can just say quickly that you hit the nail on the head, that Zagg's distribution chain is entirely different than DVG's distribution chain. Our argument is that DVG is improperly marketing the condition of their products. So the products themselves that DVG is selling are at issue. Where did those products come from? How did they get them?

How Zagg sells its products is not at issue in the case. That is what your Honor ruled, and that is without even getting into the burdensome argument, that maybe there is some glimmer of relevancy here but it's outweighed by the burden. Your Honor has already ruled that, that it is unduly burdensome

and it was untimely. This case has been pending a year, and your Honor ruled that these subpoenas were issued in an untimely manner.

I don't know what value there is in continuing to have these discussions in front of you. I appreciate it, but I think under binding case law there is a motion for reconsideration where there's been no new evidence presented and your Honor has already ruled.

THE COURT: OK. All right. So I think that that's correct. So we will move on to the next --

MS. HUDAK: If I could just respond to that point. This is --

THE COURT: I do think, Ms. Hudak, that we have discussed it quite a bit. Those are the questions that I had, and you've answered them. And I do appreciate that you've done an excellent job, it is just that I still don't see the relevance, and it is not there. It is not there.

MS. HUDAK: Could I just respond about the procedure, though. I would like to remind, to bring up the history here, that this isn't the third hearing on the issue. This was the fourth. The first one was the July 6th hearing where Zagg itself committed to producing the bespoke agreements that it had with the carriers, and DVG proceeded on that understanding, that the agreements -- I can point you to the transcript where Zagg specifically agreed to produce its carrier agreements on

the record and the court ordered them to act in accordance with their agreement on the record.

THE COURT: Ms. Hudak, I don't want to waste your time, and your time is precious as well. So I want to move on to the next issue, and that is with respect to the deposition of Jennifer Doran.

OK. So I read the arguments here. Zagg is saying they have additional questions and DVG is saying, well, you didn't use the time that you had to ask about the test buys; instead, you used the time to ask questions about work product process and attorney-client privileged matters.

So I don't have any of the transcripts of the depositions to actually get a taste of how long these depositions were, what kinds of questions were asked.

Let me start with Zagg. How much time have you had already with this witness?

MR. NICKERSON: We've had one hour.

Your Honor, to give you a refresher on kind of why we need this product is that the defendants in this case have filed counterclaims where they are alleging that the products that -- well, they have made purchases of products from Screenya. Again, on the record there is a motion to dismiss pending against Screenya that has personal jurisdiction. We are not waiving our personal jurisdiction grounds, and this is all subject to the ruling by the court on that.

To the extent that they have bought products from Screenya that they intend to use at trial or pictures of those products that they intend to use at trial, we would like to pressure test the chain of custody on them.

These products were purchased by a paralegal at Ms. Hudak's law firm. She testified that she bought approximately ten, that she placed them in her desk drawer, and that when she left the firm she gave them to Ms. Hudak and Mr. Berkowitz, who is also the defendants' clients.

There is another case pending in the Southern District of Florida called Techy Deals, that I can give you the case cite for, that Ms. Hudak's firm also filed claims against Screenya. In that case the exact same pictures were used and the exact same products were used in the complaint. The paralegal testified that -- there is another attorney on that named Mr. Rosner, who belongs with Ms. Hudak's law firm. Ms. Hudak and Mr. Berkowitz are not on that case.

Ms. Doran, the paralegal, says she doesn't know who Mr. Rosner is, that she did not buy products for that case.

So we have pictures ending up on two different cases where we have real chain of custody concerns that they're mixing up the products from the two cases. I mean, if this were a criminal case and they said, hey, the cops bought a bag of drugs, they have to show chain of custody. They have to show, hey, I bought it on July 1 and I kept it in this storage

13

bin, I cataloged it this way, and here it is, here is a true and accurate copy of the products that we intend to put in front of the jury in this case.

They also took pictures of those products. When I asked, all right, how many pictures did you take, I got an objection. Work product. You can't answer how many pictures. How did you take the pictures?

THE COURT: Who would have taken the pictures? The witness Doran?

MR. NICKERSON: The witness Doran took them, yes.

THE COURT: And so she was asked how many pictures she took of these products that she had purchased?

MR. NICKERSON: Yes. Why did you choose this angle. Are there pictures that show that the product looked legitimate. All questions that just go to like how did you take these pictures.

If you intend to use these pictures at trial, at summary judgment, we need to pressure test, like were there pictures that you deleted that looked good, were these pictures taken after you took it out of the box, were they sitting in your desk drawer for two weeks.

We just weren't able to ask any questions regarding the facts and circumstances surrounding the pictures that were taken, specifically whether all the pictures were even produced. Did you delete some pictures. Did you send ten

pictures to Mr. Berkowitz and only two of them were produced. We weren't allowed to ask any questions regarding the pictures, if they were cataloged, what happens. You put them in your desk drawer. How do you know if you bought -- if you bought two iPhone 13 cases that were identical products, how do you know which one was bought on July 2nd and which one was bought on July 10th. How were you not mixing up all the products that are in your desk drawer. Basic chain-of-custody questions.

Then what really prompted this --

THE COURT: Some of the questions I heard you say were chain of custody.

MR. NICKERSON: Yes.

THE COURT: When did you buy it, what did you do with it next, did you take the picture. But then some of the questions I heard you ask were, well, why did you take some pictures and delete others. Did you delete others. That sounds like choices that were made by someone working on the case to show pictures of some but not others.

If you're simply asking, OK, here are ten widgets, where did you buy them from, show me the receipt, how did you pay, where did you store them and now you're presenting them for a hearing, that all sounds like chain of custody to me.

So what you are saying is those are the kind of questions you want to ask.

MR. NICKERSON: Yes.

15

THE COURT: And you did not get a chance to ask all of those questions?

MR. NICKERSON: I was allowed to ask the chain of -- the ones that you just described, I will freely admit they allowed me to ask the chain-of-custody questions --

THE COURT: OK.

MR. NICKERSON: -- ending up until the day the paralegal left the firm --

THE COURT: OK.

MR. NICKERSON: -- and she handed the products over to counsel, which I think is going to be an interesting question that is not before us today that they are now fact witnesses in the case if they intend to use those.

I just wanted to preview that on the record because I think that is an issue that we are going to have to work out. I have asked for a meet and confer on that. Because if they intend to use those, they are now fact witnesses in the case for chain-of-custody purposes, which opens up a whole other can of worms.

What I was not allowed to ask about was how did you -- like the pictures is where they kept jamming me up and did you catalog the products. How do you know that if she bought two iPhone 13 cases, put them both in your desk, one was bought in July, one was bought in August, how do you know which one was bought in July, which one was bought in August. I was not

allowed to ask those type of questions regarding cataloging of the products and how the pictures were taken of the products, when they were taken. They might have let me ask when they were taken.

I don't want to misrepresent anything. The facts and circumstances around how the pictures were taken, I was not allowed to investigate that.

THE COURT: Yes. So I guess you're saying that -- I'm trying to make sure I understand. You were able to ask chain-of-custody questions regarding when the product was purchased, how it was purchased, and when it was photographed?

MR. NICKERSON: No. The photographs -- this is where the affidavit comes in, because what I had before the hearing is I had a bunch of photographs produced in discovery. No telling me what's --

THE COURT: Actual product.

MR. NICKERSON: Photographs of the product. I had a photograph with a Bates stamp at the bottom. It was impossible to be able to match them up.

What the declaration does -- our main point on the declaration, it was signed in August. We have had hearings in September. We have had hearings in October. At 5:15, the night before a 9 a.m. deposition, they send me over a 13-page deposition, with seven pages of testimony and six pages of pictures attached to it. I mean, I'm a dad of three kids under

12 years old. I couldn't stay up all night trying to digest all that, and no information was given to me on why were you sitting on this affidavit for three months, why did I receive this the night before.

If I have an hour and a half with Ms. Doran remotely to go through that declaration, I think I'll get all the information that I need on this issue.

THE COURT: And what is in the declaration?

MR. NICKERSON: The declaration says, I purchased product X on date Y and here's a photograph of it.

THE COURT: OK. And the photograph has Bates stamps X, Y, and Z.

MR. NICKERSON: Yes. To be clear, there's, I believe -- and I think your Honor has a copy of it. I think it was sent in with Ms. Hudak's email. I believe there were about ten products but only pictures of about three of them in the declaration.

THE COURT: Ten products purchased.

MR. NICKERSON: Yes, but only pictures of three of them.

THE COURT: Of three of them. OK. All right.

So it sounds like the affidavit was also quite complete in that it talked about the ten products purchased. Why there's only three photographs, that's something you can use for your --

MR. NICKERSON: To be completely transparent, I just want to ask Ms. Doran, all right, your affidavit, it doesn't look like you drafted it, first of all. It looks like an attorney drafted it.

THE COURT: Isn't that always true, though?

MR. NICKERSON: Exactly, but I want to say, all right, when this picture -- when you say in your affidavit that this picture is Bates stamped this day, because you don't catalog, how do you know that. I want to pressure test her declaration to make sure it's true, especially given the second case that is going on where there appears to be in their office, in the Tarter Krinsky office, multiple products being bought in multiple cases. I want to make sure that the products didn't get mixed up and see that her declaration is actually true. I believe I can do that pretty quickly on something that's rather important in the case.

THE COURT: So do you think that she's going to say, well, I actually don't know if I mixed them? I mean, what do you expect?

MR. NICKERSON: She might, yes, and that would be a way I could exclude the evidence from coming in. I mean, that's exactly it.

THE COURT: I see.

MR. NICKERSON: If she doesn't know what product is which, it's hard to say, under oath, I bought this product from

Screenya. I mean, again, I don't want to make it sound like --

THE COURT: The affidavit doesn't say where she bought it from?

MR. NICKERSON: It says where -- it does, but I don't think it's right because I think that she's mixing up what she put in.

You have to remember -- I don't know how familiar your Honor is with Amazon. Sometimes when you buy with Amazon, it comes directly from the seller. Other times it comes from a fulfillment center. Other times it comes from a different fulfillment center. It's very easy to mix this up. If you buy five products on the same day on the same order, which she did in this case, they all come in one box, and it's hard to say which one was from which order.

So that's the type of things that I would like to pressure test, just because of the nuances of the Amazon system and how it shipped.

This is not a case where she went to Joe's Electronics Shop and bought one product and it shipped from Joe's. It is not that black and white.

THE COURT: I see.

MR. NICKERSON: There's a lot of ambiguity, and layer in on top of that this second case pending in the Southern District of Florida, where there is another whole attorney using these pictures in a different case against Zagg, where

Ms. Doran testified that she's not working with him and kind of knows who he is but didn't buy the product for him, I want to make sure that we don't have two cases where products are being bought in each and being commingled.

THE COURT: OK. Let me hear from Ms. Hudak.

