UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-20304-ALTMAN/Reid

**ZAGG INC.**,

    *Plaintiff*,

v.

**MENACHEM MENDEL ICHILEVICI,** *et al.*,

    *Defendants.*
_____/

**DVG TRADE LLC**,

    *Counter-Plaintiff*,

v.

**ZAGG INC.,** *et al.*,

    *Counter-Defendants.*
_____/

## ORDER DENYING MOTION TO STRIKE OR DISMISS SCREENYA'S COUNTERCLAIMS

One of our Counter-Defendants, Screenya, LLC, has filed its own Counterclaims against Counter-Plaintiff DVG Trade LLC ("DVG"). *See* Screenya's Counterclaims [ECF No. 216] at 15–27. DVG has moved to strike or dismiss Screenya's Counterclaims on that grounds that they're "untimely" and "meritless." Motion to Strike or Dismiss Screenya's Counterclaims ("Motion") [ECF No. 228] at 2.[1] The Motion has been fully briefed. *See* Response in Opposition to Defendant's Motion to Strike or Dismiss Counterclaims ("Response") [ECF No. 243]; Reply Memorandum in Support of its Motion

---

[1] DVG filed a redacted version of the Motion at [ECF No. 226]. Although we'll be adjudicating the unredacted version of the Motion at [ECF No. 228], our Order won't explicitly reference any of this confidential information and won't be filed under seal.

to Strike or Dismiss Screenya's Counterclaims ("Reply") [ECF No. 252]. After careful review, we now **DENY** the Motion. We'll also provide a brief window for the parties "to pursue discovery related to Screenya's Counterclaims." Motion at 25.

## THE FACTS

This suit began when the Plaintiff, ZAGG, Inc., filed a Complaint accusing the original three Defendants of selling used ZAGG products on Amazon while falsely advertising that the products were "new." *ZAGG Inc. v. Ichilevici*, 2024 WL 3874584, at *2 (S.D. Fla. Aug. 20, 2024) (Altman, J.) ("According to ZAGG, Defendant Ichilevici 'acts by and through Defendants DVG Trade and TX Trading to own and operate the 'Mac N' Cheese' Amazon Seller Account through which Defendants advertise and sell ZAGG Products.' . . . ZAGG accuses the Defendants of 'representing that the ZAGG Products they offer for sale on the Internet are new'—even though 'the products actually sold by the Defendants and received by the consumers are in used, rather than new condition.'" (cleaned up) (quoting Second Amended Complaint [ECF No. 26] ¶¶ 15, 43)). One of those Defendants, DVG, asserted five counterclaims against ZAGG and three other Counter-Defendants: "Screenya, a Delaware corporation with its principal place of business in Utah; [Brendan] Bucker, ZAGG's 'former Tax Director' and the 'director' of Screenya's operations; and [Merril] Longmore, ZAGG's 'Director of Ecommerce.'" *Ibid.* (cleaned up) (quoting DVG Counterclaims [ECF No. 41] ¶¶ 2–7). We dismissed DVG's false-advertising counterclaim under the Lanham Act, but we allowed the remaining counterclaims to proceed. *See id.* at *12 ("The Counter-Defendants' Motion to Dismiss the Counterclaims [ECF No. 50] is **GRANTED in part** and **DENIED in part**. Count III of the Counterclaims is **DISMISSED** without prejudice. The Motion to Dismiss is otherwise **DENIED**.").

On September 6, 2024, in addition to answering DVG's Counterclaims, Screenya asserted two counterclaims of its own against DVG. *See generally* Counterclaim-Defendants' Answer to DVG's Counterclaims and Screenya LLC's Counterclaims [ECF No. 216]. Screeyna alleges that DVG engaged

2

in false advertising under 15 U.S.C. § 1125(a) (Count I), and that it violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II), because it advertised the ZAGG products it sold as "new" even though it knew "that its products come from liquidation sources." *Id.* at 15. DVG now "respectfully requests that the Court strike or dismiss [Screenya's Counterclaims] or, in the alternative, permit DVG leave to take discovery on Screenya's Counterclaims." Motion at 6.

