**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

Case No.: 1:23-cv-20304-ALTMAN/REID

ZAGG INC,

        Plaintiff,

v.

MENACHEM MENDEL ICHILEVICI;
TX TRADING INC.;
DVG TRADE LLC; and

        Defendants.

_____/

DVG TRADE LLC,

        Counterclaim-Plaintiff,

v.

ZAGG INC., SCREENYA, LLC,
MERRIL LONGMORE, and
BRENDAN BUCKNER,

        Counterclaim-Defendants.

_____/

## _Redacted_ ORDER ON MOTION FOR SPOLIATION OF EVIDENCE

**THIS CAUSE** came before the Court pursuant to Plaintiff ZAGG Inc.'s ("ZAGG" or

"Plaintiff") Motion to for Spoliation of Evidence (the "Motion"). [ECF Nos. 240 and 283].[1] This

---

[1] The Motion was re-filed under seal to include information that was redacted from the initial filing at ECF No. 240.

The undersigned is filing this Order under seal because Defendant designated some materials it submitted in its briefing as highly confidential information. Further, the undersigned relies in part on the testimony provided at the December 2, 2024, sealed Evidentiary Hearing to make its ruling. The vast majority of this Order does not contain confidential information. Therefore, in order to

matter was referred pursuant to 28 U.S.C. § 636 and this District's Magistrate Judge Rules by the Honorable Roy K. Altman. [ECF No. 277 at 2]. The Court has considered the Motion, Defendant DVG Trade LLC's ("DVG" or "Defendant") Opposition [ECF No. 251], Plaintiff's Reply [ECF No. 258], the parties' proposed Findings of Fact and Conclusions of Law [ECF Nos. 259, 260], and the parties' arguments at the sealed Evidentiary Hearing [ECF No. 262]. For the reasons discussed below, it is **ORDERED AND ADJUDGED** that the Motion is **GRANTED in part and DENIED in part**.

## I.      INTRODUCTION

The Court first briefly summarizes the background facts and relevant procedural history of this case before detailing its specific findings of fact and conclusions of law.

This is a trademark infringement action brought by ZAGG, a manufacturer and seller of screen protectors, power management solutions, and other products, against TX Trading, Inc., Menachem Mendel Ichilevici,[2] and DVG (collectively, the "Defendants"). [ECF. 26 at 4]. ZAGG accused Defendants of selling used ZAGG products on Amazon while falsely advertising that the products were "new." [ECF No. 276 at 2]. DVG asserted five counterclaims against ZAGG and three Counter-Defendants. [*Id.*]. One of DVG's counterclaims has since been dismissed. [*See* Order on Counter-Defendants' Motion to Dismiss, ECF No. 207]. Thereafter, Screenya asserted two counterclaims against DVG, which have survived dismissal. [*See* Counterclaim at ECF No. 216; Order on Motion to Strike or Dismiss Screenya's Counterclaim at ECF No. 276].

---

ensure that non-confidential portions of this order are available to the public, Defendant will, <u>within five business days</u> of this Order's filing, submit to the Court's inbox its proposed redactions for the Court's review and public filing.

[2] According to ZAGG, "Defendant Ichilevici acts by and through Defendants DVG Trade and TX Trading to own and operate the 'Mac N' Cheese' Amazon Seller Account through which Defendants advertise and sell ZAGG Products." [ECF No. 26 ¶ 15].

Fact and Expert Discovery was—and continues to be—a focal point in this litigation. The parties have attended several discovery hearings and briefed a number of issues related primarily to DVG's non-production of documents relevant to ZAGG's claims. Specifically, ZAGG seeks physical invoices that accompany the delivery of ZAGG products (from DVG's Supplier, ███████████████ to DVG's third-party logistics company, ████████. [ECF No. 240-1, Ichilevici Dep. Tr. 149:24–150: 25; ECF No. 240-2, █████ Dep. Tr. 28:23–29:20]. These invoices, according to ZAGG, "go straight to the heart of [its] claims" because they "could have provided evidence that the ZAGG products were not in 'new' condition—like many of the recovered invoices produced by DVG's Supplier show." [ECF No. 240 at 8]. DVG contests the relevance of these invoices, arguing that the condition stated on an invoice "is not used by DVG for purposes of reselling the product; rather, each item is independently sorted and graded by DVG in accordance with Amazon's condition guidelines." [ECF No. 251 at 7].

