# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI-DADE DIVISION

ZAGG INC,                                    **Case No.: 1:23-cv-20304-ALTMAN/REID**

       Plaintiff,

v.

MENACHEM MENDEL ICHILEVICI;
TX TRADING INC.;
DVG TRADE LLC; and

       Defendants.

_____/

DVG TRADE LLC,

       Counterclaim-Plaintiff,

v.

ZAGG INC., SCREENYA, LLC,
MERRIL LONGMORE, and
BRENDAN BUCKNER,

       Counterclaim-Defendants.

_____/

**DVG TRADE LLC'S RULE 72(a) OBJECTIONS TO THE COURT'S FEBRUARY 28, 2025 DISCOVERY ORDER [288] AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................1

II.  FACTUAL BACKGROUND .................................................................................3

III.  LEGAL STANDARDS .........................................................................................4

    A.  Rule 72 ......................................................................................................4

    B.  Motion for Spoliation................................................................................4

IV.  THE COURT ERRONEOUSLY GRANTED ZAGG'S SPOLIATION MOTION...........5

    A.  There Has Been No Showing that Any Evidence Is Missing .................................5

        1.  The Order Clearly Erred by Allowing Zagg to Rewind the Start Date in Reply .....................................................6

        2.  The Order Never Made a Finding that Any Invoices Were Actually Missing............................................7

        3.  The Order Is Impermissibly Vague Because the Adverse Inference Is Directed to "Missing Invoices" that Are Not Missing...........................8

    B.  The Order's Finding that Any Invoices Are "Crucial" Is Premised on Erroneous Factual Findings and Is Contrary to Law .................................9

        1.  Zagg Itself Has Admitted that It Does Not Need the Invoices to Make Its Case......................................10

        2.  The Invoices Do Not Contain Any Condition Information ....................11

        3.  The Court Misunderstood the Evidence ...................................13

        4.  Zagg's "Liquidation" Arguments Are Highly Disputed, and Do Not Demonstrate that the Invoices are "Crucial" ...................13

    C.  Zagg Has Not Made Any Showing of Bad Faith..................................15

    D.  Zagg Never Pursued the Complained-of Invoices in Discovery ...........................17

    E.  The Order Inappropriately Makes Factual Findings that Were Not the Subject of the Motion, and Touch on Dispositive Issues in the Case...................18

V.  CONCLUSION....................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alston v. City of Darien,*
   750 F. App'x 825 (11th Cir. 2018) .......................................................................12

*Amargos v. Verified Nutrition, LLC,*
   666 F. Supp. 3d 1249 (S.D. Fla. 2022) .................................................................7

*Matter of Application of O'Keeffe,*
   184 F. Supp. 3d 1362 (S.D. Fla.),
   *aff'd sub nom. In re O'Keeffe*, 660 F. App'x 871 (11th Cir. 2016) ...........................4

*Askan v. Faro Techs. Inc.,*
   No. 6:21-cv-1366-PGB-DCI, 2021 WL 9598215 (M.D. Fla. Nov. 12, 2021) ........................5

*Batista v. S. Fla. Woman's Health Assocs., Inc.,*
   844 F. App'x 146 (11th Cir. 2021) .......................................................................19

*Bennett v. Jetro Rest. Depot, LLC,*
   No. 0:23-CV-60954-KMM, 2024 WL 4471996 (S.D. Fla. Mar. 8, 2024) .............................17

*Centennial Bank v. Servisfirst Bank Inc.,*
   No. 8:16-CV-88, 2022 WL 10204911 (M.D. Fla. Sept. 6, 2022).................................9

*Chicken Kitchen USA, LLC v. Tyson Foods, Inc.,*
   No. 17-21503-CIV, 2017 WL 6760811 (S.D. Fla. Oct. 4, 2017) ...............................4

*Christopher v. Cutter Lab'ys,*
   53 F.3d 1184 (11th Cir. 1995) .............................................................................9

*Chudasama v. Mazda Motor Corp.,*
   123 F.3d 1353 (11th Cir. 1997) .......................................................................2, 19

*In Matter of Complaint of Bos. Boat III, L.L.C.,*
   310 F.R.D. 510 (S.D. Fla. 2015).......................................................................17

*Corp. Fin., Inc. v. Principal Life Ins. Co.,*
   No. 05-20595-CIV, 2006 WL 3365606 (S.D. Fla. Nov. 20, 2006) .........................17

*Derhem v. Bay House Miami Condo. Ass'n,*
   No. 20-CV-22318, 2024 WL 4370880 (S.D. Fla. Oct. 1, 2024)...............................18

*In re Egidi,*
   571 F.3d 1156 (11th Cir. 2009) .......................................................................6

*Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*,
  615 F.3d 1305 (11th Cir. 2010) ..........................................................................12

*F.T.C. v. Nationwide Connections, Inc.*,
  No. 06-80180, 2007 WL 4482607 (S.D. Fla. Dec. 19, 2007).....................................6

*Floeter v. City of Orlando*,
  No. 605CV-400-ORL-22KRS, 2007 WL 486633 (M.D. Fla. Feb. 9, 2007)...........................9

*Foulke v. Weller*,
  No. 22-13942, 2024 WL 2761778 (11th Cir. May 29, 2024)..................................16

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
  341 F.3d 1292 (11th Cir. 2003) ..........................................................................11

*Hall v. Ins. Corp. of Brit. Columbia*,
  No. 6:20-CV-1992-CEM-LHP, 2023 WL 11920411 (M.D. Fla. Nov. 14, 2023) ....................5

*Henkle v. Cumberland Farms, Inc.*,
  No. 16-14248-CV, 2017 WL 5635400 (S.D. Fla. June 15, 2017) ...........................15

*Kendrick v. Techfive LLC*,
  No. 3:22CV04833-MCR-ZCB, 2024 WL 1348378 (N.D. Fla. Mar. 29, 2024) ....................17

*Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*,
  No. 14-CV-62216, 2016 WL 1105297 (S.D. Fla. Mar. 22, 2016)............................7

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*,
  736 F. Supp. 2d 1317 (S.D. Fla. 2010) ..........................................................9, 12

*Mendez v. Wal-Mart Stores E., LP*,
  67 F.4th 1354 (11th Cir. 2023) ..........................................................................9

*Miles v. United States*,
  No. 3:14CV360-MCR/CJK, 2016 WL 3556845 (N.D. Fla. Mar. 30, 2016) ...........................5

*Miller v. Michaels Stores, Inc.*,
  98 F.4th 211 (5th Cir. 2024) ..........................................................................18

*ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*,
  881 F.3d 1293 (11th Cir. 2018) ..........................................................................13

*Mohammed v. Delta Airlines, Inc.*,
  No. 08 Civ. 1405(FB)(JMA), 2011 WL 5554269 (E.D.N.Y. Nov. 15, 2011).....................18

*Murphy v. Airway Air Charter Inc.*,
  No. 23-CV-23654, 2024 WL 4362776 (S.D. Fla. Oct. 1, 2024).................................4, 5, 7, 9

*Padgett v. Snyder*,
No. 2:17-CV-14099, 2018 WL 3536316 (S.D. Fla. July 23, 2018)...........................................4

*PayRange, Inc. v. KioSoft Techs., LLC*,
No. 20-24342-CIV, 2023 WL 5628616 (S.D. Fla. Aug. 30, 2023) ...........................................4

*Pinares v. United Techs. Corp.*,
No. 10-80883-CIV, 2015 WL 13856881 (S.D. Fla. Oct. 29, 2015) ...........................................4