MS. HUDAK: OK. Just to address that last point, I mean, Mr. Nickerson already explained that Ms. Doran testified that she hadn't purchased any products for that other case and that she hadn't provided any products for that other case. So for Mr. Nickerson to say that he needs to go back and depose her on that, he already had the opportunity and he did ask that question.

It's very telling that no citations from the transcript have been provided because, as has already been discussed, Mr. Nickerson was able and did ask questions about the chain of custody, and it was only when the questions invaded on work product that objections were made.

Your Honor originally allowed this deposition to proceed with skepticism as to whether it would invade on work product, and you allowed it to proceed on the grounds of where did Ms. Doran buy the Zagg products from, and rightly said that objections could be made if any work product questions were asked.

So that's how the deposition went. Questions about chain of custody were permitted and questions about work

product were not allowed to be asked.

Ms. Doran testified that she bought a number of products. She provided this declaration, which explained which invoice matched up to which product. Contrary to what Mr. Nickerson said before about there only being three photographs attached to the declaration -- and your Honor has a copy of this declaration. I believe it was attached to our November 16th email.

THE COURT: All right. Let me see if I can pull that up. It is hard for me to actually envision it, so I want to make sure that I see it.

OK. I'm sorry. Go ahead.

MS. HUDAK: OK. So this is a seven-page declaration that provides a roadmap showing which photographs that were produced in discovery relate to which invoices produced in discovery. Attached to the declaration are three invoices that were inadvertently not included with the production in discovery, and so that was essentially a supplementation showing the invoices associated with those products. But otherwise it just creates a clear roadmap showing here are all the invoices for the test purchases, here are the photographs that relate to the products that were received, and Mr. Nickerson could have asked about these.

THE COURT: I'm sorry. What did you say about the three pictures? I cut you off. It is my fault. So you said

22

there were ten products purchased, but it wasn't correct that there were only three pictures?

MS. HUDAK: Sure. I don't know how many products. Around ten is probably the right number. The attachments, those three attachments, related to invoices.

THE COURT: Oh.

MS. HUDAK: All the pictures were produced already, but, and I believe screenshots showing the listing where they were purchased from was produced, but the invoices themselves for, I believe, three of the products were attached to the declaration because those had not been included in the document production.

THE COURT: OK. I see the declaration. I'm opening it now.

(Pause)

THE COURT: How it could be any more clear. For instance: On March 31, 2023, I placed an order for a Mophie 15W Universal wireless charge pad on the website Amazon.com. It was assigned an order number, delivered to me. The document attached hereto as Exhibit 3 is a true and correct copy of the order details which I printed from my Amazon account.

On or about August 16 -- oh, I see. So she ordered it one day but then printed her -- some several months later, but I don't know if that makes a difference.

Documents produced with Bates numbers include a true

23

and correct copy of the photographs of the package for the product I received. OK. So she's taken photographs of the packages.

When she says "package," is that the plastic packaging or the box?

MS. HUDAK: Some of the pictures -- all of the pictures have the box of the product. I believe some of the pictures also have the outside packaging showing the address where it was shipped.

THE COURT: OK. So I see: Final details, Amazon.com.

Is there any way to tell from this -- sold by Screenya, seller profile, supplied by other. (inaudible) new.

What does that mean, Ms. Hudak? If it is sold by Screenya but supplied by other.

MS. HUDAK: I don't think that means anything. The sold by is the seller, and if you could just direct me to the page.

THE COURT: OK. So I am on Exhibit 2, which would be -- let's start with page 9 of the document. It is Bates numbered DVG-00810, items ordered.

MS. HUDAK: 810. OK. Items ordered. One of Zagg InvisibleShield Glass Plus, sold by Screenya, supplied by other.

THE COURT: What does that mean? Do you know?

MS. HUDAK: The seller was Screenya. I think the

supplied by must relate to some other situation. I don't know why it has that line.

THE COURT: OK. And there's only three exhibits attached to the one I have. What you are telling me is there were -- this is another version with more exhibits.

MS. HUDAK: The declaration itself refers to documents by their Bates numbers. They were previously produced in discovery.

THE COURT: OK.

MS. HUDAK: These three exhibits were inadvertently not included in the prior production, and so these three exhibits were supplementing the prior productions.

THE COURT: OK. All right.

So, Mr. Nickerson, are you saying that where it says sold by Screenya and supplied by other, it may have been actually from someone else?

MR. NICKERSON: I want to highlight, Judge, the timing is my complaint, is that this was produced after the close of business the night before a 9:30 a.m. deposition. I mean, complete transparency, I didn't even realize these three invoices weren't produced in a prior deposition. This was the first time that they were produced. Because when it's produced -- this is a declaration signed in August that is not being produced until the night before a November deposition. These are invoices that are not new, that is, again, produced

after the close of business the night before a deposition.

I get it. I mean, sometimes when you're preparing for a deposition you uncover stuff that you didn't realize was going to be there, and when that happens, you have to give the other side time to prepare. I mean, your Honor looked at this for 30 seconds and came up with a great question of what does other mean, supplied by other. Does that mean it came from Amazon, does that mean it came from Joe's Electronics Shop. These are all the questions, because of the timing of the production, that I was not allowed to even be prepared to ask.

That's my real complaint on this, is that I still haven't heard an excuse for why this was produced two months after it was signed. Presumably they've had it this entire time.

We have had rulings that Mrs. Doran is going to be deposed. This was not anything that surprised anyone. Like I said, I get it. Sometimes you discover stuff late, but you can't discover something late, produce it, and then say that you should have stayed up all night preparing for your deposition; you had an opportunity.

I think because they admit to producing this late --

THE COURT: With all due respect, I don't think it would take all night to read this.

I just want to find out, now that you have this and we're talking, what are the additional questions that you would

ask, and now that I have it in front of me that would be more helpful.

MR. NICKERSON: Sure.

THE COURT: Tell me, what is it that you need to ask her?

MR. NICKERSON: Let me pull it up and make sure I have it.

THE COURT: I think you're a speed reader and I'll bet you could have read this (inaudible) all night.

MR. NICKERSON: I mean, to be fair, I don't want to -- again, in an effort to be transparent, I still try to be a dad. I shut my phone off --

THE COURT: Got it.

MR. NICKERSON: -- (inaudible) business. I have three kids. I saw this come through, but I have soccer practice, I have coaching responsibilities, I have other stuff, and I guess in theory I could have woken up at 4 a.m. and gotten through this. I don't want to say it was physically impossible, but I just don't think it is my responsibility to do that. I just, again, wanted to highlight that.

If I were to get this deposition or this declaration right now, the questions I would ask, I would say, like I said, I would establish that she likely did not write this declaration, and I really want to know, when you said the documents produced in this -- I'm reading from paragraph No.

5 -- the documents produced in this action with Bates numbers DVG-0078 and 79 include true and accurate photographs of the packages for the products I received on March 31, 2013 Amazon order, I want to ask, how do you know that. Because it's clear --

THE COURT: The documents produced in this action with Bates numbers include true and correct copies of photographs of the package for the product I received from the March 31, 2023 Amazon order. So you would ask her how does she know that.

MR. NICKERSON: Yes, because this is signed in August, several months later. There is no chain of custody on these products. I think that it's -- I mean, I don't want to give away my strategy, but I think a likely answer is this affidavit was presented in front of me, I never checked those because I got a new job at a different law firm, at Venable, and they asked me to sign this before I went out the door and I signed it. I never doublechecked all the pictures in it. I think that's a likely story that she would tell on this, because I just don't believe she went back and looked at all these pictures.

I think it's a fair question to say, how did you know that, and it is every single -- like paragraph 8, the documents produced in this action with the Bates numbers DVG-83 and 84 include true and accurate photographs of a March 31 order. Again, you made two purchases on March 31. They likely came in

the same box. How do you know that that's the picture from that order.

Those are all very relevant chain-of-custody questions that I was not afforded the opportunity to ask. Again, I think I can do it in under an hour and a half. I don't think that the burden is that great here. I think I can rip right through these questions pretty easily with the least amount of burden on Mrs. Doran or the other side.

Again, not to highlight it, but this was an affidavit produced the night before, and I'm just asking for a quick hour and a half to ask these type of questions.

THE COURT: OK. I'm not sure why it would take an hour and a half, but it is a limited --

MR. NICKERSON: Yes.

THE COURT: -- amount of questions, and I also think that they are fair questions and they do have to do with chain of custody.

MS. HUDAK: Can I briefly respond to that?

THE COURT: Yes, of course. Go ahead.

MS. HUDAK: This is a seven-page declaration. Counsel did not raise the issue of not having time to review the declaration until after we had gone for an hour and he concluded the deposition and reserved his right to reopen it. He didn't write an email beforehand, raise it beforehand on the record saying I would like two hours to read the declaration

more fully, can we delay for a couple of hours to start. He didn't bring up the declaration and ask Ms. Doran if she had seen it before. He didn't bring up the declaration and ask if she reviewed it since then.

These are all questions that could have and should have been asked when everybody was prepared, had taken time out of their busy schedules to sit for this deposition.

If counsel believed that he needed more time to review, he could have raised that before. If he wanted to ask some preliminary questions about the declaration on that day and then after asking questions determine that he needed additional time, we could have addressed it that way. By raising it at the end and committing to bringing a motion to compel, a second deposition, it is just pure gamesmanship.

In prior depositions that we had in this case, we were running on a very tight schedule. Zagg produced over a thousand pages of documents, say, 9 or 10 p.m. the night before a deposition and on our side we worked in good faith to review them.

Here, there is no effort we can see that was made to at least even ask these preliminary questions. Mr. Nickerson had asked for the deposition to start at 9. Because of Ms. Doran's schedule we started at 9:30. He could have taken that time to review, at least preliminarily, the declaration. But the way that this is being presented is just pure

gamesmanship.

At the end of the day we're just talking about a limited number of test buys which are routine in IP cases like this. I've never seen a situation where a member of the legal staff was deposed. Here we have provided a declaration that clearly sets out the invoices, the purchase day, which products relate to which purchase, and all the products that were purchased, photos were produced. That should be the end of the question.

Counsel is just trying to drum up a controversy to distract from the fact that these test purchases undermine their case.

THE COURT: I see. OK. So let me just make sure I understand the timing.

So immediately after the deposition is when he said I would like to review this affidavit and have more time?

MS. HUDAK: Yes. So he closed the deposition for the day, reserving the right to reopen it because he wanted to ask questions about the declaration.

THE COURT: OK. So it was clear right at that point in time.

When did he actually get the declaration?

MS. HUDAK: I believe around 5 p.m. the night before.

THE COURT: OK. So he got it around 5 p.m. the night before. The deposition took place at 9:30 a.m. the next

morning. Immediately after the deposition, I'm assuming like around 10:30, he said I would like to reserve more time so I can review this declaration and ask further questions?

MS. HUDAK: While we were still all present in front of the court reporter he made this reservation.

THE COURT: OK. And what was your response at that point in time?

MS. HUDAK: That he should have raised this before. I mean, I guess I could have said at that point if you want to ask the questions, you should ask them now, but I think that's implied.