## THE LAW

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Under Rule 12(f), a "motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *U.S. Commodity Futures Trading Comm'n v. Mintco, LLC*, 2016 WL 3944101, at *2 (S.D. Fla. May 17, 2016) (Bloom, J.). "Courts have broad discretion when considering a motion to strike, [although] striking defenses from a pleading remains a drastic remedy to be resorted to only when required for the purposes of justice and only when the stricken material has no possible relation to the controversy." *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (Martinez, J.) (cleaned up); *see also Jet Pay, LLC v. RJD Stores, LLC*, 2011 WL 13217531, at *1 (S.D. Fla. Sept. 27, 2011) (Rosenbaum, Mag. J.) ("[S]triking allegations from a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice,' and only when the stricken allegations have 'no possible relation to the controversy.'" (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962))).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550

3

U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). And the "moving party bears the burden to show that the complaint should be dismissed." *Spring Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1229 (S.D. Fla. 2014) (Cohn, J.) (quoting *Mendez-Arriola v. White Wilson Med. Ctr., P.A.*, 2010 WL 3385356, at *3 (M.D. Fla. Aug. 25, 2010) (Rodgers, J.)).

**ANALYSIS**

**I.     Motion to Strike**

DVG wants us to strike Screenya's Counterclaims. *See* Motion at 14 ("As a preliminary matter, Screenya's Counterclaims should be stricken pursuant to FED. R. CIV. P. 12(f) and/or the Court's inherent power."). DVG believes that Screenya's Counterclaims "should be stricken as untimely" because they were due "within fourteen days of the Court's August 20, 2024 Order denying Screenya's motion to dismiss" (*i.e.*, September 3, 2024). *Ibid.* Alternatively, DVG believes that Screenya shouldn't be permitted "to assert Counterclaims for the first time—after discovery has closed, the deadline for amendment of the pleadings has passed, and the Court specifically discussed and set a schedule to get this action ready for dispositive motions and trial—would needlessly prolong this action" because "[ZAGG] and Screenya are one and the same[.]" *Id.* at 15. For two reasons, we disagree.

*First*, even if Screenya's Counterclaims are untimely, we decline to impose the harsh penalty of striking them. We granted in part and denied in part the Counter-Defendants' motion to dismiss DVG's counterclaims on August 20, 2024. *See generally ZAGG*, 2024 WL 3874584, at *12. DVG is correct that, under Rule 12(a)(4)(A), Screenya *should* have been "required to file an answer to DVG's counterclaims within fourteen days of the Court's August 20, 2024 Order denying Screenya's motion to dismiss." Motion at 14; *see also* FED. R. CIV. P. 12(a)(4)(A) ("[I]f the court denies the [Rule 12(b)] motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action[.]"). Screenya ended up filing its Counterclaims on September 6, 2024, just three days beyond the September 3, 2024, deadline contemplated by Rule 12(a)(4)(A).

But our August 20, 2024, Order also allowed DVG to "amend Count III of its Counterclaims within fourteen days of this Order"—that is, by September 3, 2024. *ZAGG*, 2024 WL 3874584, at *12. If DVG *had* taken this opportunity, Screenya would have then had *twenty-one days* to answer DVG's amended counterclaims. *See* FED. R. CIV. P. 12(a)(1)(B) ("A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim."); *accord Commodores Ent. Corp. v. McClary*, 2015 WL 470591, at *4 (M.D. Feb. 4, 2015) (Dalton, J.) ("If McClary does refile [an amended counterclaim], then the Plaintiff's answer is due within twenty-one days from the date of the amended filing.").

Our August 20, 2024, Order thus inadvertently created a kind of Schrödinger's schedule: Although DVG's amended counterclaims were due by September 3, 2024, Screenya's own responsive pleading was *also* due on September 3, 2024—but only so long as DVG chose not to amend. Obviously, both deadlines couldn't *both* be true at the same time. To make matters worse, Screenya didn't learn that DVG wouldn't amend its counterclaims until *September 3, 2024*—the same day Screenya's own responsive pleading would have been due—when DVG's attorneys told us in open court that they didn't intend to amend. *See* Sept. 3, 2024, Hr'g Tr. [ECF No. 243-1] at 6 ("[The Court:]

5

First, to DVG's counsel, does DVG intend to revive its false advertising claim by filing an amended counterclaim? [DVG's Counsel:] We'll make a final call right after this, but I don't believe so."). By the letter of our August 20, 2024, Order and Rule 12(a)(4)(A), Screenya's Counterclaims were indeed due on September 3, 2024, but we won't penalize Screenya for failing to anticipate that DVG wouldn't amend its counterclaims.