DVG has produced a sum of three invoices in this case—one from May and two from November of 2022 representing about 1,650 products of "tens of thousands of ZAGG products" that DVG purchased from its Supplier. [ECF Nos. 240 at 2; 283 at 3 (quoting ECF No. 240-1, Ichilevici Dep. Tr. 149:7–16)]. According to ZAGG, since this case was filed in January of 2023, DVG has failed to preserve a single invoice of ZAGG products it received from its Supplier and sold to its customers. [ECF No. 240 at 3]. And after months-long litigation with DVG's Supplier, ZAGG received a total of eleven additional invoices.[3] [*Id.* at 4]. To date, neither DVG nor its Supplier have provided invoices representing sales from 2021 to May of 2022; between May 21, 2022 and November 2, 2022; between November 9, 2022 and January 15, 2023; between May 1,

---

[3] While Plaintiff's Motion states that DVG's Supplier produced twelve invoices, only eleven are attached as exhibits. [*See* ECF No. 240-3].

2023 and July 25, 2023; and all of 2024. [*Id.* at 8].

This dispute culminated into the instant Motion for Spoliation, in which ZAGG seeks that the Court issue a "rebuttable adverse inference that the condition of the ZAGG products reflected in the missing invoices was unfavorable to DVG (*i.e.*, that the products were <u>not</u> in "new" condition)." [ECF No. 240 at 9].

## II.    LEGAL STANDARD

At its core, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Gaff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009).

When it comes to physical evidence, "the court's inherent authority [is] 'guided by the fundamental principles of spoliation.'" *Hyundai Motor Am. Corp. v. N. Am. Auto. Services, Inc.*, 20-82102-CIV, 2021 WL 3111191, at *6 (S.D. Fla. July 22, 2021). Accordingly, courts look not to Fed. R. Civ. P. 37(e), but to Eleventh Circuit common law. *Tripp v. Walmart, Inc.*, 8:21-CV-510-WFJ-SPF, 2023 WL 399764, at *3 (M.D. Fla. Jan. 25, 2023). *See Living Color Enter., Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, n. 2 (S.D. Fla. Mar. 22, 2016) (Matthewman, M.J.) ("Newly amended Rule 37(e) specifically relates to ESI and not to non-ESI such as tangible documents or evidence.").

To establish spoliation of physical evidence, the movant must prove "three foundational elements: (1) that the missing evidence existed at one time; (2) that the alleged spoliator had a duty to preserve the evidence; and (3) that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Tripp*, 2023 WL 399764, at *3 (quoting *Hyundai Motor Am. Corp*, 2021 WL 3111191, at *6). If these elements are established, the movant must then prove that the absence of the evidence is predicated on "bad faith." *Walter v. Carnival Corp.*, No. 09-20962-CIV,

4

2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (citing *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)).

As the Eleventh Circuit noted in *Tesoriero v. Carnival Corp.*, "bad faith in the context of spoliation generally means destruction for the purpose of hiding adverse evidence. This consideration is key in evaluating bad faith because the [spoliating] party's reason for destroying evidence is what justifies sanctions (or the lack thereof)." 965 F.3d 1170, 1184 (11th Cir. 2020) (cleaned up). Indeed, "[m]ere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *Id.* (citation omitted).

### III.   DISCUSSION

### A.   THE PARTIES' ARGUMENTS

According to ZAGG, DVG's failure to retain invoices of ZAGG products sold to DVG fits squarely within the foundational elements of spoliation of physical evidence. *See Tripp*, 2023 WL 399764, at *3. It argues that the invoices existed at one point, as evidenced by DVG and its Supplier's representative ██████████ in admissions in their respective depositions. [ECF No. 240-1, Ichilevici Dep. Tr. 149:24–150: 25; ECF No. 240-2, ██████ Dep. Tr. 28:23–29:20]. Moreover, ZAGG believes DVG was obligated to preserve invoices as far back as September of 2020 when ZAGG's brand enforcement team sent its first cease and desist letter and in another letter two years later. [ECF No. 258 at 7 (citing ECF No. 258-1, Cooney Decl. ¶ 5). It argues that, at a minimum, DVG and Mr. Ichilevici had an "active and clear obligation to preserve all evidence relating to ZAGG product the moment it became aware of this action, originally filed in January of 2023" [ECF No. 240 at 7]. These invoices, ZAGG believes, prove its *prima facie* case. [*Id.* at 7].

As to bad faith, ZAGG again relies on Mr. Ichilevici's deposition testimony, in which he

5

stated that he "receive[s] invoices every time [he] makes a purchase" from its Supplier and sometimes keeps them, sometimes does not. [ECF No. 240-1, Ichilevici Dep. Tr. 150:2–17]. Mr. Ichilevici failed to retain the invoices, according to ZAGG, knowing DVG had a duty to preserve them. [ECF Nos. 240 at 7–8; 258 at 7]. ZAGG argues that DVG's act of spoliation cannot be credibly explained. [*Id.* at 8]. And without these invoices, ZAGG is substantially prejudiced because "it is more difficult for ZAGG to prove the condition or the quantity of ZAGG products that were sold to DVG by its Supplier (and later sold by DVG on Amazon.com)." [*Id*. at 8–9].