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,
No. 09-61166-CIV, 2011 WL 1456029 (S.D. Fla. Apr. 5, 2011)...............................5, 8, 9, 10

*QBE Ins. Corp. v. Jorda Enters., Inc.*,
280 F.R.D. 694 (S.D. Fla. 2012) ...........................................................................................11

*Ramos v. U.S. Dep't of Agric.*,
No. 22-CV-20312, 2022 WL 17367335 (S.D. Fla. Dec. 2, 2022) ...........................................4

*Rives v. Lahood*,
605 F. App'x 815 (11th Cir. 2015) .........................................................................................12

*Rodriguez v. Pan Am. Health Org.*,
612 F. Supp. 3d 1372 (S.D. Fla. 2020) ...................................................................................4

*Rutledge v. NCL (Bahamas), Ltd.*,
464 F. App'x 825 (11th Cir. 2012) .........................................................................................12

*Sheets v. Presseller*,
No. 2:24-CV-495-JLB-KCD, 2025 WL 437580 (M.D. Fla. Jan. 6, 2025)............................15

*Siegmund v. Xuelian*,
No. 12-62539-CIV, 2016 WL 1359595 (S.D. Fla. Apr. 6, 2016),
*aff'd*, 746 F. App'x 889 (11th Cir. 2018)...............................................................................4

*Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*,
75 F.4th 1290 (11th Cir. 2023) ......................................................................................16, 17

*Tesoriero v. Carnival Corp.*,
965 F.3d 1170 (11th Cir. 2020) ................................................................................ *passim*

*Thomas v. Walmart, Inc.*,
No. 23-12890, 2024 WL 1574661 (11th Cir. Apr. 11, 2024)............................................5, 16

*U.S. v. McCray*,
345 F. App'x 498 (11th Cir. 2009) .........................................................................................11

*Weston v. Buc-ee's Fla., LLC*,
No. 6:24-CV-567-PGB-LHP, 2025 WL 507456 (M.D. Fla. Feb. 14, 2025)..........................17

*Wilson v. Wal-Mart Stores, Inc.*,
No. 5:07CV394-OC-10GRJ, 2008 WL 4642596 (M.D. Fla. Oct. 17, 2008) ...........................9

**Rules**

Fed. R. Civ. P. 37(e) ......................................................................................................7

Fed. R. Civ. P. Rule 72(a)............................................................................................1, 4

Local Rule 4.1(a) ..............................................................................................................4

Local Rule 26.1...........................................................................................................17, 18

**Other Authorities**

Resp. to Questions for the Record following the July 16, 2019,
Hr'g of the Subcomm. on Antitrust, Com., and Admin. Law,
Comm. on the Judiciary,
Entitled "Online Platforms and Market Power, Part 2: Innovation and
Entrepreneurship," Oct. 11, 2019, https://www.congress.gov/116/
meeting/house/109793/documents/HHRG-116-JU05-20190716-SD038.pdf. ........................14

Defendant DVG Trade LLC ("DVG") respectfully submits these Objections to the Order of United States Magistrate Judge Lisette M. Reid dated February 28, 2025, and entered March 14, 2025 (ECF No. 288, "the Order"), granting Plaintiff Zagg, Inc. ("Zagg") an adverse inference in response to Zagg's Motion to for Spoliation of Evidence (ECF No. 240, "Mot."). At least because there was no spoliation, and for the further reasons discussed below, the Order "is clearly erroneous or is contrary to law" pursuant to Rule 72(a) and should be reversed.

## I.    <u>INTRODUCTION</u>

Zagg sought spoliation sanctions in connection with documents that it already had in its possession; rather than sanction Zagg for filing a frivolous motion, the Court erroneously held that an adverse inference should be entered against DVG because Zagg was somehow prejudiced by not having the exact same documents that were attached to its Motion.

Significantly, the Court found that the prerequisite for a spoliation motion—that the documents actually be ***missing***—was "undisputed." (Order at 12.) This finding was ***clearly erroneous***. Indeed, DVG stressed again and again in both its Opposition and at the Hearing that it would be a clear error of law to enter spoliation sanctions when Zagg was in possession of all of the subject documents. (ECF Nos. 249 & 251, "Opp'n," at 4–5; ECF Nos. 249-1 & 251-1, "Supplier Decl.," ¶¶ 3–4; ECF No. 249-2, "DVG Decl.," ¶¶ 5–6; Evidentiary Hr'g Tr. 89:2–6.) While the Order acknowledges in passing that evidence must be missing before there can be a finding of spoliation (*see* Order at 4), the Order nonetheless entirely ignores DVG's argument and evidence on this point, and makes ***no factual finding*** as to whether there actually are any missing invoices (there are none).

To add further confusion, as best understood, the adverse inference granted by the Order is that "***the missing invoices*** concerning ZAGG products—received by DVG as of September 14, 2022—are unfavorable to DVG[.]" (Order at 21 (emphasis added).) How is the jury supposed to know what "invoices" they are supposed to deem "unfavorable"?  Do "the missing invoices" that are subject to the inference include the 13 invoices ***attached to Zagg's Motion*** (and are objectively not "unfavorable" to DVG)? If so, why? If not, what "invoices" are they? Both DVG and its Supplier testified that there are no "missing invoices" in 2023 or 2024 (and Zagg's Motion never sought any earlier ones).

Zagg also failed to prove that the invoices are "crucial" to any issue in this action. Indeed, Zagg originally chose not to pursue these invoices while fact discovery was open, and even filed

its motion for summary judgment in August 2023 without claiming the need for any additional discovery. (ECF No. 78.) Even if Zagg's belated pursuit of the invoices were not untimely, the invoices are inconsequential to any issue in this action and have **no bearing** on the adverse inference that Zagg requested and the Order granted. The "missing" invoices attached to Zagg's Motion show that they **do not** "evidenc[e] . . . the condition of [the ZAGG] products [purchased by DVG], from its supplier." (Mot. at 1.) Even the Order acknowledges that the invoices do not all include "product condition details," (Order at 17), yet erroneously finds that "*all* invoices would have included certain product details" (*id.*). In all events, the Order never explains why the invoices were, not just (purportedly) relevant, but "outcome-determinative" as a finding of spoliation requires.

Next, the Order's finding of "bad faith"—a necessary element for spoliation sanctions—is clearly erroneous. DVG has nothing to gain from the omission of the invoices from this case. DVG explained that it does not rely on any "condition" noted on the invoices; its vendor inspects and independently grades the goods before they are listed on Amazon. "Spoliation sanctions—and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020).

Finally, in addition to the ultimate adverse inference granted by the Order, many discrete "Findings of Fact"—including facts that were never the subject of Zagg's Motion—were erroneously entered and must be vacated.

Accordingly, DVG respectfully requests that the Court sustain these Objections and (i) reverse the Order's grant of an "adverse inference" at least because: (a) the Order erred in finding that any invoices were missing; (b) the invoices are not "crucial" to any issue in this case; (c) DVG did lose any invoices in bad faith; (d) Zagg's pursuit of invoices was procedurally improper; and (e) the "adverse inference" imposed by the Order is unworkable for a jury; and (ii) vacate the Order, including all factual findings contained within the Order.[1]

---

[1] The parties summary judgment motions are currently due on April 11, 2025. (*See* ECF No. 293.) For the avoidance of doubt, DVG's intent to proceed with filing its summary judgment motion should in no way be interpreted as a waiver of these objections; *See, e.g.*, *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Failure to consider and rule on significant pretrial motions before issuing dispositive orders can be an abuse of discretion").