If he wanted to ask questions about the declaration that he had in his possession, the seven-page declaration that simply referred back to documents that were produced months ago in discovery, he could have asked those questions then. It just appeared to us to be pure gamesmanship at the end of the deposition to try to have an excuse to make a motion to compel.

THE COURT: I see. OK. So it doesn't seem that way to me. It does seem that he did make that objection immediately thereafter as well.

So I think what has to happen is there needs to be some constraints on the length of time that this additional deposition will take.

Since your deposition questions that you're going to be asking, Mr. Nickerson, are based upon this review of the

declaration, I can't see why it would take an hour and a half. I could see it would take an hour, maybe, tops, but not an hour and a half.

So I am going to agree, based on the circumstances, that one hour can be added to her deposition time. It is going to be done remotely. There will be no reason for her to come from New York for this, I'm assuming.

MR. NICKERSON: Yes, of course.

THE COURT: So it would be remotely. It will be one hour or less.

When can this be done? Because we've already got a discovery cutoff in this case.

MR. NICKERSON: Yes, tomorrow.

THE COURT: OK. Can it be done sometime this week or the following week?

MR. NICKERSON: I can make myself available given it is a one-hour deposition. It is just at the mercy of Ms. Doran's schedule. She is a third party. I doubt Ms. Hudak knows, and I certainly don't know, her schedule, but I'm very happy to represent to the court that we will get it done as quickly as it is convenient for Ms. Doran.

THE COURT: OK. All right. So I think that's fine.

I will enter an order stating that that can be done, and it must be remotely, and it must fit within Ms. Doran's schedule, and she will make herself reasonably available for

this deposition.

MS. HUDAK: Can we clarify the bounds of the deposition, because many, many questions were asked in the prior deposition that invaded work product, of how did you make the decision to take a photograph from this angle verses that angle --

THE COURT: I agree that that is --

MS. HUDAK: -- and what types of notes did you take about the product. I think it is in everybody's benefit to just keep the questions as factual questions. I believe that they were already answered, but I understand that you're ordering the deposition to go forward, so I would just like some guidelines about the type of questioning.

THE COURT: No, I think that's fair. If the questions are about how she knew that those photographs were the photographs of the product that she ordered, that is a chain-of-custody question. If it is why you purchased a particular product, that is a work product question. So I think that you still have the opportunity to make those objections.

Mr. Nickerson, I want to make sure this is clear. What are the concerns? Where are some of the questions that you think might be borderline?

MR. NICKERSON: My concern is that they're putting pictures into evidence in the case. I need to be able to ask

34

questions about how those pictures were taken. Were they taken with your phone, were they taken with someone else's phone, were other pictures taken that showed my client's product in a better light.

THE COURT: Well, no, that one, the product in a better light, that is going to be judgment.

MR. NICKERSON: Yes. This is where it is tough because if you're going to use the pictures --

THE COURT: They're going to pick the worst pictures they can, there is no question.

MR. NICKERSON: Yes.

THE COURT: And I don't believe to know how better light could be --

MR. NICKERSON: Literally light. Literally light.

THE COURT: That is not going to work, no.

MS. HUDAK: I would just like to point out that all of these questions were already asked in the prior deposition and all of the photographs were available at that time.

THE COURT: OK.

MS. HUDAK: Mr. Nickerson already asked what camera did you use to take the photographs. He didn't ask about every single photograph, but he had the opportunity to. He just chose not to.

MR. NICKERSON: Yes. I mean, federal courts don't answer hypothetical questions.

THE COURT: They don't.

MR. NICKERSON: That is not something --

THE COURT: They don't. I can tell you right now.

MR. NICKERSON: Yeah, so it's hard to say because I mean, again, there may be interesting waiver issues.

I think we're beating a dead horse here. I don't think I need to get into any of that. My concern is chain of custody. So that is what I am going to ask questions about.

MS. HUDAK: I guess another point of clarification --

THE COURT: Ms. Hudak will be able to make the objections that she needs to make in terms of work product and attorney privilege. OK.

MR. NICKERSON: All right.

MS. HUDAK: Can I just ask, is the deposition limited to the declaration, because all of the photographs were available before? So if Mr. Nickerson --

THE COURT: Well, the declaration and all of the photographs, including the ones attached and the ones that are not attached.

MS. HUDAK: OK. Even though they were available before and they could have been asked about previously.

THE COURT: Because they're all referred to in the declaration.

MR. NICKERSON: Yes.

THE COURT: So it is really one package.

OK. All right. Thank you very much.
I will issue orders, and I appreciate --
MR. NICKERSON: Thank you, Judge.
THE COURT: -- the argument of both sides. All right.
MR. NICKERSON: Thank you, Judge.
MS. HUDAK: Thank you.
(Adjourned)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

November 23, 2024 s/ Joanne Mancari
Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

MR. NICKERSON: [43]
MS. HUDAK: [32] 3/9 4/7 6/6 6/17 6/21 7/12 10/11 10/18 20/6 21/13 22/3 22/7 23/6 23/15 23/21 23/25 24/6 24/10 28/18 28/20 30/17 30/23 31/4 31/8 33/2 33/8 34/16 34/20 35/9 35/14 35/20 36/6
THE COURT: [72]

0

0078 [1] 27/2
00810 [1] 23/20
02111 [1] 1/14

1

10 [1] 29/17
10018 [1] 2/4
10:30 [1] 31/2
10th [1] 14/7
12 [1] 17/1
13 [2] 14/5 15/23
13-page [1] 16/23
1350 [1] 2/4
15W [1] 22/18
16 [1] 22/22
16th [1] 21/8

2

200 [1] 1/18
2013 [1] 27/3
2023 [3] 1/5 22/17 27/8
2024 [1] 36/15
20304 [1] 3/3
212-216-8000 [1] 2/5
23 [2] 3/3 36/15
23-CV-20304-RKA [1] 1/2
28 [1] 1/5
2nd [1] 14/6

3

30 [1] 25/6
305-539-3342 [1] 1/19
31 [5] 22/17 27/3 27/8 27/24 27/25
3134 [1] 1/14
33131 [1] 1/18
3342 [1] 1/19
36 [1] 1/7

5

5:15 [1] 16/22

6

617-261-3134 [1] 1/14
6th [1] 10/21

7

79 [1] 27/2

8

8000 [1] 2/5
810 [1] 23/21
83 [1] 27/23
84 [1] 27/23

9

9:30 [3] 24/19 29/23 30/25

A

a.m [4] 16/23 24/19 26/17 30/25
ability [1] 36/12
able [6] 13/22 16/9 16/19 20/15 33/25 35/10
about [26] 5/7 10/18 11/9 11/10 15/20 17/15 17/16 17/23 20/15 20/24 20/25 21/5 21/23 21/24 22/22 29/10 30/2 30/19 31/12 33/9 33/13 33/15 34/1 34/21 35/8 35/21
above [1] 36/13
above-entitled [1] 36/13
accordance [1] 11/1
account [1] 22/21
accurate [4] 13/2 27/2 27/24 36/11
act [1] 11/1
action [4] 6/4 27/1 27/6 27/23
Actual [1] 16/16
actually [6] 11/13 18/14 18/18 21/10 24/16 30/22
added [1] 32/5
additional [5] 3/16 11/8 25/25 29/12 31/22
address [2] 20/6 23/8
addressed [1] 29/12
Adjourned [1] 36/7
admit [2] 15/4 25/21
affidavit [9] 16/13 17/3 17/22 18/2 18/7 19/2 27/13 28/9 30/16
afforded [1] 28/4
after [9] 6/25 13/20 24/18 25/1 25/13 28/22 29/11 30/15 31/1
afternoon [2] 3/5 3/9
again [10] 9/13 11/22 19/1 24/25 26/11 26/20 27/25 28/4 28/9 35/5
against [4] 6/4 11/23 12/12 19/25
ago [1] 31/14
agree [2] 32/4 33/7
agreed [1] 10/25
agreement [1] 11/2
agreements [3] 10/22 10/24 10/25
ahead [3] 8/15 21/12 28/19
al [1] 1/6
all [45]
alleging [2] 4/21 11/20
allow [2] 8/3 8/5
allowed [10] 14/2 15/3 15/5 15/20 16/1 16/7 20/18 20/20 21/1 25/10
allowing [3] 6/12 6/13 8/6
already [11] 9/25 10/8 11/16 20/7 20/11 20/14 22/7 32/11 33/11 34/17 34/20
also [8] 5/23 6/4 12/9 12/12 13/4 17/22 23/8 28/15
always [1] 18/5
am [4] 7/11 23/18 32/4 35/8
Amazon [8] 7/7 19/8 19/8 19/16 22/21 25/8 27/3 27/9
Amazon's [1] 7/8
Amazon.com [2] 22/18 23/10
ambiguity [1] 19/22
amount [2] 28/7 28/15
angle [3] 13/13 33/5 33/6
another [5] 12/10 12/15 19/24 24/5 35/9
answer [3] 13/6 27/13 34/25
answered [2] 10/15 33/11
any [15] 4/5 4/21 5/25 7/5 8/8 8/25 11/12 13/22 14/2 20/8 20/9 20/22 22/16 23/11 35/7
anybody [1] 6/24
anyone [2] 7/4 25/16
anything [3] 16/5 23/15 25/16
appearances [3] 1/11 1/20 3/4
appeared [1] 31/16
appears [1] 18/11
appreciate [3] 10/5 10/18 36/2
approximately [1] 12/7
are [46]
argued [2] 7/16 8/2
arguing [1] 7/13
argument [16] 4/13 4/22 5/2 5/15 6/6 7/1 7/3 7/11 7/13 7/22 9/7 9/8 9/11 9/17 9/23 36/4
arguments [6] 5/6 5/10 7/12 9/1 9/13 11/7
around [5] 16/6 22/4 30/23 30/24 31/2
as [23] 3/19 4/8 4/14 5/1 5/3 5/9 5/12 5/24 6/5 6/5 7/6 7/20 8/1 9/3 9/4 11/4 20/14 20/19 22/20 31/20 32/20 32/21 33/10
ask [39]
asked [16] 8/13 11/14 13/5 13/11 15/16 20/23 21/1 21/23 27/16 29/6 29/22 31/15 33/3 34/17 34/20 35/21
asking [5] 5/18 14/19 28/10 29/11 31/25
assigned [1] 22/19
associated [1] 21/19
assuming [2] 31/1 32/7
at [30] 7/14 7/19 7/25 9/19 9/21 12/2 12/3 12/5 13/17 13/17 16/18 16/22 25/5 26/17 27/15 27/15 27/19 29/13 29/21 29/22 29/23 29/24 30/2 30/20 30/25 31/6 31/9 31/16 32/17 34/18
attached [9] 16/25 21/6 21/7 21/16 22/10 22/20 24/4 35/18 35/19
attachments [2] 22/4 22/5
attorney [5] 11/11 12/15 18/4 19/24 35/12
attorney-client [1] 11/11
audio [2] 1/9 36/12
August [6] 15/24 15/25 16/21 22/22 24/23 27/10
authorized [5] 4/16 4/19 6/7 8/1 8/7
authorizing [3] 5/12 6/8 6/10
available [5] 32/16 32/25 34/18 35/16 35/20
away [1] 27/13