At the end of the day, Screenya's Counterclaims were filed a mere three days late, and that delay is easily explained by the inadvertent ambiguity of our August 20, 2024, Order. *See Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293, 297 (11th Cir. 2009) ("However, when an act must be done within a specified time, the district court may extend the time for good cause 'if the party failed to act because of excusable neglect.'" (quoting FED. R. CIV. P. 6(b)(1)(B))). We won't go along with DVG's rather draconian suggestion that we strike Screenya's Counterclaims because of an excusable three-day delay.

*Second*, DVG's argument that Screenya shouldn't be allowed to assert its own counterclaims because it and ZAGG "are one and the same," Motion at 15, is premature. A large portion of DVG's Motion is dedicated to its theory that "Screenya is a shell company created by [ZAGG] in 2022 to mask illegal and fraudulent activities," *id.* at 9; *see also id.* at 15–16 ("Screenya is merely a fictitious name that [ZAGG] uses to circumvent Amazon's policies, fraudulently manipulate Amazon's pricing algorithms without detection by Amazon (or the general public), and to dispose of damaged and defective merchandise."), and it directs us to some evidence it obtained during discovery to corroborate this argument, *see id.* at 9–14. This sounds like a great argument for summary judgment— but we cannot rely on extrinsic evidence to strike (or dismiss) a claim at this phase of the litigation. *Cf.* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). DVG wants us to pierce the corporate veil, over the Counter-Defendants'

6

objections, and find that Screenya is "fraudulent[,]" a "nonentity," and a "mere device or sham to accomplish some ulterior purpose[.]" Motion at 15–16 (quoting *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005)). That sounds like a hotly disputed question of fact—and we don't resolve questions of fact on a motion to strike (or to dismiss). *See Powell v. Carey Int'l, Inc.*, 2006 WL 3008070, at *1 (S.D. Fla. Oct. 19, 2006) (Seitz, J.) ("[A] disputed question of fact cannot be decided on a motion to strike . . . courts generally are not willing to determine disputed and substantial questions of law [in a motion to strike]." (citing *Augustus*, 306 F.2d at 868)); *Clark v. S. Broward Hosp. Dist.*, 2013 WL 12177167, at *1 (S.D. Fla. Oct. 10, 2013) (Dimitrouleas, J.) ("[D]isputed questions of fact cannot be decided on a motion to strike.").

DVG also says that Screenya's Counterclaims "are an improper end-run around the Court's scheduling Order" because ZAGG—acting through its "alter ego" Screenya—is using the Counterclaims as an "untimely attempt to amend [ZAGG's] complaint[.]" Motion at 16–17. This argument again presupposes that Screenya is a fraudulent nonentity—which is a factual issue we won't be resolving at this stage of the proceedings.[2] In any event, it was DVG—not ZAGG—that brought Screenya into this case by advancing these counterclaims. *See generally* DVG's Counterclaims [ECF No. 39]. It would seem terribly unfair to allow DVG to sue Screenya as a separate entity, on the one hand, while prohibiting Screenya from defending itself by asserting its own compulsory counterclaims against DVG on the other. If we were to strike Screenya's counterclaims, after all, those counterclaims would be gone forever. *See Campbell v. High Tech Rail and Fence, LLC*, 2019 WL 13207596, at *6 (N.D.

---

[2] The strong presumption under Florida law is that these different corporations (ZAGG and Screenya) are two separate entities, even if they share the same ownership and management. *Cf. Ferro v. ECI Telecom, Inc.*, 314 So. 3d 711, 713 (Fla. 3d DCA 2021) ("Equally well-established is the principle that affiliates, even parent corporations and their wholly owned subsidiaries, constitute separate and distinct legal entities."); *see also United States v. Cmty. Primary Care of Ga., LLC*, 2023 WL 2563224, at *5 (N.D. Ga. May 17, 2023) (Brown, J.) ("[I]t is well established that common officers, agents, and facilities do not justify piercing the corporate veil.").