DVG urges the Court to decline ZAGG's version of events. DVG first notes that ZAGG's request for documents is untimely, as ZAGG sought discovery for "all" invoices months after being put on notice that only a few representative invoices from 2022 would be produced. [ECF No. 251 at 5]. On the merits of the Motion, DVG argues that all the invoices available to it have been produced and DVG apparently had no duty to preserve invoices from 2021 and 2022. [*Id*. at 6].

DVG next downplays the relevance of the invoices, stating that not all of the available invoices contain descriptions of the products being sold, with some describing the products as "unmanifested lots" and others providing no indication of the product's condition. [*Id.* at 7]. Specifically, it relies on Mr. ███████ deposition testimony in which he stated that the Supplier's failure to list a product condition on the invoice is *not* indicative of a product's condition, but instead means the product is sold "as is" and "could be a mix of stuff." ███████ Dep. Tr. 63:1–110]. Further, any product condition listed in the invoice, DVG argues, "is not used by DVG for purposes of reselling the product; rather, each item is independently sorted and graded by DVG in accordance with Amazon's condition guidelines." [ECF No. 251 at 7, citing ECF No. 251-2, Ichilevici Decl. ¶ 8]. DVG believes that speculation about what missing evidence might show is

not proper for spoliation. *See ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1309 (11th Cir. 2018) (affirming denial of spoliation motion where movant "provide[d] no reason to believe that the [missing evidence] would have actually shown these things such as conflicting testimony, inconsistent statements, or observations from other witnesses" and that "[f]ailure to preserve such speculative evidence does not raise the specter of bad faith in the same way that a failure to preserve evidence of a specific, crucial event in a case might."). And because DVG sells products as "New" and "Used – like new" on Amazon.com, the condition on the products as listed on the invoices—or not—is irrelevant. [ECF No. 251 at 7–8]. Thus, it concludes that ZAGG is not prejudiced by the missing documents. [*Id*. at 8].

On bad faith, DVG argues that ZAGG fails to show "purposeful intent to alter or lose the items of evidence in question." *Foulke v. Weller*, No. 22-13942, 2024 WL 2761778, at *12 (11th Cir. May 29, 2024). It cites to Mr. Ichilevici's deposition testimony in which he stated that he "did not know offhand the status of every single invoice and 'would have to check.'" [ECF No. 251 at 9 (quoting ECF No. 240-1, Ichilevici Dep. Tr. 150:12–14)]. Mr. Ichilevici also noted that the data from the physical invoices is inputted into DVG's computer system, making the physical invoices immaterial. [ECF No. 251 at 9 (citing ECF No. 251-2, Ichilevici Decl. ¶ 4)].

### B. **FINDINGS OF FACT**

1. Plaintiff ZAGG designs, manufactures, and sells a variety of screen protectors, mobile phone cases, mobile keyboards, power management solutions, and personal audio products. ZAGG markets and sells its products in the United States under the ZAGG, Invisible Shield, IFROGZ, mophie, Gear4, and BRAVEN brands (the "ZAGG Brands," and the products sold under the ZAGG Brands are collectively referred to as the "ZAGG Products.").

2. Defendant DVG is in the business of reselling a of myriad products online, including ZAGG Products, on Amazon.com as Amazon Seller "Mac N' Cheese," Amazon Seller ID A2HKJDSYFUXLQL.

3. DVG is not an authorized reseller of ZAGG Products.

4. DVG's corporate representative has testified that DVG lists all ZAGG Products as "new" when they are sold on Amazon.com.

5. Much of ZAGG's claims hinge on the fact that DVG listing the products as "new" is false advertising and a deceptive business practice, as the products are not "new" as the word is commonly understood. Moreover, Amazon's guidelines require a "new" product to be covered by a manufacturer's warranty. In either scenario, ZAGG claims this cannot be the case for an unauthorized sale via liquidation, and ZAGG alleges that many of the ZAGG Products sold were actually used, damaged, or otherwise not in proper "new" condition when received by customers.

6. As of July 6, 2023, DVG had sold at least 52,133 ZAGG Products via Amazon.com.

7. DVG failed to produce updated financial data to ZAGG, despite ZAGG's repeated requests and this Court's instructions to do so.