## II. <u>FACTUAL BACKGROUND</u>

As the Court is aware, this case relates to the resale of Zagg-brand cell phone cases, screen protectors, and chargers ("Zagg Products") on the Amazon.com marketplace ("Amazon"). Zagg's Complaint alleges that DVG's resale of Zagg Products through the "Mac N' Cheese" storefront on Amazon somehow infringes Zagg's trademark rights. Zagg later claimed that that DVG was engaged in "false advertising" because the (brand new and unopened) Zagg Products sold by DVG cannot be advertised as "new." (ECF No. 78 at 5–16.)  In reality, each of Zagg's theories fail— DVG's mere acquisition and resale of genuine Zagg Products is not actionable.  Rather, this case is simply one of many filed by Zagg to eliminate smaller sellers of Zagg Products.

An Amended Scheduling Order issued on April 3, 2023 setting, *inter alia,* deadlines for the amendments of pleadings by May 18, 2023, the close of all discovery of July 11, 2023 and pre-trial motions of August 2, 2023. (ECF No. 29.)

One of Zagg's document requests sought "all invoices, . . . evidencing Defendant's purchase of ZAGG Products from January 1, 2020 to the present," to which DVG objected on the bases that, *inter alia*, the invoices were not relevant and proportional to the issues in the case. (ECF No. 63-1 at 22–23, DVG's Resp. to RFP No. 26.) Zagg challenged this response, but solely in the context that Zagg sought an identification of DVG's "source" of the Zagg Products it sells. (ECF No. 63 at 2, ¶ 2.)  In the interest of compromise, DVG provided representative invoices sufficient to show its source of ZAGG-branded products. (*See* ECF No. 137, 7/6/23 Tr. 8:20–21; *see also* Ex. C at DVG689–691; ECF No. 157-3 at 6–7, DVG's Suppl. Resp. to RFP No. 26.) At the same time, in response to other discovery requests, DVG provided its sales information. (*See* ECF No. 137, 7/6/23 Tr. 13:16–17; Ex. D to Mot.) Zagg never sought to compel additional invoices from DVG (beyond the representative invoices provided), nor raised an issue with the sales data provided.

Fact discovery closed on July 11, 2023, except for certain depositions that were to be completed by the end of July. (*See* ECF No. 71; ECF No. 137, 7/6/2023 Hr'g Tr. 24:6–12.)

On August 2, 2023, Zagg moved for summary judgment on its "false advertising" theory of liability, and on all of DVG's counterclaims. (ECF No. 78.) Zagg did not claim any need for additional discovery. (*See id.*) However, the Court denied the motion without prejudice and administratively closed this case shortly after Zagg's filing, explaining that the "Court needs time to adjudicate 50 the pending Motion to Dismiss" DVG's Counterclaims. (ECF No. 83.)  Discovery

briefly reopened from October 20, 2023 through November 29, 2023 (ECF No. 118).

## III.   LEGAL STANDARDS

### A.   Rule 72

"Rule 72(a) requires a district court to modify or vacate a magistrate judge's order to the extent that the order 'is clearly erroneous or is contrary to law.'" *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1366 (S.D. Fla. 2016) (quoting Fed. R. Civ. P. 72(a)) (sustaining Rule 72(a) objections), *aff'd sub nom. In re O'Keeffe*, 660 F. App'x 871 (11th Cir. 2016); *see also, e.g.*, *Chicken Kitchen USA, LLC v. Tyson Foods, Inc.*, No. 17-21503-CIV, 2017 WL 6760811, at *2 (S.D. Fla. Oct. 4, 2017) (citing Magistrate Rule 4.1(a) of the Local Rules for the Southern District of Florida).

"An order is 'clearly erroneous' when 'the reviewing court, after assessing the evidence in its entirety, is left with the definite and firm conviction that a mistake has been committed.'" *Padgett v. Snyder*, No. 2:17-CV-14099, 2018 WL 3536316, at *2 (S.D. Fla. July 23, 2018) (sustaining Rule 72(a) objections); *see also, e.g.*, *Siegmund v. Xuelian*, No. 12-62539-CIV, 2016 WL 1359595, at *2 (S.D. Fla. Apr. 6, 2016), *aff'd*, 746 F. App'x 889 (11th Cir. 2018); *Pinares v. United Techs. Corp.*, No. 10-80883-CIV, 2015 WL 13856881, at *1 (S.D. Fla. Oct. 29, 2015).

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *PayRange, Inc. v. KioSoft Techs., LLC*, No. 20-24342-CIV, 2023 WL 5628616, at *2 (S.D. Fla. Aug. 30, 2023) (sustaining Rule 72(a) objections) (internal quotation omitted); *see also, e.g.*, *Rodriguez v. Pan Am. Health Org.*, 612 F. Supp. 3d 1372, 1375 (S.D. Fla. 2020). "[A]pplication of an improper legal standard . . . is never within a court's discretion." *Ramos v. U.S. Dep't of Agric.*, No. 22-CV-20312, 2022 WL 17367335, at *2 (S.D. Fla. Dec. 2, 2022) (sustaining Rule 72(a) objections) (internal quotation omitted).

### B.   Motion for Spoliation

To receive spoliation sanctions, the moving party bears the burden of proving "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Murphy v. Airway Air Charter Inc.*, No. 23-CV-23654, 2024 WL 4362776, at *6 (S.D. Fla. Oct. 1, 2024) (internal quotation omitted).

Once all three elements are met, "a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only where the absence of that evidence is predicated on bad faith,' such

as where a party purposely loses or destroys relevant evidence." *Id.* (quotations omitted). "Bad faith generally means destruction of evidence *for the purpose of hiding* adverse evidence. This standard is more than mere negligence, for mere negligence does not sustain an inference of consciousness of a weak case." *Thomas v. Walmart, Inc.*, No. 23-12890, 2024 WL 1574661, at *2 (11th Cir. Apr. 11, 2024) (cleaned up).

## IV.   THE COURT ERRONEOUSLY GRANTED ZAGG'S SPOLIATION MOTION

### A.    There Has Been No Showing that Any Evidence Is Missing

As noted above, Zagg's Motion for spoliation sanctions should have been denied at the outset because Zagg is not actually missing any invoices that Zagg belatedly claimed that DVG had an obligation to preserve. This action was filed in January 2023, and discovery closed in July 2023 (with a brief reopening in Mid-October and November 2023). Zagg has been provided all of the invoices issued by DVG's Supplier in 2023 (and there were no additional invoices issued in 2024 as of the time of the Hearing). (Supplier Decl. ¶ 3.) Zagg admits that it has these invoices, and *even attached them* to its Motion. (Mot. at 3 & Ex. C to Mot.) Thus, there are no "missing" invoices on which Zagg could reasonably base its Motion. *See Miles v. United States*, No. 3:14CV360-MCR/CJK, 2016 WL 3556845, at *3 (N.D. Fla. Mar. 30, 2016) (denying motion for spoliation where "counsel acknowledged that information concerning the history and condition of the aircraft could be obtained from other sources").