B

back [5] 4/23 6/17 20/10 27/19 31/14
bag [1] 12/23
based [8] 4/9 4/21 4/22 6/25 8/11 8/11 31/25 32/4
Basic [1] 14/8
Bates [9] 16/18 17/11 18/8 22/25 23/19 24/7 27/1 27/7 27/23
be [48]
beating [1] 35/6
because [28] 5/2 5/6 6/21 7/2 8/4 15/14 15/16 16/13 18/8 19/5 19/16 20/14 22/11 24/22 25/9 25/21 27/4 27/10 27/14 27/18 29/22 30/18 32/11 33/3 34/8 35/4 35/15 35/22
becomes [1] 9/6
been [8] 10/1 10/7 20/14 20/14 22/11 24/15 29/6 35/21
before [20] 1/10 8/20 15/12 16/13 16/23 17/4 21/5 24/19 24/24 25/1 27/16 28/10 29/3 29/9 29/17 30/23 30/25 31/8 35/16 35/21
beforehand [2] 28/24 28/24
behalf [2] 3/6 3/10
being [8] 4/25 6/21 18/12 20/3 20/4 21/5 24/24 29/25

## B


believe [11] 17/14 17/15 18/15 21/7 22/8 22/10 23/7 27/19 30/23 33/10 34/12
believed [1] 29/8
belongs [1] 12/16
benefit [1] 33/9
Berkowitz [3] 12/9 12/17 14/1
bespoke [1] 10/22
best [1] 36/12
bet [1] 26/8
better [3] 34/4 34/6 34/12
between [2] 5/8 5/18
bin [1] 13/1
binding [1] 10/6
Biscayne [1] 1/18
bit [1] 10/14
black [1] 19/20
borderline [1] 33/23
Boston [1] 1/14
both [2] 15/23 36/4
bottom [1] 16/18
bought [19] 12/1 12/6 12/23 12/25 14/4 14/4 14/6 14/6 15/22 15/23 15/24 15/25 15/25 18/12 18/25 19/2 19/19 20/4 21/2
Boulevard [1] 1/18
bounds [1] 33/2
box [5] 13/20 19/13 23/5 23/7 28/1
briefing [2] 8/20 9/14
briefly [1] 28/18
bring [3] 10/19 29/2 29/3
bringing [1] 29/13
broad [1] 4/10
Broadway [1] 2/4
bunch [1] 16/14
burden [4] 8/19 9/24 28/6 28/7
burdensome [4] 8/22 9/7 9/23 9/25
business [3] 24/19 25/1 26/14
busy [1] 29/7
but [33] 4/3 6/13 7/8 8/5 8/10 9/24 10/5 14/14 14/18 17/16 17/19 18/6 19/4 20/2 21/19 22/1 22/8 22/9 22/23 22/23 23/14 25/17 26/15 26/18 27/13 28/9 28/13 29/25 31/10 32/2 32/19 33/11 34/22
buy [8] 4/23 12/19 14/13 14/20 19/8 19/11 20/2 20/21
buys [2] 11/9 30/3


## C


called [1] 12/11
came [4] 25/6 25/7 25/8 27/25
camera [1] 34/20
can [27] 3/4 5/9 6/15 6/24 7/4 9/15 10/24 12/11 15/18 17/24 18/15 21/9 28/5 28/6 28/18 29/1 29/20 31/3 32/5 32/11 32/14 32/16 32/23 33/2 34/10 35/3 35/14
can't [6] 6/15 7/4 7/9 13/6 25/18 32/1
cannot [2] 4/14 5/3
carrier [2] 5/16 10/25
carriers [4] 5/5 6/7 6/9 10/23
case [32] 1/2 3/3 4/5 4/12 4/13 8/2 9/22 10/1 10/6 11/19 12/10 12/11 12/13 12/17 12/19 12/23 13/3 14/18 15/13 15/17 18/10 18/16 19/13 19/18 19/23 19/25 20/8 20/9 29/15 30/12 32/12 33/25
cases [7] 12/20 12/22 14/5 15/23 18/13 20/3 30/3
catalog [2] 15/22 18/8
cataloged [2] 13/1 14/3
cataloging [1] 16/1
cause [1] 6/4
center [2] 19/10 19/11
certain [4] 5/6 5/9 6/12 7/9
certainly [1] 32/19
certify [1] 36/11
chain [20] 7/19 9/16 9/17 12/4 12/21 12/24 14/8 14/11 14/22 15/3 15/5 15/18 16/10 20/16 20/25 27/11 28/3 28/16 33/17 35/7
chance [1] 15/1
charge [1] 22/18
checked [1] 27/14
choices [1] 14/17
choose [1] 13/13
chose [1] 34/23
circumstances [4] 7/9 13/23 16/6 32/4
citations [1] 20/13
cite [1] 12/12
claim [3] 6/19 7/5 7/6
claiming [1] 7/8
claims [4] 6/17 7/19 8/1 12/12
clarification [1] 35/9
clarify [1] 33/2
clear [6] 17/13 21/20 22/16 27/5 30/20 33/21
clearly [1] 30/6
client [1] 11/11
client's [1] 34/3
clients [1] 12/9
close [2] 24/18 25/1
closed [1] 30/17
coaching [1] 26/16
come [5] 9/10 9/20 19/13 26/15 32/6
comes [4] 16/13 19/9 19/9 19/10
coming [1] 18/21
commingled [1] 20/4
committed [1] 10/22
committing [1] 29/13
Communications [1] 3/20
compel [3] 7/15 29/14 31/17
complaint [4] 6/18 12/14 24/18 25/11
complete [2] 17/23 24/20
completely [1] 18/1
concern [2] 33/24 35/7
concerns [2] 12/21 33/22
concluded [1] 28/23
condition [10] 3/23 5/10 5/12 7/16 7/20 7/25 7/25 8/4 8/8 9/18
confer [1] 15/16
conference [1] 8/19
constraints [1] 31/22
CONT'D [1] 2/1
continuing [1] 10/4
Contrary [1] 21/4
control [2] 6/15 6/24
controls [2] 3/25 5/5
controversy [1] 30/10
convenient [1] 32/21
COONEY [2] 1/17 3/6
copies [1] 27/7
cops [1] 12/23
copy [5] 13/2 17/14 21/7 22/20 23/1
correct [5] 10/10 22/1 22/20 23/1 27/7
could [18] 10/11 10/18 18/21 20/22 21/23 22/16 23/16 26/9 26/17 29/5 29/9 29/12 29/23 31/9 31/15 32/2 34/13 35/21
couldn't [1] 17/1
counsel [5] 3/4 15/11 28/20 29/8 30/10
counterclaims [1] 11/20
couple [2] 5/21 29/1
course [3] 9/11 28/19 32/8
court [8] 1/1 2/8 9/8 11/1 11/25 31/5 32/20 36/16
courts [1] 34/24
creates [2] 5/8 21/20
criminal [1] 12/23
CRR [2] 2/7 36/15
CSR [2] 2/7 36/15
custody [16] 12/4 12/21 12/24 14/8 14/11 14/22 15/5 15/18 16/10 20/16 20/25 27/11 28/3 28/17 33/17 35/8
customers [3] 4/23 4/25 6/9
cut [1] 21/25
cutoff [1] 32/12
CV [1] 1/2


## D


dad [2] 16/25 26/11
date [1] 17/10
day [8] 15/7 18/8 19/12 22/23 29/10 30/2 30/6 30/18
dead [1] 35/6
Deals [1] 12/11
decision [1] 33/5
declaration [36] 16/20 16/21 17/6 17/8 17/9 17/17 18/9 18/14 21/3 21/6 21/7 21/13 21/16 22/11 22/13 24/6 24/23 26/21 26/24 28/20 28/22 28/25 29/2 29/3 29/10 29/24 30/5 30/19 30/22 31/3 31/12 31/13 32/1 35/15 35/17 35/23
defendant [3] 1/7 2/3 4/5
defendants [2] 3/10 11/19
defendants' [1] 12/9
delay [1] 29/1
delete [3] 13/25 14/16 14/16
deleted [1] 13/19
delivered [1] 22/19
demonstrate [3] 3/21 3/22 3/24
denied [1] 9/5
depose [1] 20/10
deposed [2] 25/16 30/5
deposition [34] 3/16 7/15 11/5 16/23 16/24 20/18 20/24 24/19 24/21 24/24 25/1 25/3 25/20 26/21 28/23 29/7 29/14 29/18 29/22 30/15 30/17 30/25 31/1 31/17 31/23 31/24 32/5 32/17 33/1 33/3 33/4 33/12 34/17 35/14
depositions [3] 11/13 11/14 29/15
described [1] 15/4
desk [5] 12/7 13/21 14/4 14/8 15/23
details [2] 22/21 23/10
determination [1] 4/9
determine [1] 29/11
did [35] 9/11 9/20 9/20 12/19 13/5 13/7 13/13 13/15 13/25 13/25 14/13 14/13 14/14 14/15 14/16 14/20 14/20 14/21 15/1 15/20 15/21 17/3 19/12 20/11 20/15 20/21 21/24 26/23 27/21 28/21 30/22 31/19 33/4 33/8 34/21
didn't [10] 4/22 11/9 18/13 20/2 24/20 25/3 28/24 29/2 29/3 34/21
difference [2] 5/8 22/24
different [8] 5/15 5/17 7/22 9/16 12/20 19/10 19/25 27/15
digest [1] 17/1
digital [2] 1/9 36/12
direct [1] 23/16
directly [2] 7/23 19/9
discover [2] 25/17 25/18
discovered [1] 9/2
discovery [12] 1/9 8/2 8/3 8/6 8/10 16/14