Ga. Oct. 16, 2019) (Batten, J.) ("If the plaintiff has a claim arising from the same transaction as the one involved in the defendant's counterclaim—a claim that would constitute a compulsory counterclaim under Rule 13(a)—the plaintiff must assert it in the reply or risk being barred from bringing a later action on it. In this context, a counterclaim in the plaintiff's reply to the defendant's counterclaim seems entirely appropriate." (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1188 (3d ed. 2011))).[3]

We therefore **DENY** DVG's request to strike Screenya's Counterclaims [ECF No. 216].

## II.     Motion to Dismiss

DVG also moved to dismiss both of Screenya's Counterclaims for failure to state a claim under FED. R. CIV. P. 12(b)(6). *See* Motion at 17–18. As to Count I (the false-advertising claim), DVG says (1) that Screenya failed to "state with particularity the circumstances constituting fraud," as required by FED. R. CIV. P. 9(b) *and* (2) that Screenya's "convoluted" allegations are insufficient to state a claim. *Id.* at 18–19. With respect to Count II (the FDUTPA claim), DVG contends that the claim fails because it relies on the same insufficient facts Screenya advanced in Count I. *See id.* at 23 ("Where, as here, a FDUTPA claim is based on the same underlying activity as a Lanham Act claim, it rises or falls on the success of the Lanham Act claim." (citing *Natural Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008))); *see also* Response at 16 (admitting that Counts I and II "rise together" "[b]ecause the elements and proof required for Screenya's Lanham Act counterclaim and its FDUTPA counterclaim are identical"). Finally, in the event we don't grant its

---

[3] Although "a counterclaim to a counterclaim is not expressly recognized by the Federal Rules," the general consensus is that "counterclaims may be asserted in reply to counterclaims." *Wiggins v. FDIC*, 2017 WL 4517309, at *4 (N.D. Ala. Oct. 10, 2017) (first quoting *Baker v. Borg Warner Morse Tec, Inc.*, 2012 WL 195011, at *1 (S.D.W.V. Jan. 23, 2012); and then citing 3 MOORE'S FEDERAL PRACTICE § 13.44 (3d ed. 2013))); *but see Healthe, Inc. v. High Energy Ozone*, 2021 WL 2939924, at *2 (M.D. Fla. June 17, 2021) (Dalton, J.) ("The Court agrees with those who have found counterclaims in reply to be impermissible under the Federal Rules and likely to result in confusion (or chaos) down the road.").

motion to dismiss, DVG asks us "to reopen discovery for the purposes of allowing DVG to explore Screenya's new claims." Motion at 24.

### A. The Pleading Standard

The parties agree that the elements of a false-advertising claim under the Lanaham Act are: "(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) the plaintiff has been, or likely will be, injured as a result of the false or misleading statement." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018). But they disagree on whether Rule 9(b)'s additional requirement to "state with particularity the circumstances constituting fraud or mistake" applies to false-advertising claims under the Lanham Act. FED. R. CIV. P. 9(b). If Rule 9(b) does apply, Screenya must also allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (cleaned up).

The Eleventh Circuit has not yet weighed in on this issue. *See Epson Am., Inc. v. Safe Space Scan Tech. LLC*, 2024 WL 4555880, at *3 (S.D. Fla. Sept. 13, 2024) (Reinhart, Mag. J.) ("I recognize that the Eleventh Circuit has not determined whether Rule 9(b) applies to Lanham Act claims based on fraud."), *report and recommendation adopted*, 2024 WL 4554104 (S.D. Fla. Oct. 23, 2024) (Rosenberg, J.); *Warriors & Fam. Assistance Ctr. LLC v. Trajector Inc.*, 2024 WL 4627134, at *2 (N.D. Fla. Sept. 24, 2024) (Winsor, J.) ("There seems to be no binding precedent on whether Rule 9(b) necessarily applies to all Lanham Act false advertising claims or all FDUTPA claims."). Although "the weight of authority [in the Eleventh Circuit] holds that a Lanham Act claim for false advertising . . . need not be pleaded with specificity," *Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1227 (M.D. Fla. May