8. DVG has been purchasing ZAGG Products from a single source, its supplier ("DVG Supplier"), for at least three or four years.

9. DVG Supplier is a wholesale liquidator specializing in consumer electronics and mobile phone accessories, selling these items in commingled, "unmanifested" pallets.

10. DVG Supplier's corporate representative, ███████, has testified that DVG Supplier receives all of its ZAGG Products from ███████████████████

11. None of the ZAGG Products are obtained directly from ZAGG or any authorized ZAGG retailer.

12. DVG Supplier is not an authorized reseller of ZAGG Products.

13. Representatives for both DVG and DVG Supplier testified that each time that DVG Supplier delivers an order to DVG, DVG Supplier accompanies that order with a paper invoice.

14. While some of the invoices are more detailed than others, each of these paper invoices delineates the names of the items purchased, the quantity of each item, and a description of the products purchased.

15. Though DVG receives a paper invoice with each order, DVG has only preserved and produced three invoices in this case—one from May of 2022 and two from November of 2022.

16. Corporate representative for DVG (and co-Defendant), Mr. Ichilevici, testified that he does not always save the invoices from DVG Supplier.

17. Within two days of learning from Mr. Ichilevici at his November 29, 2023 deposition that he fails to keep the invoices he receives from DVG Supplier, counsel for ZAGG sent an email to counsel for DVG alerting DVG of ZAGG's concerns about DVG's spoliation of these invoices.

18. When questioned by this Court at numerous discovery hearings, counsel for DVG stated that DVG had produced all of the invoices that DVG could locate.

19. DVG has only produced three invoices during this litigation, all of which are from the period before the case was filed:

    a. Invoice # 1935 dated May 20, 2022;

    b. Invoice # 2135 dated November 3, 2022; and

    c. Invoice # 2147 dated November 8, 2022.

20. DVG has neither preserved nor produced a single invoice reflecting sales since this lawsuit was filed or since Mr. Ichilevici's deposition took place.

21. After learning of DVG Supplier's identity for the first time on July 6, 2023, ZAGG promptly served a subpoena (both for documents and deposition testimony) on July 7, 2023, and two subsequent subpoenas on September 13, 2023 and October 26, 2023.

22. DVG Supplier did not respond to the subpoenas or attend any of the three scheduled depositions.

23. At a hearing before this Court on November 14, 2023, attended by DVG Supplier's counsel, the Court ordered DVG Supplier to produce documents related to its sourcing of ZAGG Products and sale of ZAGG Products to DVG and sit for deposition, but allowed the compliance to occur after the November 29, 2023 close of discovery given extenuating circumstances affecting DVG Supplier. [*See* ECF Nos. 134, 138].

24. DVG Supplier produced four invoices on May 30, 2024, all of which were for the period *after* the subpoenas were issued:

     a. Invoice # 3120 dated August 4, 2023;

     b. Invoice # 4201 dated September 21, 2023;

     c. Invoice # 4309 dated October 6, 2023; and

     d. Invoice # 4341 dated November 1, 2023.

25. ZAGG continued to request additional invoices and documents from DVG Supplier, and for DVG Supplier to provide a date for its deposition.

26. Because DVG Supplier failed to comply for several months, ZAGG filed a motion to compel on June 10, 2024, nearly a year after the first subpoena was issued. *See* ECF No. 186.

27. This Court granted the motion to compel on June 27, 2024. *See* ECF No. 195.

10

28. DVG Supplier thereafter produced additional requested documentation, including invoices, at 9:54 p.m. on August 14, 2024, the evening before the scheduled deposition:

   a. Invoice # 2235 dated January 16, 2023;

   b. Invoice # 2249 dated February 2, 2023;

   c. Invoice # 2298 dated March 14, 2023;

   d. Invoice # 2321 dated April 5, 2023;

   e. Invoice # 2351 dated April 30, 2023;

   f. Invoice # 3113 dated July 26, 2023; and

   g. Invoice #4402 dated December 29, 2023.

29. In total, ZAGG has received fourteen invoices through discovery, three from DVG, eleven from DVG Supplier.

30. The invoices span from May 2022 through December 2023, but have large gaps, including a lack of invoices for the periods between:

   a. May and November 2022;

   b. November 2022 and January 2023; and

   c. April and July 2023.

31. Zero invoices have been produced for 2024.

32. Data reflecting ███████ sales of █████ units of ZAGG Products between January of 2022 and November of 2023 have been produced.

33. According to ZAGG, the invoices produced for that time period do not account for the total ZAGG Products sold by DVG.