"Common sense dictates that evidence obtained elsewhere cannot be 'missing' and that an adverse inference instruction (intended to compensate a party for wrongly discarded evidence) is inappropriate when the evidence is in the plaintiff's possession and can be presented to the jury." *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *22 (S.D. Fla. Apr. 5, 2011) (denying motion for spoliation). Since missing evidence is a fundamental predicate of a finding of spoliation, the Order should be vacated for this reason alone. *See, e.g.*, *Tesoriero*, 965 F.3d at 1184 ("When deciding whether to impose sanctions, a number of factors are relevant: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, . . . ."); *Hall v. Ins. Corp. of Brit. Columbia*, No. 6:20-CV-1992-CEM-LHP, 2023 WL 11920411, at *11 (M.D. Fla. Nov. 14, 2023) ("[T]o . . . claim prejudice due to an absence of . . . materials [attache[d] to plaintiff's motion] quite simply defies logic."); *Askan v. Faro Techs. Inc.*, No. 6:21-cv-1366-PGB-DCI, 2021 WL 9598215, at *2 (M.D. Fla. Nov. 12, 2021) ("[T]here can be no request for spoliation without establishing that the

evidence is lost or unavailable.").

    1. *The Order Clearly Erred by Allowing Zagg to Rewind the Start Date in Reply*

  Zagg's Motion only alleged that spoliation occurred ***at the earliest*** since this action was initiated in January 2023. (*See* Mot. at 3 ("DVG not only failed to preserve the invoices when it was put on notice when this action was filed in January 2023, but worse, has failed to preserve invoices even after November 2023[.]"), *id.* at 5 ("Here, spoliation undoubtedly occurred as DVG has not preserved a single invoice since this lawsuit was filed in January of 2023."), *id.* at 6 ("DVG had an active and clear obligation to preserve all evidence relating to ZAGG product the moment it became aware of this action, originally filed in January 2023. . . . DVG has engaged in spoliation while it had a duty to preserve evidence, with that duty beginning at least in January 2023 when this action was filed[.]"). Zagg's Motion never made any reference to a duty to preserve invoices prior to 2023. Nonetheless, in its Reply, Zagg argued for the first time that DVG's duty to preserve invoices began even earlier, in 2020 or 2022 (ECF Nos. 257 & 258, "Reply," at 5–6); and the Order found that DVG had a duty to preserve evidence as of September 2022 based on evidence Zagg submitted for the first time in its Reply (Order at 14).[2]

  It was clear error for the Court to allow Zagg to make new arguments for the first time on reply. *See, e.g.*, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."); *F.T.C. v. Nationwide Connections, Inc.*, No. 06-80180, 2007 WL 4482607, at *2 (S.D. Fla. Dec. 19, 2007) ("[T]he Court does not allow litigants to introduce new arguments in reply briefs."). The Order acknowledged that it should not permit new arguments in a reply, but held that Zagg's argument was not new, and that "Plaintiff's Motion specifically refers to Defendant's duty to preserve documents dating back to at least 2021." (Order at 14 n.4 (citing Mot. at 4, 8).) The Order's finding is clearly erroneous; although Zagg argued on those pages that "ZAGG is missing invoices entirely from 2021," Zagg ***never*** argued that DVG had a duty to preserve those invoices (i.e., years before the start of this litigation). Indeed, Zagg submitted a new declaration with multiple exhibits in support of this new argument in its Reply brief. (*See* Reply & Exs. 1 & 2.) Blaming DVG for "fail[ing] to seek leave to file a sur-reply to address" this new evidence (Order

---

[2] The Court relied on a September 14, 2022 "cease and desist" letter.  The letter does not mention DVG and does not expressly threaten litigation. (Reply, Ex. 2.) Zagg never produced Exhibit 2 in discovery in this action.

at 14 n.4)—especially when the Court never instructed DVG to take that route—is a clear abuse of discretion. *See, e.g.*, *Amargos v. Verified Nutrition, LLC*, 666 F. Supp. 3d 1249, 1250 (S.D. Fla. 2022) (denying motion for leave to file sur-reply in favor of disregarding new argument in reply brief and noting that "[s]ur-replies will generally only be permitted in exceptional circumstances.").

Thus, while Zagg might have argued that it **wanted** invoices from 2021 and 2022, it never argued in it Motion that any such invoices support a finding of spoliation, since DVG was not under any "duty to preserve the evidence." *Murphy*, 2024 WL 4362776, at *6; *Living Color Enters., Inc. v. New Era Aquaculture, Ltd.*, No. 14-CV-62216, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016) ("Rule 37(e) does not apply . . . when information or evidence is lost before a duty to preserve attaches."). Zagg obtained all of the 2023 and 2024 invoices from DVG's Supplier (*see* Supplier Decl. ¶¶ 3–4) and DVG repeatedly explained that it could obtain any missing invoices from its supplier if it was required to (*see* Evidentiary Hr'g Tr. at 52:8–10 (████████████████ ████████████████████████████████████████████████), 54:9–10 ("██████████ ████████████████████████████████████████████).) The Order's refusal to allow DVG to cure the perceived "prejudice" after Zagg changed its argument was another abuse of discretion. *See, e.g.*, *Tesoriero*, 965 F.3d at 1184 ("whether any prejudice could be cured" is a factor to be considered on a spoliation motion).

In addition, DVG separately produced two invoices from September 2022 through December 2022—one dated November 3, 2022 and another dated November 8, 2022. (Mot., Ex. C.) These invoices account for nearly 4,000 units. There is no evidence to suggest that there were additional invoices from that time period. Thus, even if Zagg had timely argued that documents should have been preserved as of September 2022, the result is the same—there are no missing invoices.

### 2.   *The Order Never Made a Finding that Any Invoices Were Actually Missing*

As best understood, the Order may have *assumed* that invoices must be missing due to the Order's "Finding" that "[t]he invoices span from May 2022 through December 2023, but have large gaps, including a lack of invoices for the periods between: a. May and November 2022; b. November 2022 and January 2023; and c. April and July 2023." (Order at 11, ¶ 30.) But there was **no factual basis** for the Court to presume that invoices ever existed during these "gaps"— e.g., that invoices existed from May or June 2023. Indeed, the evidence that was presented showed

the exact opposite: namely, that Zagg had been provided all 2023 invoices (Supplier Decl. ¶ 3) and that DVG does not make purchases of Zagg Products every month (*see, e.g.*, Evidentiary Hr'g Tr. 44:15–17). Zagg certainly did not meet its burden to show that any invoices were missing; it admitted during the Evidentiary Hearing that they were purely speculating. (*See id.* at 96:5–8 ("█████████████████████████████████████████████████████████████████████████████████████").)

Likewise, the Order's "Finding" that "*[a]ccording to ZAGG*, the invoices produced for that time period do not account for the total ZAGG Products sold by DVG" is entirely irrelevant to whether spoliation sanctions are warranted. (Order at 11, ¶ 33.)  First, DVG's sales of Zagg Products began well before the time that the Order found that DVG had a duty to preserve invoices. (*Compare, e.g.*, ECF No. 157-5 ¶ 5 (explaining that the Mac N' Cheese Storefront has been selling Zagg Products since 2020), *with* Order (holding that the duty to preserve invoices began in September 2022).) Second, since the invoices often do not identify the type or brand of products being sold, Zagg's attempt to do the math based on these invoices is also unfounded. (*See, e.g.*, Ex. 1, Supplier Tr. 69:18–70:2 (noting that ████████████████████████████████████ ████████████████████████).)

The Court's wholesale reliance on Zagg's unsupported arguments about gaps in the invoices and Zagg's attempt to do math, and failure to even consider competent testimony from a non-party confirming that no documents are missing, is clear error.  *See, e.g.*, *Point Blank Sols.*, 2011 WL 1456029, at *21 ("The Court cannot simply *assume* that, because Point Blank is in possession of certain e-mails between Toyobo and Point Blank that Toyobo did not produce in this case, that other e-mails between the companies or internal Toyobo emails must have existed and were not produced.").