D

discovery... [6] 21/15 21/16 21/18 24/8 31/15 32/12
discussed [2] 10/14 20/15
discussions [1] 10/5
dismiss [1] 11/22
disposition [2] 3/21 4/16
distract [1] 30/11
distribution [3] 6/25 9/16 9/17
DISTRICT [4] 1/1 1/1 12/10 19/24
do [20] 6/14 7/4 10/13 10/15 14/4 14/5 14/13 15/22 15/24 18/9 18/15 18/17 18/18 23/24 26/19 27/4 28/1 28/5 28/16 28/16
doctrine [1] 6/23
document [9] 4/10 4/15 5/4 5/11 5/14 5/17 22/11 22/19 23/19
documents [14] 3/22 3/24 3/25 4/1 5/18 7/16 22/25 24/6 26/25 27/1 27/6 27/22 29/17 31/14
does [11] 5/25 6/3 16/20 19/4 23/13 23/24 25/6 25/7 25/8 27/9 31/19
doesn't [5] 12/18 18/2 18/24 19/2 31/18
doing [4] 6/1 6/2 6/2 6/3
domain [1] 7/4
don't [32] 4/3 4/4 8/10 8/15 10/4 10/16 11/3 11/12 16/5 18/8 18/18 19/1 19/4 19/7 20/3 22/3 22/24 23/15 24/1 25/22 26/10 26/18 26/19 27/12 27/19 28/5 32/19 34/12 34/24 35/1 35/3 35/6
done [6] 10/15 32/6 32/11 32/14 32/20 32/23
door [1] 27/16
Doran [15] 3/16 11/6 12/18 13/9 13/10 17/5 18/2 20/1 20/7 20/21 21/2 25/15 28/8 29/2 32/21
Doran's [3] 29/23 32/18 32/24
doublechecked [1] 27/17
doubt [1] 32/18
drafted [2] 18/3 18/4
drawer [4] 12/7 13/21 14/4 14/8
DROGIN [2] 2/3 3/10
drugs [1] 12/24
drum [1] 30/10
due [1] 25/22
DVG [19] 3/13 3/17 5/25 6/3 6/3 6/5 7/7 7/10 7/16 7/17 7/23 8/5 9/17 9/19 10/23 11/8 23/20 27/2 27/23
DVG's [2] 8/4 9/17
DVG-0078 [1] 27/2
DVG-00810 [1] 23/20
DVG-83 [1] 27/23

E

each [1] 20/4
easily [1] 28/7
easy [1] 19/11
effort [2] 26/11 29/20
Electronics [2] 19/18 25/8
else [1] 24/16
else's [1] 34/2
email [4] 3/14 17/15 21/8 28/24
end [4] 29/13 30/2 30/8 31/16
ending [2] 12/20 15/7
enter [1] 32/23
entire [1] 25/13
entirely [1] 9/16
entities [1] 3/24
entities' [1] 4/1
entitled [1] 36/13
envision [1] 21/10
equality [1] 8/11
equivalency [1] 5/18
error [1] 9/10
especially [1] 18/10
ESQ [3] 1/12 1/17 2/3
essence [1] 8/24
essentially [1] 21/18
establish [1] 26/23
et [1] 1/6
even [6] 9/22 13/24 24/20 25/10 29/21 35/20
ever [1] 5/9
every [2] 27/22 34/21
everybody [1] 29/6
everybody's [1] 33/9
everything [1] 5/22
evidence [5] 9/2 9/5 10/7 18/21 33/25
exact [2] 12/13 12/14
exactly [3] 6/2 18/6 18/22
example [2] 4/13 5/19
excellent [1] 10/16
excess [2] 3/22 4/16
exclude [1] 18/21
excuse [2] 25/12 31/17
Exhibit [2] 22/20 23/18
exhibits [4] 24/3 24/5 24/10 24/12
expect [1] 18/19
explained [2] 20/7 21/3
extensive [1] 4/3
extent [1] 12/1

F

fact [4] 4/22 15/12 15/17 30/11
facts [2] 13/23 16/5
factual [1] 33/10
fair [4] 26/10 27/21 28/16 33/14
faith [1] 29/18
false [1] 5/2
familiar [1] 19/7
fault [1] 21/25
federal [1] 34/24
filed [2] 11/20 12/12
Final [1] 23/10
find [1] 25/24
finding [3] 8/21 8/22 8/22
fine [1] 32/22
firm [6] 12/6 12/8 12/12 12/16 15/8 27/15
first [8] 3/13 4/15 6/22 6/25 8/18 10/21 18/3 24/22
fit [1] 32/24
five [1] 19/12
FL [1] 1/18
FLORIDA [4] 1/1 1/4 12/11 19/24
following [2] 3/2 32/15
foregoing [1] 36/11
forward [1] 33/12
fourth [1] 10/21
frame [1] 3/11
freely [1] 15/4
front [5] 10/5 13/3 26/1 27/14 31/4
fulfillment [2] 19/10 19/11
full [1] 8/20
fully [1] 29/1
further [1] 31/3

G

gamesmanship [3] 29/14 30/1 31/16
GATES [2] 1/13 1/17
gave [1] 12/8
genuine [1] 4/22
get [13] 3/4 8/2 9/20 11/13 15/1 17/6 18/14 25/2 25/17 26/21 30/22 32/20 35/7
getting [1] 9/23
give [6] 3/20 4/6 11/18 12/11 25/4 27/12
given [3] 17/2 18/10 32/16
Glass [1] 23/22
glimmer [1] 9/24
gmail.com [2] 2/8 36/16
go [7] 8/15 13/15 17/6 20/10 21/12 28/19 33/12
going [16] 4/18 6/17 15/11 15/15 18/11 18/17 25/4 25/15 31/24 32/4 32/5 34/6 34/8 34/9 34/15 35/8
gone [1] 28/22
good [5] 3/5 3/8 3/11 13/19 29/18
got [5] 13/5 26/13 27/15 30/24 32/11
gotten [1] 26/17
great [2] 25/6 28/6
gross [1] 9/10
grounds [2] 11/24 20/20
guess [6] 3/5 5/25 16/8 26/16 31/9 35/9
guidelines [1] 33/13

H

had [28] 7/15 8/18 8/19 9/1 9/8 10/14 10/23 11/9 11/15 11/17 13/12 16/13 16/14 16/17 16/21 16/22 20/11 22/11 25/13 25/15 25/20 28/22 29/2 29/6 29/15 29/22 31/13 34/22
hadn't [2] 20/8 20/9
half [6] 17/5 28/5 28/11 28/13 32/1 32/3
handed [1] 15/10
happen [1] 31/21
happens [2] 14/3 25/4
happy [1] 32/20
hard [4] 18/25 19/13 21/10 35/4
has [22] 3/13 3/17 4/12 4/13 5/6 6/4 6/6 6/12 7/19 9/4 9/8 9/10 9/25 10/1 10/8 11/23 17/11 17/14 20/14 21/6 24/2 31/21
have [65]
haven't [1] 25/12
having [2] 9/11 28/21
he [28] 20/2 20/10 20/11 20/11 28/22 28/24 29/1 29/3 29/8 29/9 29/9 29/11 29/23 30/15 30/17 30/18 30/22 30/24 31/2 31/5 31/8 31/12 31/13 31/15 31/19 34/21 34/22 34/22
head [1] 9/16
hear [2] 8/12 20/5
heard [5] 8/25 9/11 14/10 14/15 25/12
hearing [8] 1/9 3/12 7/14 8/18 10/20 10/21 14/22 16/13
hearings [3] 9/1 16/21 16/22
held [1] 3/2
help [1] 4/6
helpful [1] 26/2
helps [1] 4/4
her [10] 12/7 18/9 18/14 20/11 22/23 26/5 27/9 32/5 32/6 32/19
here [17] 4/15 5/6 6/7 7/19 9/12 9/24 10/19 11/7 13/1 13/1 14/19 21/20 21/21 28/6 29/20 30/5 35/6
here's [2] 6/11 17/10
hereby [1] 36/11
hereto [1] 22/20
herself [1] 32/25
hey [2] 12/23 12/25
highlight [3] 24/17 26/20 28/9

H

him [2] 20/1 20/2
his [2] 28/23 31/13
history [1] 10/19
hit [1] 9/15
Honor [16] 3/6 3/9 4/7 8/20 8/21 9/10 9/22 9/25 10/2 10/8 11/18 17/14 19/8 20/18 21/6 25/5
HONORABLE [1] 1/10
horse [1] 35/6
hour [12] 11/17 17/5 28/5 28/10 28/13 28/22 32/1 32/2 32/2 32/5 32/10 32/17
hours [2] 28/25 29/1
how [35] 4/4 5/24 9/20 9/21 11/13 11/15 13/5 13/6 13/7 13/11 13/15 14/4 14/5 14/7 14/20 15/20 15/22 15/24 16/2 16/6 16/11 18/9 19/7 19/17 20/24 22/3 22/16 27/4 27/9 27/21 28/1 33/4 33/15 34/1 34/12
However [1] 7/14
HUDAK [11] 2/3 3/9 4/6 10/13 11/3 12/8 12/17 20/5 23/13 32/18 35/10
Hudak's [4] 12/6 12/12 12/16 17/15
hypothetical [1] 34/25

I

I'll [4] 3/19 8/17 17/6 26/8
I'm [11] 16/8 16/25 21/12 21/24 22/13 26/25 28/10 28/12 31/1 32/7 32/19
I've [1] 30/4
identical [3] 5/16 5/20 14/5
identify [2] 3/25 4/2
identity [2] 7/18 8/5
if [40]
immediately [3] 30/15 31/1 31/20
implemented [2] 3/25 5/5
implied [1] 31/11
important [1] 18/16
impossible [2] 16/18 26/18
improper [1] 9/3
improperly [1] 9/18
in [98]
inadvertently [2] 21/17 24/10
inaudible [3] 23/12 26/9 26/14
INC [2] 1/3 1/6
include [4] 22/25 27/2 27/7 27/24
included [3] 21/17 22/11 24/11
including [1] 35/18
information [3] 8/25 17/2 17/7
infringement [4] 6/19 7/1 7/3 7/5
initial [1] 8/17
instance [1] 22/17
instead [1] 11/10
intend [6] 12/2 12/3 13/2 13/17 15/13 15/17
intended [1] 4/11
interesting [2] 15/11 35/5
into [7] 4/20 6/23 8/6 8/6 9/23 33/25 35/7
invade [1] 20/19
invaded [2] 20/17 33/4
inventory [3] 3/22 4/16 4/23
investigate [1] 16/7
InvisibleShield [1] 23/22
invoice [1] 21/4
invoices [9] 21/15 21/16 21/19 21/21 22/5 22/9 24/21 24/25 30/6
IP [1] 30/3
iPhone [2] 14/5 15/23
irrelevant [1] 8/22
is [134]
isn't [3] 7/11 10/20 18/5
issue [13] 7/19 7/25 8/19 8/20 8/21 9/19 9/21 10/20 11/5 15/15 17/7 28/21 36/2
issued [3] 4/9 8/21 10/2
issues [3] 4/11 5/11 35/5
it [127]
it's [17] 4/22 7/3 7/8 8/11 9/3 9/24 18/10 18/25 19/5 19/11 19/13 20/13 24/22 27/4 27/12 27/21 35/4
items [2] 23/20 23/21
its [7] 4/5 4/16 4/16 5/5 6/16 9/21 10/25
itself [3] 7/24 10/22 24/6

J

jamming [1] 15/21
jemancari [2] 2/8 36/16
Jennifer [2] 3/16 11/6
Joanne [3] 2/7 36/15 36/15
job [2] 10/16 27/15
Joe [1] 7/24
Joe's [3] 19/18 19/19 25/8
JUDGE [5] 1/10 8/14 24/17 36/3 36/5
judgment [2] 13/18 34/6
July [6] 10/21 12/25 14/6 14/7 15/24 15/25
jurisdiction [2] 11/23 11/24
jury [1] 13/3
just [36] 3/11 8/13 8/17 8/25 9/3 9/5 9/15 10/11 10/16 10/18 13/15 13/22 15/4 15/14 18/1 19/16 20/6 21/20 23/16 25/24 26/19 26/19 27/19 28/10 29/14 29/25 30/2 30/10 30/13 31/16 32/17 33/10 33/12 34/16 34/22 35/14