10, 2017) (Scriven, J.), our colleagues in this District are split on whether to apply Rule 9(b) to Lanham Act claims, *compare Epson Am.*, 2024 WL 4555880, at *3 ("The Federal Rules of Civil Procedure apply to *all* civil actions and proceedings in the United States district courts, except as stated in Rule 81. Rule 81 makes no exception for the Lanham Act, nor does the text of Rule 9(b). Rule 9(b) applies to allegations of 'fraud or mistake.' Where the text unambiguously resolves the question, the Court should look no further. Accordingly, the Lanham Act claims are not exempt from Rule 9(b)'s heightened pleading standard." (cleaned up)), *with USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 2016 WL 4254257, at *2 (S.D. Fla. Feb. 16, 2016) (Bloom, J.) ("[C]ourts in this Circuit seemingly apply Rule 8 when addressing motions to dismiss directed at claims brought under the Lanham Act. Absent instruction from this Court's governing Circuit or, at a minimum, persuasive guidance from its sister districts, the Court declines to expand Rule 9(b) in the manner requested." (cleaned up)), *and Blue Water Innovations, LLC v. Fettig*, 2019 WL 1904589, at *5 (S.D. Fla. Mar. 8, 2019) (Scola, J.) ("[A] claim for false advertising [under Florida law] is subject to Rule 9(b)'s heightened pleading standard, while a claim under the Lanham Act is not.").

Fortunately, we "need not decide [which pleading standard applies] here because Plaintiff satisfies the requirements of Rule 9(b)." *de Cortes v. Brickell Inv. Realty, LLC*, 546 F. Supp. 3d 1332, 1340 (S.D. Fla. 2021) (Altonaga, C.J.). *First*, Screenya has identified the precise misrepresentation it's complaining about by alleging that DVG "offers [ZAGG Products] for sale on Amazon.com in 'new' condition," even though it's "wholly unaware of the origin and/or authenticity of the ZAGG Products it sells." Screenya's Counterclaims ¶¶ 17, 20; *see also id.* ¶ 34 ("Despite not knowing the origin of the ZAGG Products it sells, with full knowledge that its source of ZAGG Products is a liquidator, and despite receiving ZAGG Products in large pallets mixed with various other cell phone accessories, DVG advertises its ZAGG Products to Amazon consumers as products in 'new' condition."). Screenya even provides a specific example of that misrepresentation by appending an image of an

offending listing on Amazon. *See id.* ¶ 16. *Second*, Screenya alleges that DVG made these misrepresentations "on various online commerce sites, including, but limited to, Amazon.com, using seller names, including, but not limited to, 'Mac N' Cheese.'" *Id.* ¶ 15. *Third*, Screenya explains that DVG's actions confuse and mislead consumers into buying items that aren't "new, warranted, genuine ZAGG Products." *Id.* ¶ 42; *see also id.* ¶ 44 (listing customer complaints). *Fourth*, Screenya has shown that, through its alleged misrepresentations, DVG has earned "ill-gotten profits" to the detriment of Screenya. *Id.* ¶ 54. Since Screenya's allegations sufficiently alert DVG "to the precise misconduct with which they are charged," *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001), Count I satisfies Rule 9(b)'s heightened pleading standard.

**B.     The Claim's Merits**

Having assured ourselves that Screenya's allegations are sufficient *even* under Rule 9(b), we next turn to whether Count I states a viable false-advertising claim under the Lanham Act. DVG says that Screenya fails to plead four of the five elements of a false-advertising claim.[4] Specifically, DVG contends that (1) Screenya cannot identify "a false or misleading advertisement" because "new" products can be purchased from "inventory from liquidation sources," Motion at 19; (2) Screenya failed to allege that DVG deceived consumers or that (even if it did) the deception was material, *see id.* at 22 ("The Counterclaims also include no non-conclusory allegations concerning the second and third elements of the test for false advertising, namely 'consumer deception' and 'materiality' of the purportedly false representation."); and (3) Screenya failed to show that it—as opposed to ZAGG—"has been separately injured," *id.* at 23. We reject each of these arguments.

*First*, Screenya *did* allege that DVG made false or misleading statements. A statement is "false or misleading" if it is "literally false as a factual matter" or if it is "literally true or ambiguous but [ ]

---

[4] DVG concedes that Screenya has properly alleged that "the misrepresented service affects interstate commerce[.]" *Hi-Tech Pharms.*, 910 F.3d at 1196; *see also* Motion at 18–23.