### C. **CONCLUSIONS OF LAW**

As an initial matter, DVG's opposition opens with a procedural objection regarding the

timeliness of the discovery dispute, citing Local Rule 26.1(g)(2)(A)(i). Specifically, it argues that ZAGG's request for invoices is untimely because ZAGG challenged DVG's responses to its document request with an objection solely "in the context that it sought identification of DVG's 'source' of the ZAGG Products it sells." [ECF No. 251 at 4]. In response, ZAGG provides a detailed summary of the parties' conferral efforts and disputes brought before the undersigned related to the missing invoices, noting that ZAGG specifically requested that DVG produce invoices evidencing DVG's purchase of ZAGG products as of January 1, 2020. [ECF No. 258 at 3 (citing ECF No. 258-1, Cooney Decl. ¶ 6)].

The Court fails to see how this argument merits discussion at this stage of the litigation. At bottom, ZAGG's April 6, 2023 discovery request sought "[a]ny and all documents and communications regarding Defendant's acquisition, source, or purchase of ZAGG Products, including, but not limited to, any documents and communications between Defendant and Defendant's supplier(s) of ZAGG Products concerning ZAGG Products" and "[a]ny and all invoices, purchase orders, and similar documents evidencing Defendant's purchase of ZAGG Products from January 1, 2020 to the present." [*See* ECF No. 258-1 at 28, ZAGG's First Set of Requests for Production, Request Nos. 25 and 26]. The documents were not produced, and the undersigned has held several hearings concerning the non-production of the invoices at issue and reserved its ruling on ZAGG's request to bring the instant Motion. ZAGG thereafter requested a briefing on the Motion for Spoliation of Evidence. The Court therefore proceeds to the merits of the Motion.

### a. <u>The Invoices Existed at One Time</u>

The first foundational element required to establish spoliation of physical evidence is undisputed. *See Tripp*, 2023 WL 399764, at *3. The invoices from 2021, 2022, and 2023 existed

at one time, as DVG and DVG's Supplier both testified that a paper invoice accompanies each delivery from DVG's Supplier to DVG. [ECF No. 240-1, Ichilevici Dep. Tr. 149:24–150: 25; ECF No. 240-2, ███████ Dep. Tr. 28:23–29:20].

### b.  DVG had a Duty to Preserve Invoices as of September 2022

DVG's brief merely scratches the surface on the second element: its duty to preserve evidence. Unsurprisingly, DVG does *not* dispute its duty to preserve the subject invoices as of January of 2023, the date this action was filed—or as of December of 2023, the date ZAGG's counsel raised the issue in an e-mail. [*See* ECF No. 258-1 at 51 ("I'd like to discuss DVG's potential spoliation of relevant information" and "[b]efore taking this spoliation issue to the Court, I would like to discuss whether there are any ways to alleviate the obvious prejudice to my client caused by the destruction of these highly relevant invoices.")].  Instead, DVG argues that no duty attached as to invoices from 2021 and 2022. [ECF No. 251 at 6].

The Court begins by stating the obvious. DVG had a duty to preserve invoices as of the date the action was filed in January of 2023, and particularly so as of the December 2023 e-mail discussing potential spoliation of evidence. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Easterwood v. Carnival Corp.*, No. 19-cv-22932, 2020 WL 6781742, at *5 (S.D. Fla. Nov. 18, 2020) (citations omitted). In other words, "[a] party has the requisite notice when it can reasonably anticipate impending litigation—that is, litigation that has 'more than a possibility' of occurring—to which the evidence would be relevant." *Id.* (citations omitted). At a minimum, the obligation to preserve key documents relevant to Plaintiff's claims attached as of January 26, 2023, the date the action was filed.

This conclusion also applies to DVG's duty to preserve invoices as of the September 14, 2022 cease-and-desist letter.[4] The letter, addressed to Mr. Ichilevici and his counsel, describes potential claims for tortious interference, trademark infringement, false advertising and Unfair Competition and Deceptive Business Practices. [ECF No. 258-1 at 12–17]. The letter demands that DVG "discontinue its infringing and deceptive conduct" and reserved the right to "an accounting of damages in the event that litigation becomes necessary." [*Id.*]. *See Oil Equip. Co. Inc. v. Modern Welding Co. Inc.*, 661 Fed. App'x 646, 657 (11th Cir. 2016) (party acted in bad faith by destroying evidence where there had been a "demand letter [sent] through counsel raising the possibility of litigation about two weeks earlier"); *Optowave Co., Ltd. v. Nikitin*, No. 6:05-cv-1083, 2006 WL 3231422, at *10 (M.D. Fla. Nov. 7, 2006) (party retaining counsel and sending an "explicit demand letter to [defendant]" was sufficient to establish defendant's duty to preserve, as a demand letter "make[s] it abundantly clear that 'legal action' [is] anticipated.").The letter put Mr. Ichilevici, and through him, DVG, on notice of potential litigation regarding his sale of purportedly liquidated ZAGG products. *Calixto*, 2009 WL 3823390, at *16. As such, DVG's obligation to preserve evidence attached as of September 14, 2022.