### 3.   The Order Is Impermissibly Vague Because the Adverse Inference Is Directed to "Missing Invoices" that Are Not Missing

The Order states that the adverse inference being granted to Zagg is that "[t]he jury is to infer that the missing invoices concerning ZAGG products—received by DVG as of September 14, 2022—are unfavorable to DVG[.]" (Order at 21.) Again, **there are no "missing invoices"** and thus this adverse inference is confusing, to say the least. As this Court cogently explained in the *Point Blank Solutions* case:

> [H]ow can a jury be given an adverse inference about destroyed, missing evidence if the parties can, in fact, introduce that very evidence at trial? A jury would surely be confused if given an adverse inference instruction about destroyed or missing

evidence if Point Blank introduces the very evidence it says is missing because Toyobo destroyed it.

. . . Plaintiffs' theory for an adverse inference lacks logical consistency and would, in any event, generate significant practical problems at trial because a jury instruction would likely be puzzling and confusing.

*Point Blank Sols.*, 2011 WL 1456029, at *22. For this reason too, the Order must be vacated. *See, e.g.*, *Christopher v. Cutter Lab'ys*, 53 F.3d 1184, 1194 (11th Cir. 1995) ("The purpose of jury instructions is to give the jury a clear and concise statement of the law applicable to the facts of the case.")

**B.    The Order's Finding that Any Invoices Are "Crucial" Is Premised on Erroneous Factual Findings and Is Contrary to Law**

Even if there were missing invoices that DVG had a duty to preserve (there aren't), for a court to find spoliation that missing evidence must be "***crucial*** to the movant being able to prove its prima facie case or defense." *Murphy*, 2024 WL 4362776, at *6 (emphasis added). "It is not enough that the spoliated evidence would have been relevant to a claim or defense." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1327 (S.D. Fla. 2010). If "the plaintiff would still be able to prove its case through additional already obtained evidence," then the spoliated evidence "is not crucial to the plaintiff's claims." *Id.* ("Here, the allegedly destroyed/concealed evidence establishing a breach would be cumulative at best and would not be crucial to the plaintiff's claims."); *see also, e.g.*, *Point Blank Sols.*, 2011 WL 1456029, at *8 (finding that allegedly missing documents were not "crucial" because, *inter alia*, plaintiff "moved for partial summary judgment"); *Wilson v. Wal-Mart Stores, Inc.*, No. 5:07CV394-OC-10GRJ, 2008 WL 4642596, at *3 (M.D. Fla. Oct. 17, 2008) ("[T]he memo is not critical to Plaintiff's ability to prove her case because there is other evidence potentially available to Plaintiff to prove her claim."); *Floeter v. City of Orlando*, No. 605CV-400-ORL-22KRS, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) ("[B]ecause evidence supporting [plaintiff]'s testimony about the type and number of sexually explicit e-mails exists, the additional e-mails that might have been found on the Original Computer would have been cumulative and are not crucial to the presentation of [plaintiff]'s case."); *Mendez v. Wal-Mart Stores E., LP*, 67 F.4th 1354, 1362 (11th Cir. 2023) (affirming denial of spoliation motion where movant did not suffer any prejudice because the destroyed video footage would not have been probative); *Centennial Bank v. Servisfirst Bank Inc.*, No. 8:16-CV-88, 2022 WL 10204911, at *6 (M.D. Fla. Sept. 6, 2022) (sustaining denial of

spoliation motion where "any deleted data likely would have been duplicative of data recovered from other sources").

> 1.   *Zagg Itself Has Admitted that It Does Not Need the Invoices to Make Its Case*

Zagg itself "has conceded that there is other evidence potentially available to plaintiff to prove its claim[.]" *Point Blank Sols.*, 2011 WL 1456029, at *28 (internal quotation and modifications omitted). For example, in August 2023, Zagg proceeded with its motion for summary judgment on its "false advertising" theory of liability and did not claim any need for additional discovery. (ECF No. 78.)[3] And, at the Evidentiary Hearing, Zagg stated that it still requested an adverse inference for ***all*** invoices, even those in Zagg's possession that list the products as new because Zagg's argument is that products obtained via liquidation can never be new, ***regardless of what the invoices say***, and based on other discovery taken in this action:



(Evidentiary Hr'g Tr. 85:10–86:2 (emphasis added); *see also* Reply at 3 ("ZAGG still maintains its argument that liquidated products are never in brand 'new' condition[.]").)  Thus, by Zagg's own admission, the invoices themselves are not "outcome-determinative" to this case and thus cannot support the grant of an adverse inference.

Further, as previously explained (*see supra* § II; *infra* § IV.D; Opp'n at 3–4), Zagg did not even pursue the invoices it now seeks while fact discovery was open. DVG agreed to produce a few representative examples due to Zagg's insistence that it wished to have an identification of DVG's ***source*** of the products, but Zagg never pursued a complete set of invoices. Rather, DVG provided its sales information directly from its business records, and the parties proceeded to

---

[3] Zagg falsely argued in its Reply that it did ask for an extension of time to complete discovery, but Zagg was not a party to that motion. (*See* ECF No. 59.)

summary judgment.

Far from finding the invoices produced by DVG as probative of the actual condition of the products sold, Zagg's summary judgment motion argued that none of the Zagg Products sold by DVG could ever be considered "New" because "liquidated products do not equal "New" products." (ECF No. 78 at 8 (emphasis omitted); ECF No. 79 ¶ 4 (citing DVG689–691); *see also, e.g.*, ECF No. 26, SAC ¶ 3.) While factually and legally unsound (*see infra* § IV.B.4), Zagg's "liquidation" theory explains why Zagg never sought any documents concerning condition while discovery was open. (*See generally* ECF No. 63-1; ECF No. 137, 7/6/23 Tr. 36:8–37:14.) Clearly, whether or not the "missing invoices" include any information about product condition (they do not), Zagg does not consider them "***crucial***" to its claims or defenses. *See, e.g.*, *U.S. v. McCray*, 345 F. App'x 498, 501 (11th Cir. 2009) (noting that, generally, only outcome-determinative evidence constitutes crucial evidence); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) ("Plaintiffs cannot show that the actual destruction of the test plants in Costa Rica led to their inability to prove their lawsuit. Therefore, the district court properly dismissed Plaintiffs' spoliation claim."); *QBE Ins. Corp. v. Jorda Enters., Inc.*, 280 F.R.D. 694, 698 (S.D. Fla. 2012) ("Defendant neither attached nor cited to any expert deposition testimony, or any other record material, supporting the conclusion that its ability to prove its defense was in any way compromised by the alleged spoliation. Therefore, the Undersigned must deny Defendant's motion.".).

Nor can these invoices be said to be "crucial" to Zagg's case here—if Zagg had wanted to know the condition of the Zagg Products sold by DVG, it had numerous other, more probative, ways of seeking that information, but it chose not to pursue those.

### 2. *The Invoices Do Not Contain Any Condition Information*

In addition, both Zagg and the Court admit that the invoices ***do not*** include any information about product condition, despite Zagg stating that the basis for its Motion is that the invoices "evidenc[e] DVG's purchases of ZAGG products and the condition of those products." (Mot. at 1.)