K

keep [1] 33/10
kept [2] 12/25 15/21
kids [2] 16/25 26/15
kind [4] 7/5 11/18 14/23 20/1
kinds [1] 11/14
klgates.com [2] 1/15 1/19
knew [4] 4/18 4/18 4/25 33/15
know [23] 6/11 8/15 10/4 12/18 14/4 14/6 15/22 15/24 18/9 18/18 18/24 19/7 22/3 22/24 23/24 24/1 26/24 27/4 27/9 27/21 28/1 32/19 34/12
knowing [1] 5/24
knowledge [2] 3/21 4/15
knows [2] 20/2 32/19
KRINSKY [3] 2/3 3/10 18/12

L

large [1] 4/24
largest [1] 5/6
last [1] 20/6
late [3] 25/17 25/18 25/21
later [3] 7/14 22/23 27/11
law [6] 9/3 9/11 10/6 12/6 12/16 27/15
layer [1] 19/22
least [3] 28/7 29/21 29/24
left [2] 12/8 15/8
legal [1] 30/4
legitimate [1] 13/15
length [1] 31/22
less [3] 5/25 6/3 32/10
let [10] 4/6 5/21 7/6 8/12 11/15 16/3 20/5 21/9 26/6 30/13
let's [4] 3/17 5/22 6/2 23/19
liable [2] 6/1 6/3
light [5] 34/4 34/6 34/13 34/14 34/14
like [24] 3/15 8/19 10/19 12/3 13/15 13/18 14/17 14/22 15/21 17/22 18/3 18/3 19/1 19/15 25/16 26/22 27/22 28/25 30/3 30/16 31/1 31/2 33/12 34/16
likely [4] 26/23 27/13 27/18 27/25
limited [3] 28/13 30/3 35/14
Lincoln [1] 1/13
line [1] 24/2
liquidated [1] 4/25
liquidation [3] 4/14 4/17 5/3
Liquidator [1] 7/24
liquidators [2] 5/23 5/24
LISETTE [1] 1/10
listing [1] 22/8
Literally [2] 34/14 34/14
LLP [3] 1/13 1/17 2/3
long [1] 11/13
look [1] 18/3
looked [4] 13/14 13/19 25/5 27/19
looks [1] 18/3
lot [1] 19/22

M

MA [1] 1/14
made [11] 5/6 6/6 7/22 9/10 11/21 14/17 20/17 20/22 27/25 29/20 31/5
MAGISTRATE [1] 1/10
main [1] 16/20
make [22] 5/25 5/25 6/3 7/3 8/17 16/9 18/10 18/13 19/1 20/3 21/11 26/6 30/13 31/17 31/19 32/16 32/25 33/4 33/19 33/21 35/10 35/11
makes [1] 22/24
making [5] 4/24 6/18 6/18 7/11 7/13
MALLORY [2] 1/17 3/6
mallory.cooney [1] 1/19
Mancari [3] 2/7 36/15 36/15
manner [1] 10/3
many [6] 13/5 13/6 13/11 22/3 33/3 33/3
March [5] 22/17 27/3 27/8 27/24 27/25
marketing [1] 9/18
marketplace [7] 4/20 5/1 5/13 6/10 6/23 7/21 8/7
match [1] 16/19
matched [1] 21/4
matter [3] 3/13 9/3 36/13
matters [2] 3/12 11/11
may [2] 24/15 35/5
maybe [2] 9/23 32/2
me [27] 4/6 5/21 7/6 8/12 8/16 11/15 14/20 14/22 15/5 15/21 16/3 16/15 16/23 17/2 20/5 21/9 21/10 22/19 23/16 24/4 26/1 26/4 26/6 27/14 27/16 30/13 31/19
mean [21] 6/4 6/6 12/22 16/25 18/18 18/21 19/1 20/7 23/13 23/24 24/19 25/2 25/5 25/7 25/7 25/8 26/10 27/12 31/9 34/24 35/5
means [1] 23/15
meet [1] 15/16
member [1] 30/4
mercy [1] 32/17
Miami [2] 1/4 1/18
might [3] 16/3 18/20 33/23
misrepresent [1] 16/5
misrepresenting [1] 7/10
mix [1] 19/11
mixed [2] 18/14 18/18
mixing [3] 12/22 14/7 19/5
months [5] 17/3 22/23 25/12 27/11 31/14
Mophie [1] 22/17

M

more [9] 3/19 4/11 22/16 24/5 26/1 29/1 29/8 30/16 31/2
MORGAN [2] 1/12 3/6
morgan.nickerson [1] 1/15
morning [1] 31/1
motion [7] 8/24 9/4 9/9 10/6 11/22 29/13 31/17
motivation [1] 4/20
move [2] 10/10 11/4
moving [1] 7/15
Mr. [17] 8/12 12/9 12/16 12/17 12/19 14/1 20/7 20/10 20/15 21/5 21/23 24/14 29/21 31/25 33/21 34/20 35/16
Mr. Berkowitz [3] 12/9 12/17 14/1
Mr. Nickerson [12] 8/12 20/7 20/10 20/15 21/5 21/23 24/14 29/21 31/25 33/21 34/20 35/16
Mr. Rosner [2] 12/16 12/19
Mrs. [2] 25/15 28/8
Mrs. Doran [2] 25/15 28/8
Ms. [25] 4/6 10/13 11/3 12/6 12/8 12/12 12/16 12/17 12/18 17/5 17/15 18/2 20/1 20/5 20/7 20/21 21/2 23/13 29/2 29/23 32/18 32/18 32/21 32/24 35/10
Ms. Doran [9] 12/18 17/5 18/2 20/1 20/7 20/21 21/2 29/2 32/21
Ms. Doran's [3] 29/23 32/18 32/24
Ms. Hudak [9] 4/6 10/13 11/3 12/8 12/17 20/5 23/13 32/18 35/10
Ms. Hudak's [4] 12/6 12/12 12/16 17/15
much [3] 4/11 11/15 36/1
multiple [2] 18/12 18/13
must [3] 24/1 32/24 32/24
my [12] 6/11 21/25 22/21 24/18 25/11 26/12 26/19 27/13 33/24 34/3 35/7 36/12
myself [1] 32/16

N

nail [1] 9/15
named [1] 12/16
narrowed [2] 3/19 4/11
need [6] 11/19 13/18 17/7 26/4 33/25 35/7
needed [2] 29/8 29/11
needs [3] 20/10 31/21 35/11
never [3] 27/14 27/17 30/4
new [20] 2/4 4/14 4/19 4/21 5/1 5/3 5/8 5/9 5/12 5/24 7/8 7/9 8/25 9/5 9/10 10/7 23/12 24/25 27/15 32/7
newly [1] 9/2
newly-discovered [1] 9/2
next [4] 10/10 11/5 14/14 30/25
NICKERSON [14] 1/12 3/6 8/12 20/7 20/10 20/15 21/5 21/23 24/14 29/21 31/25 33/21 34/20 35/16
night [13] 16/23 17/1 17/4 24/19 24/24 25/1 25/19 25/23 26/9 28/10 29/17 30/23 30/24
no [19] 1/2 3/3 6/17 8/17 9/2 9/5 10/7 16/12 16/14 17/2 20/13 26/25 27/11 29/20 32/6 33/14 34/5 34/10 34/15
not [42]
notes [1] 33/8
November [4] 1/5 21/8 24/24 36/15
now [14] 3/5 3/19 4/20 5/1 9/2 14/21 15/12 15/17 22/14 25/24 26/1 26/22 31/10 35/3
nuances [1] 19/16
number [4] 21/2 22/4 22/19 30/3
numbered [1] 23/20
numbers [5] 22/25 24/7 27/1 27/7 27/23
NY [1] 2/4

O

oath [1] 18/25
objection [2] 13/6 31/19
objections [4] 20/17 20/22 33/20 35/11
obtaining [1] 7/23
October [1] 16/22
off [2] 21/25 26/12
office [2] 18/11 18/12
oh [2] 22/6 22/22
OK [33] 8/12 8/15 10/9 11/7 14/19 15/6 15/9 17/11 17/21 20/5 20/6 21/12 21/13 22/13 23/2 23/10 23/18 23/21 24/3 24/9 24/13 28/12 30/13 30/20 30/24 31/6 31/18 32/14 32/22 34/19 35/12 35/20 36/1
old [1] 17/1
on [69]
once [1] 6/23
one [21] 1/13 7/12 10/21 11/17 14/6 14/6 15/23 15/24 15/24 15/25 19/13 19/14 19/19 22/23 23/21 24/4 32/5 32/9 32/17 34/5 35/25
one-hour [1] 32/17
ones [3] 15/4 35/18 35/18
only [9] 6/15 14/1 17/16 17/19 17/24 20/16 21/5 22/2 24/3
opening [1] 22/13
opens [1] 15/18
opportunity [5] 20/11 25/20 28/4 33/19 34/22
or [13] 5/5 5/5 5/14 5/25 9/10 12/2 22/22 23/5 26/21 28/8 29/17 32/10 32/14
order [13] 4/8 4/9 8/2 19/12 19/14 22/17 22/19 22/21 27/4 27/9 27/24 28/2 32/23
ordered [6] 8/20 11/1 22/22 23/20 23/21 33/16
ordering [1] 33/12
orders [1] 36/2
originally [1] 20/18
other [19] 5/4 5/9 6/13 15/18 19/9 19/10 20/8 20/9 23/12 23/14 23/23 24/1 24/15 25/5 25/7 25/7 26/16 28/8 34/3
others [3] 14/16 14/16 14/18
otherwise [1] 21/20
our [6] 9/13 9/17 11/24 16/20 21/7 29/18
out [7] 13/20 15/15 25/24 27/16 29/6 30/6 34/16
outside [1] 23/8
outweighed [1] 9/24
over [7] 9/6 9/6 9/7 9/7 15/10 16/23 29/16
overly [1] 4/10