11

implicitly convey[s] a false impression, [is] misleading in context, or [is] likely to deceive customers." *Hi-Tech Pharms.*, 910 F.3d at 1196 (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004)). According to Screenya, DVG advertises that the ZAGG Products it sells are "'new,' yet DVG is wholly unaware of the original and/or authenticity of the ZAGG Products it sells." Screenya Counterclaims ¶ 20. The problem, Screenya says, is that DVG purchases the products from a liquidation supplier who "does not know the origin of the palleted ZAGG Products it has sold to DVG." *Id.* ¶ 27. Screenya thus reasonably infers that DVG *cannot* truthfully claim the ZAGG Products it was selling were "new" because it has *no idea* "where the ZAGG Products sold to DVG come from, where they have been, how they have been stored, or whether they are even authentic ZAGG Products." *Id.* ¶ 33.

DVG resists this common-sense reading of Screenya's counterclaims, insisting that "a person can buy a 'new' product, even if it is part of a close-out sale or even if the chain of custody is not known." Motion at 20. But, as Screenya notes, "the assertion that a product in 'new' condition is the same as a product from an unknown source of liquidation defies common sense[.]" Response at 19; *see also, e.g.*, *Swarovski Optik N. Am. Ltd. v. iBuy Grp. LLC*, 2024 WL 1142296, at *3 (D.N.J. Mar. 15, 2024) ("Here, Plaintiff has sufficiently pled that Defendants' statements are literally false, and that consumers have been and are likely to be deceived. According to Plaintiff, Defendants' products bearing the Swarovski Mark are non-genuine products of unknown foreign origin. Defendants sell these products on Amazon.com and advertise the products' condition as 'New.'" (cleaned up)). In any event, Screenya has *also* pled that some of the ZAGG Products DVG sells *aren't* new. *See, e.g.*, Screenya Counterclaims ¶ 44 (listing customer reviews complaining about "used unit[s]" and "counterfeit" products). At this motion-to-dismiss phase of the case, we "cannot properly say that no reasonable person could be misled by Defendants' statements." *Swarovski*, 2024 WL 1142296, at *3. Screenya has thus adequately pled that DVG made false or misleading statements.

*Second*, Screenya has pled that DVG's statements deceived consumers—and that the deception was material. "[N]ot all deceptions affect consumer decisions," so "the plaintiff must establish that 'the defendant's deception is likely to influence the purchasing decision.'" *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)). "A plaintiff may establish this materiality requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of the product.'" *Ibid.* (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)). Screenya alleges that DVG's false statements (*viz.*, that it sells "new" ZAGG Products) deceived customers who "are not receiving the products they believe they are purchasing." Screenya Counterclaims ¶ 43. And, as proof that the deception was material, Screenya has attached at least five reviews in which customers—expecting to receive new, genuine ZAGG Products—*complained* that the products they received from DVG were either used or counterfeit. *See id.* ¶ 44.[5] This is sufficient to show that DVG "misrepresented an inherent quality or characteristic of the product" it sold to

---

[5] DVG relies on Magistrate Judge Reinhart's decision in *Epson America* to argue that "a handful of vague consumer reviews" is insufficient to establish materiality. Motion at 22; *see also* Reply at 11 (same). But, unlike the scenario Judge Reinhart confronted in *Epson America*, our case involves five customer reviews, all of which specifically complain that they were misled by DVG's Amazon listing. *Cf. Epson Am.*, 2024 WL 4555880, at *4 ("Epson includes one screenshot of one Amazon.com review on the LTV-2500. The review says, 'something is off about the brightness.' But Epson fails to sufficiently point to facts whether the alleged deception had a material effect on that consumer's purchasing decision." (cleaned up)). In any event, other federal courts have said that customer reviews and complaints *are* sufficient—at least at the motion-to-dismiss stage—to show materiality. *See, e.g.*, *SouthState Bank, N.A. v. Qoins Techs., Inc.*, 720 F. Supp. 3d 1324, 1341–42 (N.D. Ga. 2024) (Cohen, J.) ("Moreover, SouthState alleged that customers filed complaints against SouthState based on Qoins's representations. Drawing all plausible inferences in favor of SouthState, the Court infers that the alleged representations affected consumer decisions about SouthState. Thus, SouthState has sufficiently pleaded that Qoins's deception was material."); *Express Gold Cash, Inc. v. Beyond 79, LLC*, 2020 WL 9848431, at *4 (W.D.N.Y. Dec. 15, 2020) ("Plaintiff identifies specific customer reviews that evidence confusion regarding the prices paid by Defendant . . . These specific factual allegations are sufficient to render plausible Plaintiff's claim that consumers were confused or misled by Defendant's advertising regarding the payout amounts offered.").

consumers. *Johnson & Johnson Vision Care*, 299 F.3d at 1250 (quoting *Nat'l Basketball Ass'n*, 105 F.3d at 855).