---

[4] Defendant argued at the December 2, 2024, Evidentiary Hearing that Plaintiff's proposed time frame for retention of documents, dating back to September 14, 2022, was raised for the first time in its reply, and therefore the Court should not consider it. [Evidentiary Hr'g. Tr., 63:21–64:2]. Generally, Courts do not consider arguments raised for the first time in a reply. *See United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief."). This, however, is not a "new" argument. Plaintiff's Motion specifically refers to Defendant's duty to preserve documents dating back to at least 2021. [ECF No. 240 at 4, 8]. Further, Plaintiff's request for an adverse inference refers to *all* missing invoices, which date back to at least 2021. [*Id.* at 9]. In any case, Defendant failed to seek leave to file a sur-reply to address the 2022 letter and its counsel stated at the hearing that this issue is "something [it] could address, if [it] had to." [Evidentiary Hr'g. Tr., 92:24–25]. It failed to do so, so the Court proceeds with the merits of the argument.

14

Less obvious, however, is DVG's duty to preserve invoices as of September 29, 2020, the date ZAGG's Brand Integrity team sent the Mac N' Cheese storefront an electronic letter via the Amazon platform. [ECF No. 258-1 at 3]. The short letter states that the company is selling a ZAGG product as "new" in violation of Amazon's guidelines and states that "[f]ailure to promptly respond to this communication will result in our reporting listing violations to Amazon, which may result in cancellation of listings, suspension from use of Amazon tools and reports, and/or removal of selling privileges." [ECF No. 258-1 at 10]. At this early stage, litigation did not seem probable. "A general concern over litigation does not trigger a duty to preserve evidence," because there is "no duty to preserve relevant documents or evidence until a potential claim [is] identified or future litigation [is] probable." *Easterwood*, 2020 WL 6781742, at *5 (citation omitted). *See also Calixto*, 2009 WL 3823390, at *16 ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or *potential litigation . . .* [A litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action.") (citation omitted; emphasis in original); *Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1324) ("A party has an obligation to retain relevant documents, including emails, where litigation is reasonably anticipated."). ZAGG waited almost two years to serve a cease-and-desist letter and an additional four months after the letter to file this action. Therefore, DVG's duty to preserve invoices began on September 14, 2022.

### c.  The Invoices were Crucial to ZAGG's Prima Facie Case

ZAGG believes the invoices at issue were crucial to its prima facie case. *See Tripp*, 2023 WL 399764, at *3. ZAGG's claims in this action "center around the allegation that DVG offers for sale 'new' ZAGG products on the internet, including, but not limited to Amazon.com, but fulfills the orders to consumers with used, closed-out, or liquidated products." [ECF No. 240 at 7]

15

(citing ECF No. 26, ¶¶ 42−45). ZAGG concludes that the limited invoices it received contain descriptions of the product being sold. [*Id*].

In order to meet the requirement that the spoliated evidence was "crucial" to the movant's ability to prove its prima facie case or defense, it is not enough that the evidence would have been relevant to a claim or defense. *Schultze v. 2K Clevelander, LLC*, No. 17-CV-22684, 2018 WL 4859071, at *5 (S.D. Fla. Oct. 4, 2018) (citing *United States Equal Employment Opportunity Comm'n v. GMRI, Inc.*, No. 15-20561-CIV, 2017 WL 5068372, at *21 (S.D. Fla. Nov. 1, 2017)). In general, only "outcome-determinative evidence" constitutes "crucial" evidence. *Long v. Celebrity Cruises, Inc.*, No. 12-22807-CIV, 2013 WL 12092088, at *5 (S.D. Fla. July 31, 2013). Here, the invoices are certainly outcome determinative to Plaintiff's prima facie case. As has been repeatedly affirmed by this Court, these invoices (all of which include product details) provide key insights on the ZAGG products at issue, which, in turn, relates back to an age-old issue in this case: the chain of custody of ZAGG products. [*See* ECF Nos. 164, 195, 210].