The Order even acknowledges that DVG's supplier testified that nothing can be inferred from the presence or absence of a "condition" on its invoices. (Ex. 1, Supplier Tr. 63:1–11 ("█

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████ ) However, later in the analysis, the Order ignores this testimony, and instead seems to base its holding that the invoices are "outcome-determinative" to Zagg's claims because: (1) "these invoices . . . all  . . .  include product details"; and (2) "the chain of custody of ZAGG products" is relevant to Zagg's claims and defenses because Zagg's theory of the case is that products "sold outside of the approved supply chain" are not "new'. (Order at 16.)  Both of these findings are erroneous.

For example, a review of the invoices unmistakably shows that the invoices do not "all include product descriptions of specific ZAGG product models." (*Id.* at 17.) Often, the invoices do not even indicate the particular ZAGG products that were purchased, and instead relate to "unmanifested accessories lot[s]" or "mixed skus." (*See* Ex. C at DVG690–91, SUP_001, 496–498, 500–502; *see also* Order at 17.) Indeed, the Court seems to have recognized this because the Order rubber-stamped each of Zagg's "proposed findings of fact" (despite being unsupported by any evidentiary support), except for the very last proposed fact, in which Zagg admits that many of the invoices "do not specify the items, brands, or even category of accessories included." (ECF No.259, ¶ 34.)

Moreover, while the relevance of the "chain of custody" and Zagg's liquidation theory are highly disputed, to the extent that the invoices are probative of these issues, they are certainly not ***crucial*** for Zagg to present evidence on these issues in this case. Zagg relies on deposition testimony to make those same arguments. (*See also* Reply, Ex. 2 at 4 (asserting that Zagg' independent "investigation has revealed that Mac N' Cheese is offering for sale and selling 'new' ZAGG products although those products were purchased at liquidation from wireless carriers").) Since Zagg argues that it "would still be able to prove its case through additional already obtained evidence," then the alleged spoliated evidence "is not crucial to the plaintiff's claims." *Managed Care Sols.*, 736 F. Supp. 2d at 1327.

In other words, Zagg has not been prejudiced by any alleged "missing" invoices and Zagg's Motion should have been denied. *See, e.g.*, *Alston v. City of Darien*, 750 F. App'x 825, 835 (11th Cir. 2018) (affirming denial of spoliation motion where movant "failed to show that he was prejudiced by [video's] absence or that the video had practical importance"); *Rives v. Lahood*, 605 F. App'x 815, 820 (11th Cir. 2015) (similar); *Rutledge v. NCL (Bahamas), Ltd.*, 464 F. App'x 825, 829 (11th Cir. 2012) (affirming denial of spoliation motion where missing evidence "would be of extremely limited value"); *Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1318 (11th

Cir. 2010) (similar).

### 3. The Court Misunderstood the Evidence

The Order also discounts DVG's explanation that any "condition" information on the invoices is irrelevant to Zagg's arguments here, i.e., whether the products are sold in accordance with Amazon's condition guidelines because any condition stated on the invoice is not used by DVG for purposes of reselling the product; rather, each item is independently sorted and graded by DVG in accordance with Amazon's condition guideline. (DVG Decl. ¶ 8.) The Order states that DVG's testimony on this point was "inconsistent" because DVG's Declaration stated that "DVG sorts and grades the products whereas the testimony during the Evidentiary Hearing more specifically stated that DVG's third-party logistics company carried out that task. (Order at 17.) But there is no inconsistency—in either case, DVG does the sorting via its agent. (*See, e.g.*, Evidentiary Hr'g Tr. 57:24–58:2 (DVG's principal testifying: "███████████████████ ████████████████████████████████████████████████████ ██████████████████████"), 59:1–5 (DVG's principal testifying that ████████████████████████████████████████ ██████████████).)

Further, the Order misunderstood DVG's argument that ***none*** of the invoices that Zagg has in its possession are unfavorable to DVG and thus Zagg's requested adverse inference was grounded in speculation about the existential possibility that invoices *could* have said that the Zagg products sold to DVG were in damaged condition. (*Compare* Opp'n at 6, *with* Order at 18.) Speculation about what missing evidence might show is not a proper basis for a spoliation motion. *See, e.g.*, *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1309 (11th Cir. 2018) (affirming denial of spoliation motion where movant "provide[d] no reason to believe that the [missing evidence] would have actually shown . . . inconsistent statements"). The Order's finding to the contrary is clear error.

### 4. Zagg's "Liquidation" Arguments Are Highly Disputed, and Do Not Demonstrate that the Invoices are "Crucial"

As the invoices do not contain any relevant condition information, it appears that both the Court and Zagg argue that the invoices are relevant based on Zagg's argument that the Zagg Products sold by DVG come from liquidation sources and thus cannot be new under Amazon's definition. Again, the invoices are not the sole way for Zagg to make that argument, and thus are

not so "crucial" to Zagg's claims and defenses as to support spoliation sanctions.

In addition, whether or not the invoices are even ***relevant*** to the issues in the case go to the heart of the dispute and should not be decided via abbreviated briefing,[4] where DVG did not have an opportunity to brief this highly contested issue. As DVG's counsel explained at the hearing, the issue over Amazon's definition of "new" is the subject of expert testimony and should not be the center of a discovery dispute. (Evidentiary Hr'g Tr. 92:8–14.)

As will be further explained in DVG's forthcoming summary judgment motion and/or at trial, Amazon ***does not*** exclude "liquidation" products from the definition of "new." Indeed, Amazon submitted statements to the U.S. Congress explaining that liquidation sources contribute to Amazon's goals to provide products to consumers at a low price. As Amazon explained:

> Amazon seeks to provide its customers with the widest possible selection of products at competitive prices. One way Amazon has sought to provide this selection is by making it easy for sellers of authentic products to open selling accounts and sell a wide variety of products directly to Amazon's customers in Amazon's store. Brands often conflate the question of whether goods are authentic (not counterfeit) with whether a particular seller is "authorized" (meaning they have a contract with the manufacturer). ***There are many legal sources of authentic supply in addition to resellers specifically authorized by the brand. These include liquidation*** or sale by authorized retailers, and supply from other wholesalers and distributors—who are sometimes also used by brands themselves to move merchandise. Amazon goes to great lengths to assure the authenticity of products, preventing bad actors from opening selling accounts or selling counterfeit products in its store. But, ***we do not require that sellers have a direct contractual relationship with a product's manufacturer, as doing so could prevent sellers— many of whom are small and medium sized businesses—from legally selling these products in our store at competitive prices***.

Resp. to Questions for the Record following the July 16, 2019, Hr'g of the Subcomm. on Antitrust, Com., and Admin. Law, Comm. on the Judiciary, Entitled "Online Platforms and Market Power, Part 2: Innovation and Entrepreneurship," Oct. 11, 2019, https://www.congress.gov/116/meeting/house/109793/documents/HHRG-116-JU05-20190716-SD038.pdf.

DVG's Amazon expert, Ms. Rachel Johnson Greer—a former Amazon employee of eight years and longtime consultant to Amazon sellers—will also explain that Amazon itself purchases goods on the secondary market—where it does not know the source or origin of the products. Amazon also sells large amounts of overstock products to liquidators. In Ms. Greer's more than

---

[4] DVG's brief was limited to 8-pages per Court Order. (*See* ECF No. 224.)

14

17 years of experience working daily in the Amazon space, Amazon simply requires that these products be assigned a condition, whether "New" or otherwise, in accordance with their **physical condition**, and Amazon uses the term "liquidation" in its ordinary sense, i.e., the process of selling off excess stock, not as alleged by Zagg.

Amazon expressly states that "[m]anufacturer warranties may not apply in all cases, depending on factors like the use of the product, where the product was purchased, or who you purchased the product from." https://www.amazon.com/gp/help/customer/display.html?nodeId=202073990.