P

p.m [3] 29/17 30/23 30/24
package [4] 23/1 23/4 27/8 35/25
packages [2] 23/3 27/3
packaging [2] 23/4 23/8
pad [1] 22/18
page [6] 16/23 21/13 23/17 23/19 28/20 31/13
pages [4] 1/7 16/24 16/24 29/17
paragraph [2] 26/25 27/22
paralegal [4] 12/5 12/15 12/18 15/8
part [1] 8/1
particular [1] 33/18
particularly [1] 9/6
parties [1] 3/14
party [2] 3/21 32/18
Pause [1] 22/15
pay [1] 14/21
pending [4] 10/1 11/23 12/10 19/23
people [2] 6/12 6/13
permitted [2] 6/24 20/25
permitting [1] 8/7
personal [2] 11/23 11/24
phone [3] 26/12 34/2 34/2
photograph [5] 16/18 17/10 17/11 33/5 34/22
photographed [1] 16/11
photographs [18] 16/12 16/14 16/17 17/24 21/6 21/14 21/21 23/1 23/2 27/2 27/7 27/24 33/15 33/16 34/18 34/21 35/15 35/18
photos [1] 30/8
physically [1] 26/18
pick [1] 34/9
picture [4] 14/14 18/7 18/8 28/1
pictures [41]
place [2] 9/9 30/25
placed [2] 12/7 22/17
placement [1] 5/7
plaintiff [4] 1/4 1/12 3/7 3/15
plastic [1] 23/4
Plus [1] 23/22
point [10] 8/17 10/11 10/24 16/20 20/6 30/20 31/7 31/9 34/16 35/9
possession [1] 31/13
practice [1] 26/15
pre [1] 8/19
pre-conference [1] 8/19
precious [1] 11/4
preliminarily [1] 29/24
preliminary [2] 29/10 29/21
prepare [1] 25/5
prepared [2] 25/10 29/6
preparing [2] 25/2 25/19
present [1] 31/4
presented [3] 10/7 27/14 29/25
presenting [1] 14/21
pressure [4] 12/4 13/18 18/9 19/16
Presumably [1] 25/13
pretty [2] 18/15 28/7
preview [1] 15/14
previously [2] 24/7 35/21
printed [2] 22/21 22/23
prior [7] 4/8 24/11 24/12 24/21 29/15 33/4 34/17
privilege [1] 35/12
privileged [1] 11/11
probably [1] 22/4
procedure [1] 10/18
proceed [2] 20/19 20/20
proceeded [1] 10/23
proceedings [1] 3/2
process [3] 4/18 9/9 11/11
produce [2] 10/25 25/18
produced [24] 13/25 14/1 16/14 21/15 21/15 22/7 22/9 22/25 24/7 24/18 24/21 24/22 24/23 24/24 24/25 25/12 26/25 27/1 27/6 27/23 28/10 29/16 30/8 31/14
producing [2] 10/22 25/21
product [39]
production [4] 21/17 22/12 24/11 25/10
productions [1] 24/12
products [58]

P

profile [1] 23/12
prompted [1] 14/9
proper [1] 9/12
proposed [1] 3/13
provided [5] 8/25 20/9 20/14 21/3 30/5
provides [1] 21/14
public [1] 7/4
pull [2] 21/9 26/6
purchase [2] 30/6 30/7
purchased [12] 12/5 13/12 16/11 16/11 17/9 17/18 17/23 20/8 22/1 22/9 30/8 33/17
purchases [4] 11/21 21/21 27/25 30/11
pure [3] 29/14 29/25 31/16
purposes [1] 15/18
put [8] 6/10 6/23 7/19 8/6 13/2 14/3 15/23 19/6
putting [3] 4/19 7/24 33/24

Q

quality [2] 3/24 5/4
quash [1] 7/14
question [9] 6/11 15/11 20/12 25/6 27/21 30/9 33/17 33/18 34/10
questioning [1] 33/13
questions [49]
quick [1] 28/10
quickly [3] 9/15 18/15 32/21
quite [2] 10/14 17/22

R

raise [2] 28/21 28/24
raised [5] 4/12 4/13 5/15 29/9 31/8
raising [1] 29/13
rather [1] 18/15
read [4] 11/7 25/23 26/9 28/25
reader [1] 26/8
reading [1] 26/25
real [2] 12/21 25/11
realize [2] 24/20 25/3
really [3] 14/9 26/24 35/25
rearguing [1] 9/5
reason [1] 32/6
reasonably [1] 32/25
receipt [1] 14/20
receive [1] 17/3
received [4] 21/22 23/2 27/3 27/8
reconsideration [4] 8/24 9/4 9/9 10/7
record [5] 11/1 11/2 11/22 15/14 28/25
recording [2] 1/9 36/13
referred [2] 31/14 35/22
refers [1] 24/6
reframed [1] 3/18
refresher [1] 11/18
regarding [5] 3/15 13/22 14/2 16/1 16/10
rehashing [1] 9/1
REID [1] 1/10
reissue [1] 3/14
reiterate [1] 8/16
relate [5] 5/4 21/15 21/22 24/1 30/7
related [2] 5/15 22/5
relates [1] 4/15
relating [2] 5/10 5/14
relevance [4] 4/4 8/11 8/19 10/17
relevancy [1] 9/24
relevant [4] 6/9 7/18 8/5 28/3
relied [1] 7/13
remember [1] 19/7
remind [1] 10/19
remotely [4] 17/5 32/6 32/9 32/24
reopen [2] 28/23 30/18
reporter [3] 2/8 31/5 36/16
represent [1] 32/20
request [3] 3/19 4/15 5/18
requests [4] 4/11 5/4 5/11 5/14
required [1] 5/5
requirements [1] 8/8
resale [2] 4/25 5/2
resell [1] 6/24
reseller [1] 4/1
resellers [2] 6/5 6/7
reservation [1] 31/5
reserve [1] 31/2
reserved [1] 28/23
reserving [1] 30/18
respect [2] 11/5 25/22
respond [3] 10/11 10/18 28/18
response [1] 31/6
responsibilities [1] 26/16
responsibility [1] 26/19
retailer [1] 5/6
retailers [1] 5/23
return [1] 5/9
review [7] 28/21 29/9 29/18 29/24 30/16 31/3 31/25
reviewed [1] 29/4
right [23] 6/14 6/20 7/5 8/10 10/9 13/5 17/21 18/2 18/6 19/5 21/9 22/4 24/13 26/22 28/6 28/23 30/18 30/20 32/22 35/3 35/13 36/1 36/4
rightly [1] 20/21
rip [1] 28/6
RKA [1] 1/2
roadmap [2] 21/14 21/20
Rosner [2] 12/16 12/19
routine [1] 30/3
RPR [2] 2/7 36/15
ruled [5] 9/8 9/22 9/25 10/2 10/8
rules [1] 7/8
ruling [2] 8/21 11/25
rulings [1] 25/15
running [1] 29/16

S

S-K-U-s [1] 5/14
said [10] 12/23 20/21 21/5 21/25 25/17 26/22 26/24 30/15 31/2 31/9
sale [2] 6/22 6/25
sales [4] 3/23 4/24 6/8 8/9
same [10] 5/17 5/19 9/1 9/6 9/7 12/13 12/14 19/12 19/12 28/1
SANDRA [2] 2/3 3/9
saw [1] 26/15
say [19] 5/22 5/22 6/2 9/15 14/10 18/6 18/7 18/17 18/25 19/2 19/13 20/10 21/24 25/18 26/18 26/22 27/21 29/17 35/4
saying [7] 7/7 11/7 11/8 14/23 16/8 24/14 28/25
says [6] 6/15 12/18 17/9 19/4 23/4 24/14
schedule [5] 29/16 29/23 32/18 32/19 32/25
schedules [1] 29/7
screenshots [1] 22/8
Screenya [10] 11/22 11/23 12/2 12/13 19/1 23/12 23/14 23/22 23/25 24/15
second [3] 18/10 19/23 29/14
seconds [1] 25/6
see [18] 3/19 4/3 4/4 7/2 10/16 18/14 18/23 19/21 21/9 21/11 22/13 22/22 23/10 29/20 30/13 31/18 32/1 32/2
seem [2] 31/18 31/19
seen [2] 29/3 30/4
sell [4] 6/13 6/13 7/4 8/8
seller [4] 19/9 23/12 23/16 23/25
sellers [4] 4/17 4/19 8/1 8/8
selling [7] 5/23 5/24 6/9 7/7 7/8 7/10 9/19
sells [2] 6/16 9/21
send [2] 13/25 16/23
sense [1] 6/1
sent [1] 17/15
September [1] 16/22
sets [1] 30/6
seven [4] 16/24 21/13 28/20 31/13
seven-page [3] 21/13 28/20 31/13
several [2] 22/23 27/11
she [35] 12/6 12/6 12/7 12/8 12/8 12/18 12/19 13/11 13/11 13/12 15/10 15/22 18/20 18/24 19/2 19/5 19/12 19/18 20/8 20/9 21/2 21/3 22/22 23/4 26/23 27/9 27/18 27/19 29/2 29/4 32/18 32/25 33/15 33/16 35/11
she's [4] 18/17 19/5 20/1 23/2
shipped [3] 19/17 19/19 23/9
Shop [2] 19/19 25/8
should [5] 25/19 29/5 30/8 31/8 31/10
show [5] 12/24 12/25 13/14 14/18 14/20
showed [1] 34/3
showing [7] 4/11 5/18 21/14 21/19 21/20 22/8 23/8
shudak [1] 2/5
shut [1] 26/12
side [3] 25/5 28/8 29/18
sides [1] 36/4
sign [1] 27/16
signed [5] 16/21 24/23 25/13 27/10 27/16
simply [2] 14/19 31/14
since [2] 29/4 31/24
single [2] 27/22 34/22
sit [1] 29/7
sitting [2] 13/20 17/3
situation [2] 24/1 30/4
six [1] 16/24
skepticism [1] 20/19
SKU [4] 5/16 5/17 5/19 5/19
SKUs [2] 4/2 5/14
so [61]
soccer [1] 26/15
sold [12] 3/23 4/14 5/3 5/9 5/12 6/22 8/1 23/11 23/13 23/16 23/22 24/15
some [17] 3/14 4/6 6/14 9/23 13/25 14/10 14/14 14/15 14/18 22/23 23/6 23/7 24/1 29/10 31/22 33/13 33/22
somehow [4] 5/16 7/18 7/23 8/4
someone [3] 14/17 24/16 34/2
something [6] 7/3 9/10 17/24 18/15 25/18 35/2
sometime [1] 32/14
sometimes [3] 19/8 25/2 25/17
sorry [2] 21/12 21/24
sound [1] 19/1
sounds [3] 14/17 14/22 17/22
sourcing [1] 7/17
South [1] 1/18
SOUTHERN [3] 1/1 12/10 19/23
specific [3] 5/11 5/16 5/19
specifically [2] 10/25 13/24
speed [1] 26/8