*Third*, contra DVG's assertions, Screenya explains *how* it "has been separately injured" by DVG's false advertising. Motion at 23. Screenya says that it sells "a variety of screen protectors, power management solutions, mobile keyboards, phone cases, and personal audio products" under the ZAGG brand. Screenya Counterclaims ¶ 5. Screenya claims that it has lost sales because potential customers—duped by DVG's allegedly false promises of "new" ZAGG Products—are buying ZAGG Products from DVG, and not from Screenya. *See id.* ¶ 56 ("Plaintiff has been damaged by the resale of fewer 'new' ZAGG Products due to Defendant's actions as described above."). And it's well-settled that lost sales are a sufficient form of injury under the Lanham Act. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137 (2014) ("Static Control's alleged injuries—lost sales and damage to its business reputation—are injuries to precisely the sorts of commercial interests the [Lanham] Act protects."); *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1169 (11th Cir. 2007) ("[T]he typical false advertising claim [arises where the] plaintiff alleges that it lost sales and/or market share as a result of the defendant's false or misleading representations about some characteristic of the defendant's product or services."). That's enough at the motion-to-dismiss stage—though we warn Screenya that it'll have to show proof of these lost sales to survive summary judgment. *Cf. TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1267 (11th Cir. 2023) ("This case started with allegations in TocMail's complaint of millions of lost customers and billions in lost sales. Perhaps this was enough to survive a motion to dismiss. At summary judgment, though, a plaintiff needs *evidence*[.]").[6]

---

[6] Since Screenya has stated a viable false-advertising claim, its FDUTPA claim also survives. *See Natural Answers*, 529 F.3d at 1333 ("Finally, as Natural Answers concedes, its claim for a violation of the Florida Deceptive and Unfair Trade Practices Act rises or falls on the success of its . . . false advertising claim[ ].").

14

\*   \*   \*

We'll therefore allow Screenya to assert its counterclaims under the Lanham Act and FDUTPA. At the same time, we agree with DVG that "there is good cause to reopen discovery for the purpose[ ] of allowing DVG to explore Screenya's new claims." Motion at 24. This is not a decision we make lightly. Discovery should not be reopened absent a showing of good cause. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) ("Under Federal Rule of Civil Procedure 16(b), the district court must issue a scheduling order that limits the time to complete discovery. The schedule set forth by the court may only be modified for good cause and with the court's consent. . . . To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence."). Since we're allowing Screenya to advance new counterclaims long after the deadline to amend pleadings has passed, we think it only fair to grant DVG limited discovery *on these new claims*.

Our decision to reopen discovery, however, comes with two very important caveats. *One*, the parties will only "be permitted to pursue discovery related to Screenya's Counterclaims." Motion at 25. All discovery must be "relevant to [Screenya's Counterclaims]," and neither we nor the Magistrate Judge will accept any attempt to expand the scope of discovery beyond this limitation. *See* FED. R. CIV. P. 26(b)(1). *Two*, the new discovery period will be very short—only *two months*—to minimize prejudice to the parties and to advance this case to summary judgment and trial. *See* Response at 24 ("Should the fact discovery then result in the extension of additional deadlines, including the May 2025 trial date, both parties would be even further prejudiced by a delay of resolution in a case ongoing since January 2023[.]"). Although Screenya has advanced new claims, those claims involve all the same facts ZAGG has long included in its original claims—and they implicate all the same decision-makers. *See* Motion at 9 ("Put bluntly, Screenya is a shell company created by [ZAGG] in 2022 to mask illegal

15

and fraudulent activities."). Because both parties have had ample time to conduct discovery on most of these issues, we will not expand discovery beyond this two-month extension.

## CONCLUSION

Accordingly, after careful review, we hereby **ORDER and ADJUDGE** as follows:

1. DVG's Motion to Strike or Dismiss Screenya's Counterclaims [ECF No. 228] is **DENIED**.

2. We'll allow two months of discovery on Screenya's Counterclaims. And we'll issue an amended scheduling order separately.

**DONE AND ORDERED** in the Southern District of Florida on December 19, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record