The invoices are crucial to Plaintiff's claims. In order to prove its claims under the Lanham Act and the Florida Deceptive and Unfair Trade Practices Act, ZAGG relies on these invoices to establish that DVG misrepresented that the ZAGG products it sold were in "new" condition, meaning that either the product had been used, was damaged, or did not come with the manufacturer's warranty because it was sold outside of the approved supply chain. The chain of custody is also crucial to ZAGG's defenses. As the undersigned noted at the November 14, 2023 Discovery Hearing, DVG's counterclaims now make it so that "it is important to know where the product comes from that DVG is selling and whether there are any actual warranties that attach to that product that would make that product new, as Amazon calls it, and a number of other things." [ECF No. 138 at 30:22–31:4]. "The defendant[s] themselves have broadened what is relevant in

16

this case." [*Id.* at 31:4–5].

DVG attempts to minimize the importance of these invoices to ZAGG's claims and defenses. First, it argues that certain invoices do not include the product conditions. [ECF No. 251 at 7]. Second, it believes that any condition listed on the invoice has no bearing on DVG's classification of the product as "new" or otherwise. [*Id.*]. Third, to the extent that the missing invoices could have provided information on product condition, DVG asserts that this is mere speculation, and, in any case, DVG sells products as both "New[,]" "Used[,]" and "Used – like new[,]" which make any condition listed on the invoices irrelevant. [*Id*. at 7–8].

These arguments are unavailing. First, while not all produced invoices include product condition details, all include product descriptions of specific ZAGG product models. Many include references to "unmanifested lots" which would indicate that the products are indeed liquidated. And although not all of the missing invoices may have included details regarding product condition, evidence in the form of produced invoices has been presented, showing that *all* invoices would have included certain product details.

Second, it is unclear who evaluates ZAGG products before they are sent out. At the sealed Evidentiary Hearing, Mr. Ichilevici testified that he purchases ZAGG phone cases and screen protectors, among other products from other brands, from ███████████████ [Evidentiary Hr'g. Tr., 16:18–25]. Among these purchases are "new" ZAGG products. [*Id.* at 17:20–22]. The products are then delivered to Mr. Ichilevici's third-party logistics company, ██████████ which he described as the company that handles the "physical labor" including receiving, grading, packaging, and sending products out. [*Id.* at 18:7–20]. This is inconsistent with his declaration where he stated that "each item is independently sorted and graded by DVG in accordance with Amazon's condition guidelines." [ECF No. 251-2 at 2].

Third, DVG now suggests that any potential product condition listed on the missing invoices is mere speculation. Quite the opposite. As explained, the invoices include product details, and in at least three cases product conditions. ZAGG is not speculating, but instead relying on the limited production of invoices to establish their relevance.

In short, the relevance of these invoices is not so attenuated as DVG makes them out to be. Had DVG retained the documents, it could have continued to challenge their relevancy to the Court and the jury at trial, short of an adverse inference. ZAGG has established that "the evidence was crucial to the movant being able to prove its prima facie case or defense." *Tripp*, 2023 WL 399764, at *3 (quoting *Hyundai Motor Am. Corp*, 2021 WL 3111191, at *6).

### d.  **The Absence of Invoices is Predicated on Bad Faith**

In the context of spoliation, bad faith generally means "destruction for the purpose of hiding adverse evidence." *Tesoriero*, 965 F.3d at 1184. "Where direct evidence of bad faith is unavailable, bad faith may be established through circumstantial evidence." *Managed Care Sols., Inc.*, 736 F. Supp. 2d at 1331. Then Magistrate Judge Rosenbaum in *Calixto v. Watson Bowman Acme Corp.*, 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009) summarized the standard as one requiring that: (1) at some point, evidence existed "that could fairly be supposed to have been material to the proof or defense of a claim at issue"; (2) the nonmovant "took an affirmative act causing the evidence to be lost"; (3) the nonmovant "did so while it knew or should have known of its duty to preserve the evidence"; and (4) the "affirmative act" that caused the loss "cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." Courts have applied these factors to both spoliation of physical evidence and ESI. *See Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1292 (S.D. Fla. 2020) (applying these factors to spoliation of physical evidence); *Matter of In re Skanska USA Civil Se. Inc.*, 340 F.R.D.

180, 188 (N.D. Fla. 2021) (applying these factors to spoliation of electronic documents); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1331 (S.D. Fla. 2010) (same).

DVG provides no credible evidence that it did not destroy the documents in bad faith. As the Court has stated repeatedly, the invoices existed, as demonstrated by both the Supplier and DVG's representatives' deposition testimony. [ECF No. 240-1, Ichilevici Dep. Tr. 149:24–150: 25; ECF No. 240-2, ███████ Dep. Tr. 28:23–29:20]. A spreadsheet containing sales data created by Mr. Ichilevici reflects ███████████ in sales for ██████ units of ZAGG products from January 2022 to November 2023. [ECF No. 259 at 6].[5] The invoices, according to ZAGG, do not account for the total ZAGG products sold by DVG. [*Id.*].