Zagg's attorney argument that products sourced through liquidation cannot be listed as "New" on Amazon is contrary to Amazon's policies and Amazon's routine business activities. It is also contrary to the plain meaning of the accounting term "liquidation," which is unrelated to product condition. Moreover, this highly-disputed substantive issue certainly should not be the subject of a discovery motion. *See, e.g.*, *Sheets v. Presseller*, No. 2:24-CV-495-JLB-KCD, 2025 WL 437580, at *1 (M.D. Fla. Jan. 6, 2025) ("The Court cannot . . . however, put its thumb on the scale and decide the truth [on a sanctions motion].").

### C.    Zagg Has Not Made Any Showing of Bad Faith

Finally, the Order found that DVG engaged in bad faith—a requirement for the imposition of an adverse inference—only after incorrectly shifting the burden to DVG to prove that it did not engage in bad faith. (Order at 19–20.) Specifically, the Order held that "DVG provides no credible evidence that it did not destroy the documents in bad faith." (*Id.* at 19.) But it is "[t]he party seeking sanctions," i.e., Zagg, which "bears the burden of proving spoliation and bad faith." *Henkle v. Cumberland Farms, Inc.*, No. 16-14248-CV, 2017 WL 5635400, at *2 (S.D. Fla. June 15, 2017). This burden shifting was contrary to the law and thus the Order should be reversed.

Zagg never presented any direct evidence of bad faith nor can the circumstantial evidence support a finding of bad faith. For example, "[Zagg] offered no evidence that [DVG] had any motive not to preserve the [invoices]." *Id.* at *5 (denying spoliation motion).

Rather, in the Order, the Court acknowledged the process by which invoices made their way to DVG. Specifically, DVG's supplier generally dropped off a paper copy at the warehouse of DVG's logistics provider. (*See, e.g.*, Evidentiary Hr'g Tr. 18:20–21 ("███████████████ ██████████████████████████████████).) DVG's owner and sole employee, Mr. Menachem Ichilevici, testified that the data from the invoices was input into his computer systems, but he did

not always take the invoices with him, (*id.* at 19) because DVG considers them immaterial to its business after the information is inputted into DVG's computer system (*id.* at 7). The Order also notes that, when asked during the Evidentiary Hearing whether DVG would ***hypothetically*** preserve an invoice if it received one "today," it responded that it "would 'most probably not' preserve the invoice despite the existence of the instant action." (Order at 19.)

This evidence does not reasonably point to the conclusion that DVG affirmatively "destr[oyed] evidence *for the purpose of hiding* adverse evidence." *Thomas*, 2024 WL 1574661, at *2 (internal modifications and quotation omitted) (emphasis in original). Because "mere negligence" is not enough for a finding of bad faith—"for mere negligence does not sustain an inference of consciousness of a weak case"—the Order's finding of bad faith was clearly erroneous. *Id.*; *see also, e.g.*, *Foulke v. Weller*, No. 22-13942, 2024 WL 2761778, at *12 (11th Cir. May 29, 2024) (emphasis in original) (internal quotation omitted) (finding no abuse of discretion in denial of request for spoliation sanctions where the evidence showed only negligence and not "a purposeful intent to alter or lose the items of evidence in question").

For example, there is no evidentiary support that DVG acted in "bad faith" to the extent it did not take home from a third-party warehouse invoices after September 2022 when Zagg sent a "cease-and-desist" letter (which, as mentioned above, does not even mention DVG). That letter does not make a demand that invoices must be maintained or give any indication that invoices would even be relevant. *See, e.g.*, *Tesoriero*, 965 F.3d at 1183–84 ("[A]nticipation of litigation is not the standard for spoliation sanctions—bad faith is."). At all times, DVG believed the invoices had no material use to its business and believed that it could obtain any missing invoices from its supplier if it was required to (*see* Evidentiary Hr'g Tr. at 52:8–10, 54:9–10). Mr. Ichilevici's layman response to a hypothetical question about how he might handle invoices after the close of discovery is irrelevant to any issue and cannot be the basis for a finding of bad faith.

Nonetheless, the Order cites the *Skanska* case for the proposition that a court should be "'highly skeptical' of a claim that evidence was unintentionally destroyed 'pursuant to a routine policy' after a request that the evidence be preserved." (Order at 20 (*Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1313 (11th Cir. 2023)).) But the *Skanska* case does not support a finding of bad faith under the circumstances here. Even in the *Skanska* case, the Eleventh Circuit stated that bad faith was a close question because there was no direct evidence of bad faith and it was plausible that the "Skanska was 'just' grossly negligent." 75 F.4th at 1313. But what tipped

the scales in the *Skanska* case was that "Skanska is a sophisticated entity—a multinational company tasked with completing a construction contract worth nearly $400 million." *Id.* That fact pattern could not be farther from the scenario here, where DVG is a single-member LLC owned by a young man who knows that he could simply ask his supplier for invoices if he ever needed them. Here, there is no reason to believe that DVG failed to preserve any invoices "to ***hide*** adverse evidence"; and "[m]ere negligence in losing or destroying evidence is not enough to warrant sanctions." *Tesoriero*, 965 F.3d at 1186 (emphasis added); *see also, e.g.*, *Corp. Fin., Inc. v. Principal Life Ins. Co.*, No. 05-20595-CIV, 2006 WL 3365606, at *3 (S.D. Fla. Nov. 20, 2006) ("[A]ny inference of bad faith is mitigated by the existence of records produced by Principal Life through its underwriting department."); *Weston v. Buc-ee's Fla., LLC*, No. 6:24-CV-567-PGB-LHP, 2025 WL 507456, at *9 (M.D. Fla. Feb. 14, 2025) (explaining that, to demonstrate entitlement to spoliation sanctions, "Plaintiff must prove Defendant destroyed the surveillance footage in a bad faith attempt to deprive Plaintiff of adverse evidence."); *Kendrick v. Techfive LLC*, No. 3:22CV04833-MCR-ZCB, 2024 WL 1348378, at *4 (N.D. Fla. Mar. 29, 2024) ("[T]he mere absence of the [evidence does not] demonstrate[] intentional spoliation. . . . [I]f it did, every instance of missing evidence would be cause for sanctions and this simply is not correct"); *Bennett v. Jetro Rest. Depot, LLC*, No. 0:23-CV-60954-KMM, 2024 WL 4471996, at *4 (S.D. Fla. Mar. 8, 2024) (denying spoliation sanctions where "Plaintiff himself is unsure as to why Defendant failed to preserve the footage at issue"); *In Matter of Complaint of Bos. Boat III, L.L.C.*, 310 F.R.D. 510, 516–17 (S.D. Fla. 2015) ("[D]istrict courts in this Circuit regularly deny adverse inference requests even when there is indisputable evidence of destruction or loss of evidence.").

**D.      Zagg Never Pursued the Complained-of Invoices in Discovery**

Zagg's Motion should have been denied as a procedural matter too, as it was both untimely and procedurally improper—Zagg never even filed a motion to compel. Pursuant to Local Rule 26.1(g)(2)(A)(i), "discovery disputes relating to a written response or objection to a discovery request" must be submitted "within twenty-eight (28) days of service of the written response or objection that is the subject of the dispute." As discussed above, on May 15, 2023, DVG served its written objections to Zagg's requests for invoices (ECF No. 63-1 at 22–23, DVG's Resp. to RFP No. 26), and the parties had a hearing with the Court on July 6, 2023, but solely as to Zagg's request that DVG identify its "source" of the Zagg Products it sells, rather than seeking to compel "all invoices." (ECF No. 63 at 2, ¶ 2.)