S

staff [1] 30/5
stamp [1] 16/18
stamped [1] 18/8
stamps [1] 17/11
start [5] 3/17 11/15 23/19 29/1 29/22
started [1] 29/23
STATES [2] 1/1 1/10
stating [2] 7/9 32/23
status [1] 4/1
statute [1] 6/14
stay [1] 17/1
stayed [1] 25/19
stickers [1] 5/7
still [8] 4/3 4/3 4/4 10/16 25/11 26/11 31/4 33/19
stop [1] 5/1
storage [1] 12/25
store [1] 14/21
story [1] 27/18
strategy [1] 27/13
Street [1] 1/13
stuff [3] 25/3 25/17 26/16
subject [1] 11/25
submitted [1] 9/14
subpoenas [7] 3/14 3/17 4/8 4/10 7/14 8/23 10/2
such [1] 9/4
sufficient [5] 3/20 3/22 3/24 3/25 4/2
summary [1] 13/18
supplementation [1] 21/18
supplementing [1] 24/12
supplied [6] 23/12 23/14 23/22 24/1 24/15 25/7
supplier [4] 7/17 7/18 8/4 8/5
suppliers [1] 7/16
supply [1] 7/19
supposed [1] 4/16
sure [12] 8/14 16/9 18/10 18/13 20/3 21/11 22/3 26/3 26/6 28/12 30/13 33/21
surprised [1] 25/16
surrounding [1] 13/23
system [1] 19/16

T

tailored [1] 5/11
take [13] 13/5 13/7 13/16 14/14 14/15 25/23 28/12 31/23 32/1 32/2 33/5 33/8 34/21
taken [14] 13/8 13/20 13/24 16/2 16/3 16/4 16/6 23/2 29/6 29/23 34/1 34/1 34/2 34/3
talked [1] 17/23
talking [2] 25/25 30/2
TARTER [3] 2/3 3/10 18/12
tarterkrinsky.com [1] 2/5
taste [1] 11/13
Techy [1] 12/11
tell [4] 23/11 26/4 27/18 35/3
telling [3] 16/15 20/13 24/4
ten [8] 12/7 13/25 14/19 17/16 17/18 17/23 22/1 22/4
terms [1] 35/11
test [8] 11/9 12/4 13/18 18/9 19/16 21/21 30/3 30/11
testified [5] 12/6 12/15 20/1 20/7 21/2
testimony [1] 16/24
than [2] 5/17 9/16
Thank [6] 4/7 8/14 36/1 36/3 36/5 36/6
that [261]
that's [14] 6/11 9/12 10/9 17/24 18/15 18/22 19/15 20/24 25/11 27/18 28/1 31/10 32/22 33/14
their [14] 4/19 4/20 4/23 6/7 7/18 8/1 8/1 8/7 9/18 11/2 18/11 24/7 29/7 30/12
them [21] 5/24 9/20 10/15 11/1 12/4 12/7 12/8 13/10 14/1 14/3 14/20 14/21 14/21 15/23 16/19 17/16 17/20 17/21 18/18 29/19 31/10
themselves [2] 9/19 22/9
then [10] 3/15 5/14 8/12 14/9 14/14 22/23 25/18 29/4 29/11 31/15
theory [1] 26/17
there [30] 6/14 9/2 9/5 9/8 9/9 9/23 10/4 10/6 10/17 10/17 11/22 12/10 12/15 13/14 13/18 17/15 18/11 19/24 21/5 22/1 22/2 23/11 24/4 25/4 27/11 29/20 31/21 32/6 34/10 35/5
there's [5] 10/7 17/13 17/24 19/22 24/3
thereafter [1] 31/20
Thereupon [1] 2/10
these [37]
they [53]
they're [15] 4/24 5/1 6/2 6/2 6/8 6/12 6/13 6/18 7/11 7/25 8/7 12/21 33/24 34/9 35/22
they've [2] 8/2 25/13
thing [1] 9/6
things [1] 19/15
think [38]
third [5] 3/14 3/21 8/18 10/20 32/18
third-party [1] 3/21
this [100]
those [21] 5/2 8/9 8/12 9/20 10/14 12/2 13/4 14/23 15/2 15/13 15/17 16/1 21/19 22/5 22/11 27/14 28/3 31/15 33/15 33/19 34/1
though [3] 10/19 18/5 35/20
thousand [1] 29/17
three [18] 9/1 16/25 17/3 17/16 17/19 17/21 17/24 21/5 21/16 21/25 22/2 22/5 22/10 24/3 24/10 24/11 24/20 26/14
through [7] 6/8 7/7 7/20 17/6 26/15 26/17 28/6
tight [1] 29/16
time [21] 3/16 11/4 11/4 11/9 11/10 11/15 24/22 25/5 25/14 28/21 29/6 29/8 29/12 29/24 30/16 30/21 31/2 31/7 31/22 32/5 34/18
times [2] 19/9 19/10
timing [3] 24/17 25/9 30/14
today [3] 3/12 9/12 15/12
tomorrow [1] 32/13
took [5] 13/4 13/10 13/12 13/20 30/25
top [1] 19/23
tops [1] 32/2
tough [1] 34/7
trademark [5] 6/18 6/22 6/25 7/2 7/5
TRADING [1] 1/6
TRANSCRIBED [2] 1/9 2/7
transcript [2] 10/24 20/14
transcription [1] 36/12
transcripts [1] 11/12
transparency [1] 24/20
transparent [2] 18/1 26/11
travel [1] 7/20
trial [3] 12/2 12/3 13/17
true [11] 5/22 6/11 13/1 18/5 18/10 18/14 22/20 22/25 27/2 27/7 27/24
try [2] 26/11 31/17
trying [4] 5/1 16/9 17/1 30/10
two [10] 12/20 12/22 13/21 14/1 14/5 15/22 20/3 25/12 27/25 28/25
TX [1] 1/6
type [4] 16/1 19/15 28/11 33/13
types [1] 33/8

U

uncover [1] 25/3
under [6] 6/22 7/9 10/6 16/25 18/25 28/5
undermine [1] 30/11
understand [4] 7/6 16/9 30/14 33/11
understanding [1] 10/23
understood [1] 4/9
unduly [2] 8/22 9/25
unequal [1] 8/3
UNITED [2] 1/1 1/10
Universal [1] 22/18
until [3] 15/7 24/24 28/22
untimely [3] 8/23 10/1 10/3
up [22] 9/10 10/19 12/20 12/22 14/7 15/7 15/18 15/21 16/19 17/1 18/14 19/5 19/11 21/4 21/10 25/6 25/19 26/6 26/17 29/2 29/3 30/10
upon [1] 31/25
us [2] 15/12 31/16
use [9] 11/9 12/2 12/3 13/17 15/13 15/17 17/25 34/8 34/21
used [4] 5/8 11/10 12/13 12/14
using [1] 19/25

V

value [1] 10/4
Venable [1] 27/15
Verizon [2] 5/19 7/23
Verizon-specific [1] 5/19
verses [2] 7/24 33/5
version [2] 5/17 24/5
very [9] 3/8 3/11 4/3 19/11 20/13 28/3 29/16 32/19 36/1

W

waiver [1] 35/5
waiving [1] 11/24
want [24] 3/11 4/22 8/15 9/13 11/3 11/4 14/24 16/5 18/2 18/6 18/9 18/13 19/1 20/2 21/10 24/17 25/24 26/10 26/18 26/24 27/4 27/12 31/9 33/21
wanted [5] 15/14 26/20 29/9 30/18 31/12
was [58]
wasn't [1] 22/1
waste [1] 11/3
way [7] 4/5 13/1 18/21 23/11 29/12 29/25 31/18
we [33] 4/8 7/15 9/1 9/5 9/7 10/10 10/13 11/18 11/23 12/3 12/20 12/21 13/2 13/18 13/22 14/2 15/15 16/21 16/22 20/3 25/15 28/22 29/1 29/12 29/15 29/15 29/18 29/20 29/23 30/5 31/4 32/20 33/2
we're [4] 3/12 25/25 30/2 35/6
we've [6] 8/18 8/19 9/8 9/14 11/17 32/11
website [1] 22/18
week [2] 32/14 32/15
weeks [1] 13/21
well [11] 6/5 6/6 7/7 11/4 11/8 11/21 14/15 18/18 31/20 34/5 35/17
went [4] 19/18 20/24 27/16 27/19
were [64]
weren't [3] 13/22 14/2 24/21
what [34] 6/3 6/9 6/10 8/6 8/7 9/12 9/22

W

what... [27] 10/4 11/14 14/3 14/9 14/13 14/23 15/20 16/13 16/20 17/8 18/18 18/24 19/5 21/4 21/24 23/13 23/24 24/4 25/6 25/25 26/4 31/6 31/21 33/8 33/22 34/20 35/8
what's [1] 16/15
when [21] 9/5 12/8 13/4 14/13 16/3 16/3 16/10 16/11 18/7 18/7 19/8 20/16 23/4 24/22 25/2 25/4 26/24 29/6 30/15 30/22 32/11
where [25] 7/15 9/19 10/7 10/21 10/24 11/20 12/21 14/20 14/21 15/21 16/12 18/11 19/2 19/4 19/18 19/24 19/25 20/3 20/20 22/8 23/9 24/14 30/4 33/22 34/7
whether [4] 5/7 5/8 13/24 20/19
which [21] 9/11 14/6 14/6 15/11 15/18 15/24 15/25 18/25 19/12 19/14 19/14 21/3 21/3 21/4 21/14 21/15 22/21 23/18 30/3 30/6 30/7
While [1] 31/4
white [1] 19/20
who [6] 6/15 12/9 12/16 12/18 13/8 20/2
whole [2] 15/18 19/24
why [11] 11/18 13/13 14/15 17/2 17/3 17/24 24/2 25/12 28/12 32/1 33/17
widgets [1] 14/19
will [11] 4/6 10/10 15/4 31/23 32/6 32/9 32/20 32/23 32/25 35/10 36/2
wireless [1] 22/18
within [1] 32/24
without [1] 9/22
witness [4] 3/16 11/16 13/9 13/10
witnesses [2] 15/12 15/17
woken [1] 26/17
work [11] 11/10 13/6 15/15 20/17 20/19 20/22 20/25 33/4 33/18 34/15 35/11
worked [1] 29/18
working [2] 14/17 20/1
worms [1] 15/19
worst [1] 34/9
would [28] 3/15 7/22 8/3 9/12 10/19 12/3 13/8 18/20 19/15 20/19 23/18 25/23 25/25 26/1 26/22 26/22 26/23 27/9 27/18 28/12 28/25 30/16 31/2 32/1 32/2 32/9 33/12 34/16
Wouldn't [2] 6/3 6/14
write [2] 26/23 28/24
wrong [1] 7/11

Y

Yeah [1] 35/4
year [1] 10/1
years [1] 17/1
yes [18] 13/10 13/13 14/12 14/25 16/8 17/13 17/19 18/20 27/10 28/14 28/19 30/17 32/8 32/13 34/7 34/11 34/24 35/24
York [2] 2/4 32/7
you [103]
you're [8] 14/19 14/21 16/8 25/2 26/8 31/24 33/11 34/8
you've [2] 10/15 10/15
your [31] 3/6 3/9 3/14 4/7 4/8 8/20 8/21 9/10 9/22 9/25 10/2 10/8 11/3 11/4 11/18 13/21 14/3 14/8 15/23 17/14 17/25 18/2 18/7 19/7 20/18 21/6 25/5 25/19 31/6 31/24 34/2

Z

ZAGG [43]
Zagg's [4] 3/21 4/15 7/6 9/16