At the sealed Evidentiary Hearing, Mr. Ichilevici described the process through which invoices are received. Invoices arrive with the truck driver, along with the purchased products from Supplier ████████████████████ at which point Mr. Ichilevivi "either take[s] [the invoices] or not" "depending [on] if [he's] there or not." [*Id.* at 21:5–7]. Incredibly, he confirmed that, if he received a shipment from the Supplier today, he would "most probably not" preserve the invoice despite the existence of the instant action. [*Id.* 55:6–8].

As part of his testimony, Mr. Ichilevici also reviewed some of the invoices produced in this action. For example, as to one invoice dated November 3, 2022, he noted that the product description "technically [] says new, but like I said, I do my own checking regardless. . .." [*Id.* at 24:1518]. Again, this is inconsistent with his declaration in which he stated DVG independently sorts and grades each product. [ECF No. 251-2 at 2]. As to the invoice dated July 26, 2023, he

---

[5] This date range was provided in Plaintiff's Proposed Findings of Fact. [ECF No. 259 at 6]. However, Plaintiff's Motion notes that Mr. Ichilevici could not confirm whether the data he produced was representative of all ZAGG products sold by DVG or the specific time period the spreadsheet covered. [ECF No. 240 at 3].

denied destroying the document, but admitted he did not ask ████████ to preserve the document. [*Id.* at 35:11–22]. This is despite the fact that the invoice was created months after the lawsuit was initiated. As to the invoice dated December 29, 2023, Mr. Ichilevici indicated that he "would have to see" whether he preserved the physical invoice. [*Id.* at 36:18–37:12].

While DVG attempts to excuse its bad faith by diminishing the relevance and usefulness of these invoices, it avoids the question of bad faith in its entirety, declining to address why it continued to destroy invoices despite multiple warnings of imminent, and eventually current, litigation. DVG had an obligation at least as of September 14, 2022, to retain invoices and to produce them once they were requested in discovery. It failed to do so. "We have already explained that we would be 'highly skeptical' of a claim that evidence was unintentionally destroyed 'pursuant to a routine policy' after a request that the evidence be preserved." *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1313 (11th Cir. 2023) (quoting *Tesoriero*, 965 F.3d at 1186). So, too, is the Court here. DVG cannot credibility explain its destruction of evidence as not involving bad faith. *See Penick*, 481 F. Supp. 3d at 1292. ZAGG established bad faith on behalf of DVG.

### e.   **An Adverse Inference is Warranted**

There are three different types of adverse inferences:

> (1) a jury may be instructed that certain facts are deemed admitted and must be accepted as true; (2) the Court may impose a mandatory, albeit rebuttable, presumption; or (3) the jury must presume that the lost evidence is relevant and favorable to the innocent party, but also consider the spoliating party's rebuttal evidence, and then decides whether to draw an adverse inference.

*Schultze v. 2K Clevelander, LLC*, No. 17-CV-22684, 2018 WL 4859071, at *7 (S.D. Fla. Oct. 4, 2018).

Plaintiff appears to request that the second category of adverse inference be imposed,

requesting that the Court issue a "rebuttable adverse inference that the condition of the ZAGG products reflected in the missing invoices was unfavorable to DVG (*i.e.*, that the products were not in "new" condition)." [ECF No. 240 at 9]. The undersigned agrees. The jury is to infer that the missing invoices concerning ZAGG products—received by DVG as of September 14, 2022—are unfavorable to DVG, but DVG can rebut this presumption through its presentation of evidence. *See Penick*, 481 F. Supp. 3d at 1296 (finding same); *Schultze*, 2018 WL 4859071, at *7–8 (finding that a sanction of a rebuttable presumption "that the lost evidence was relevant and favorable to Plaintiff, and disadvantageous to Defendant" is the "least harsh sanction to cure the prejudice.").

### IV.    CONCLUSION

Accordingly, ZAGG's Motion to for Spoliation of Evidence [ECF No. 240] is **GRANTED in part and DENIED in part**. ZAGG's proposed adverse inference is granted as to invoices received by DVG as of September 14, 2022.

DVG shall, **WITHIN FIVE (5) BUSINESS DAYS** of this Order's filing, submit to the Court's inbox its proposed redactions of this Order for the Court's review and public filing. [*See* n. 1].

**DONE AND ORDERED** in Chambers at Miami, Florida this 28th day of February 2025.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Court Judge Roy K. Altman**; and

**All Counsel of Record**

21