At the July 6, 2023 discovery conference, DVG's counsel noted that Zagg's dispute was a moot point because DVG had produced representative invoices sufficient to show its source of ZAGG-branded products. (*See* ECF No. 137, 7/6/23 Tr. 8:20–21; *see also* Ex. C at DVG689–691.) Thereafter, DVG again confirmed that it would only be producing representative invoices. (*See* ECF No. 157-3 at 6–7, DVG's Suppl. Resp. to RFP No. 26.)

Zagg's decision not to pursue the production of "all" invoices until many months after being put on notice that only a few representative invoices from 2022 had been produced is reason on its own to deny the Motion. *See, e.g.*, *Derhem v. Bay House Miami Condo. Ass'n*, No. 20-CV-22318, 2024 WL 4370880, at *2 (S.D. Fla. Oct. 1, 2024) (denying motion for spoliation sanctions as untimely under Local Rule 26.1).

So is Zagg's failure to ever make a motion to compel the invoices themselves. *See, e.g.*, *Miller v. Michaels Stores, Inc.*, 98 F.4th 211, 219 (5th Cir. 2024) ("Yet, because Miller moved in the district court for an adverse inference based on spoliation, rather than to compel production of the remainder of the footage, her right to receive that footage was never properly before the district court. . . . There is no evidence that spoliation occurred."); *Mohammed v. Delta Airlines, Inc.*, No. 08 Civ. 1405(FB)(JMA), 2011 WL 5554269 (E.D.N.Y. Nov. 15, 2011) (finding spoliation motion untimely where the existence of a video camera and any discovery issues surrounding the possible videotape should have been raised in discovery, and not in a motion for spoliation).

While the Order rejects this argument out of hand due to Plaintiff's vague argument that there had been "conferral efforts" and "disputes brought before the undersigned related to the missing invoices" (Order at 12), none of those proceedings related to a timely motion to compel *DVG* to produce invoices—a logical prerequisite for spoliation sanctions. Rather, Zagg served an (untimely) subpoena on DVG's supplier, which led to much of the referenced discussions. Had *DVG* ever been compelled to produce invoices with a defined timeframe, it would have simply asked its supplier for such documents. Instead, Zagg sought to waste the Court's, DVG's, and a non-party's time and resources.

**E.      The Order Inappropriately Makes Factual Findings that Were Not the Subject of the Motion, and Touch on Dispositive Issues in the Case**

The Order includes 33 paragraphs of "Findings of Fact." (Order at 7–11.) None are supported by any evidence or citations to the record. Indeed, except for the one glaring omission discussed above in which Zagg had admitted that the invoices do not include condition information

(*see supra* § IV.B.2), each of these 33 paragraphs are almost word-for-word identical to the proposed findings of fact submitted by Zagg, which are likewise unsupported by any evidence. (*Compare id.*, *with* ECF No. 259 at 2–6.)[5]

For this reason alone, each of the "Findings of Fact" should be vacated. "[T]o withstand challenge, a factual finding by a court has to be supported by evidence." *Batista v. S. Fla. Woman's Health Assocs., Inc.*, 844 F. App'x 146, 159 (11th Cir. 2021) (emphasis added). Significantly, many of the "findings" of fact were never discussed in any of the briefing on the Motion. Zagg simply tried to sneak in allegations that they believe assist their case on the merits.

The Order's rubber-stamping of these "facts"—without any adversarial process or even giving DVG and opportunity to respond—is clearly erroneous. "[T]he cases admonishing trial courts for the verbatim adoption of proposed orders drafted by litigants are legion" as this process "harms the quality of the district court's deliberative process" and "creates the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1373 (11th Cir. 1997) (internal quotations omitted).

For example, Paragraph 5 of the Order's "Findings of Facts" states ". . . Amazon's guidelines require a 'new' product to be covered by a manufacturer's warranty." (Order at 8.) This "finding" is not relevant to any issue in Zagg's Motion; indeed, there is not even a single instance of the word "warranty" anywhere in the briefing. Rather, it was an argument that Zagg's attorneys raised for the first time during oral argument in furtherance of their attorney-argument on Zagg's liquidation theory. And, as discussed above (*see supra* § IV.B.4), the "finding" is not correct.

There are numerous other "Findings of Fact" that have no basis in evidence, and no relevance to the Order. For example, Paragraph 4 of the Order's "Findings of Facts" states "DVG's corporate representative has testified that DVG lists all ZAGG Products as 'new' when they are sold on Amazon.com." This statement is neither supported by evidence nor fact. Indeed, Zagg wasted hours of this Court's time on another (untimely) discovery dispute where Zagg decided months after discovery closed that it wanted documents showing the "condition" under which DVG sells ZAGG Products. This resulted in additional documentation being produced to Zagg

---

[5] The only differences are: (i) a typo in Paragraph 2; (ii) the addition of a witness's name in Paragraph 10; (iii) the shortening of a name in Paragraph 16; (iv) alteration to the wording in Paragraphs 28 and 32; (v) altered formatting in Paragraph 29; (vi) the addition of a qualification in Paragraph 33; and (vii) the Order's telling omission of Paragraph 34.

showing that **DVG doesn't only sell Zagg Products as "New,"** it also sells them as "Used" and "Used – like new", illustrating that Zagg's proposed, and the Order's adopted, "Finding of Fact" is blatantly incorrect. (DVG Decl. ¶¶ 10–11.)

As yet another example, Paragraph 14 of the Order's "Findings of Facts" states "[w]hile some of the invoices are more detailed than others, each of these paper invoices delineates the names of the items purchased, the quantity of each item, and a description of the products purchased." As explained above (*see supra* § IV.B.2), this "finding" is incorrect.

DVG should not be forced to address each unsupported "Finding of Fact" in these Objections. Instead, irrelevant "findings" should never have been included in the Order, and any other findings should have been the subject of an adversarial process and supported by citations to evidence. (*Cf.* ECF No. 260 (DVG's Proposed Findings of Fact with citations in support of each paragraph.) For at least the foregoing reasons, the entirety of the Order should be vacated, including each of the unsupported "Findings of Fact."

## V.   <u>CONCLUSION</u>

For at least the foregoing reasons, DVG respectfully requests that the Court sustain these Objections, reverse the Order's grant of an adverse inference, and vacate the Order, including the factual findings discussed above.

Dated: March 28, 2025

Respectfully submitted,

By:   */s/ Geoffrey M. Cahen*
Geoffrey M. Cahen
Florida Bar No. 0013319
CAHEN LAW, P.A.
1900 Glades Road, Suite 270
Boca Raton, Florida  33431
Tel. No.: (561) 922-0430
Geoff@cahenlaw.com

Mark Berkowitz (*Pro Hac Vice*)
Sandra A. Hudak (*Pro Hac Vice*)
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY  10018
Tel. No: (212) 216-8000
mberkowitz@tarterkrinsky.com
shudak@tarterkrinsky.com

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

electronically filed, this **28th day of March, 2025** to:

*Counsel for Plaintiff*

Mallory Meagan Cooney
K&L Gates LLP
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131
Email: mallory.cooney@klgates.com

Morgan T. Nickerson
K&L Gates LLP
1 Congress Street, Suite 2900
Boston, MA 02114
Email: morgan.nickerson@klgates.com

By:   */s/ Geoffrey M. Cahen*