**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-20304-ALTMAN/Reid**

**ZAGG INC.**,

       *Plaintiff,*

*v.*

**MENACHEM MENDEL ICHILEVICI,** *et al.,*

       *Defendants.*

_____/

**DVG TRADE LLC**,

       *Counter-Plaintiff,*

*v.*

**ZAGG INC.,** *et al.,*

       *Counter-Defendants.*

_____/

**ORDER ON ZAGG'S *DAUBERT* MOTION**

Our Plaintiff, ZAGG, Inc., has filed a *Daubert* motion asking us to exclude the report and testimony of DVG Trade LLC's Amazon policy expert, Rachel Johnson Greer. *See generally* Plaintiff's Motion to Exclude the Report of DVG's Expert (the "Motion") [ECF No. 306].[1] After careful review, we **DENY** the Motion.[2]

---

[1] Although we allowed ZAGG to file its *Daubert* Motion under seal, *see* Paperless Order Granting Motion to Seal [ECF No. 302], our Order won't explicitly reference any confidential information and thus won't be filed under seal.

[2] The Motion has been fully briefed and is ripe for adjudication. *See* DVG's Opposition to ZAGG's *Daubert* Motion ("Response") [ECF No. 328]; ZAGG's Reply in Support of *Daubert* Motion ("Reply") [ECF No. 336].

## THE LAW

"Federal Rule of Evidence 702, as explained by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny, controls determinations regarding the admissibility of expert testimony." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). "The presumption is that expert testimony is admissible, so that once a proponent has made the requisite threshold showing, further disputes go to weight, not admissibility." *City of S. Miami v. Desantis*, 2020 WL 7074644, at *3 (S.D. Fla. Dec. 3, 2020) (Bloom, J.) (quoting *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 408 (D.D.C. 2017)).

"To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Johnson v. Carnival Corp.*, 533 F. Supp. 3d 1196, 1199 (S.D. Fla. 2021) (Bloom, J.) (citing *City of Tuscaloosa*, 158 F.3d at 562). "The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the 'qualifications,' 'reliability,' and 'helpfulness' prongs." *Id.* at 1200 (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

When it comes to qualifications, an expert may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (Rosenbaum, J.) "The qualification standard for expert testimony is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d

1321, 1325 (S.D. Fla. 2009) (Dimitrouleas, J.) (cleaned up). When assessing the reliability of a non-scientific expert (like Greer), we have "considerable leeway" and "may decide that non-scientific expert testimony is reliable based upon personal knowledge or experience." *United States v. Jennings*, 599 F.3d 1241, 1248 (11th Cir. 2010). In evaluating reliability, we rely "solely on [the] principles and methodology [employed by the expert], not on the conclusions that they generate." *Allison*, 184 F.3d at 1312 (citing *Daubert*, 509 U.S. at 595). Finally, expert testimony is helpful if it applies to "matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63.

## ANALYSIS

ZAGG asks us to exclude the expert report of Rachel Johnson Greer (the "Greer Report") [ECF No. 306-1] and to preclude her from testifying as an expert at trial. DVG—the proponent of Greer's testimony—responds that Greer is a "noted Amazon expert" who, "based on her experience, will rebut evidence that ZAGG intends to intrude [sic] as part of ZAGG's case in chief[.]" Response at 6. Specifically, DVG wants to have Greer "provide the necessary background on the relevant Amazon practices, policies and procedures." *Ibid.* In ZAGG's view, though, Greer isn't qualified to testify about Amazon's policies, hasn't "reliably applied" her experience, "provide[s] nothing helpful to assist the trier of fact," and offers testimony that's rife with "inadmissible hearsay." Motion at 12–20. We'll address—and reject—each of these arguments in turn.[3]

---

[3] ZAGG's Motion conflates the qualifications and reliability prongs of Rule 702. *See* Motion at 11 ("[Section] II. Greer's 'Opinions' Lack Reliability and She is Not Qualified to Offer Opinions on Amazon Policies or How Amazon Operates"). Because qualifications and reliability are "distinct concepts," which "the courts must take care not to conflate," *Frazier*, 387 F.3d at 1260, we've tried our best to separate ZAGG's qualifications and reliability arguments.

## I.     Qualifications

In the first step of our *Daubert* analysis, we must determine whether Greer is "qualified to testify competently regarding the matters [she] intends to address." *Johnson*, 533 F. Supp. 3d at 1199. ZAGG claims that Greer is "an unqualified and unreliable witness [ ] as to Amazon's current processes and policies (or any policies after she left in 2017)." Motion at 14. DVG responds that "ZAGG cannot reasonably challenge Ms. Greer's qualifications—she has over 15 years of direct experience working with Amazon and Amazon sellers." Response at 14.

We've reviewed Greer's CV and agree that she's qualified to opine on Amazon's policies and procedures. Greer's CV demonstrates that she: (1) worked as a Program Manager at Amazon for five years, overseeing various elements of Amazon's compliance programs; (2) has served as an Amazon compliance consultant since 2015; (3) received a Master of Business Administration degree from Seattle University; (4) published a book on Amazon product safety; and (5) appeared as an "Amazon Product Compliance" speaker at various events from 2016 to 2022. Greer CV [ECF No. 311-1] at 29–40; *see also* Greer Report at 2 (detailing Greer's qualifications).

An individual with ample experience in a field *can* qualify as an expert in that field's practices, policies, and standards. *See Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338–39 (11th Cir. 2009) (finding an expert qualified to testify regarding "insurance industry standards" based on his "ample knowledge and experience about the subject"—as demonstrated by his work as a "paid consultant to various life insurance companies regarding the issuance of multi-million dollar life insurance policies"); *see also Jennings*, 599 F.3d at 1249 (finding an expert's testimony on "the substantive requirements of state workers' compensation law and the general knowledge in the industry of those requirements" admissible when it was based on the expert's "experience and conversations over her career with workers' compensation professionals"). Here, Greer's experience *both* as a manager at

Amazon *and* as a consultant to Amazon sellers qualifies her as an expert in the field of "Amazon policy compliance."

Despite Greer's demonstrated experience in the Amazon marketplace, ZAGG attacks her qualifications in four ways. *First*, ZAGG claims that none of Greer's roles at Amazon "involved any of the issues or policies at issue in this case." Motion at 15. But that's not entirely true. Greer "investigated sellers and vendors for safety and intellectual property infringement," "managed quality & compliance for Amazon's own brands," and "managed the legal compliance of all global imports," Greer Report at 3—all relevant to the claims at issue in our case.

*Second*, ZAGG contends that Greer isn't qualified because she hasn't worked at Amazon since 2017 and thus (ZAGG says) isn't familiar with Amazon's "current processes and policies." Motion at 15. But ZAGG hasn't cited any authority for the proposition that an expert must be currently (or even recently) employed by a company whose policies he or she intends to outline. And DVG cites several cases in which an expert's testimony was deemed admissible *even though* the expert *never* worked at the company in question. *See, e.g.*, *Buonomo v. JetBlue Airways Corp.*, 2023 WL 8878554, at *4 (S.D. Fla. Dec. 22, 2023) (Reid, Mag. J.) (permitting a flight attendant who never worked at JetBlue to testify that "JetBlue itself did not have the proper policies in place"); *Furnituredealer.net, Inc. v. Amazon.com, Inc.*, 2022 WL 891462, at *17 (D. Minn. Mar. 25, 2022) (admitting testimony about Amazon's internal search engine from an expert who never worked at Amazon). That Greer hasn't worked at Amazon since 2017 doesn't preclude us from finding that she's qualified to testify about Amazon's policies— especially since she's continuously advised Amazon sellers about these policies in the years since her departure.[4]

---

[4] Of course, if it becomes clear at trial that Amazon's policies have changed materially since Greer was there—and that Greer lacks personal familiarity with those changed policies—then we may take another look at this argument.

*Third*, ZAGG insists that "[o]nly Amazon itself can testify as to its practices and procedures." Motion at 14. But that's absurd. As we've just observed, courts routinely allow experts who are unaffiliated with a company to testify about that company's policies or practices if those experts are otherwise qualified to do so. To the extent ZAGG thinks that Amazon would be a *better* witness, it hasn't identified any authority (nor are we aware of any) that requires us to exclude an expert's testimony simply because a better witness *might* have been found. So, we'll allow Greer to testify and grant ZAGG wide latitude in cross-examining her on the extent of her expertise. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *see also United States v. Williams*, 865 F.3d 1328, 1340 (11th Cir. 2017) ("The district court acted within its discretion in determining that, given Tirado's extensive training and experience, any quarrels with his qualifications were fodder for cross examination rather than reason to exclude his testimony altogether.")

*Finally*, ZAGG claims that Greer is impermissibly trying to "testif[y] on behalf of Amazon[.]" Motion at 12 (emphasis removed); *see also id.* at 12–13 ("The following 'opinions' of Ms. Greer are nothing more than her unsupported, speculative guesses and assumptions as to how Amazon might testify as to contested issues in this case[.]"). Again, though, that's just not true. The Greer Report makes clear that Greer is offering *her* perspective on Amazon's policies and practices as an expert who's navigated the Amazon marketplace for years. *See* Greer Report at 5 ("My opinions in this case are based on my experience working at Amazon and in my Amazon consulting business, Amazon policy documents, publicly available listings of ZAGG products on Amazon.com, and my review of certain documents provided to me by DVG[.]"). Nothing in her report even suggests that she's purporting to speak for Amazon itself.

Since ZAGG hasn't given us any reason to believe that Greer is unqualified to serve as an expert in this case, we'll deny this aspect of its motion.

## II.     Reliability

Next, we must determine whether the "methodology by which [Greer] reaches [her] conclusions is sufficiently reliable." *Johnson*, 533 F. Supp. 3d at 1199. ZAGG urges us to ask ourselves "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate; and (4) whether it is generally accepted within the relevant field." Motion at 16 (citing *Seamon v. Remington Arms Co., LLC*, 813 F.3d 983, 988 (11th Cir. 2016)). But that's the framework that governs the reliability of *scientific* experts. *See, e.g.*, *Schoenthal Fam.*, 555 F.3d at 1338 ("Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony. . . . A district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience."); *Frazier*, 387 F.3d at 1262 ("To evaluate the reliability of *scientific* expert opinion, we consider, to the extent practicable: [the four factors ZAGG urges us to evaluate]. . . . [S]ometimes other questions may be more useful." (emphasis added)). Because Greer is a *non-scientific* expert testifying about her experience, however, we instead ask only "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's notes (2000 amends.); *see also Jennings*, 599 F.3d at 1248 ("For non-scientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. A district court may decide that non-scientific expert testimony is reliable based upon personal knowledge or experience.").

ZAGG claims that Greer hasn't "demonstrate[d] how her experience informs her opinions or what methodology she relied upon in coming to [her] 'opinions.'" *Id.* at 16. We disagree. Greer has

shown that her opinions about Amazon's policies and practices are based, in part, on her experience "providing compliance guidance to Amazon sellers regarding Product Policy, Fulfilment by Amazon ('FBA') compliance, Amazon's intellectual property policies, and other Seller Performance issues," and "providing advisory services on meeting Amazon and regulatory product compliance requirements for consumer goods[.]" Greer Report at 4. She also tells us that her "opinions in this case are based on [her] experience working at Amazon and in [her] Amazon consulting business, Amazon policy documents, publicly available listings of ZAGG products on Amazon.com, and [her] review of certain documents provided to [her] by DVG[.]" *Id.* at 5. That's more than sufficient for us to find her report and testimony reliable under Rule 702. *See Iaffaldano v. Sunwest Mortg. Co., Inc.*, 2018 WL 310050, at *2 (S.D. Fla. Jan. 4, 2018) (Rosenberg, J) ("Hager has substantial experience in the insurance industry [ ]. His opinions, thus, are reliable based upon his knowledge and experience. He need not have used a particular methodology in arriving at his conclusions." (cleaned up)). Since Greer's proposed testimony is based on her personal experience working with Amazon's quality-control policies over many years, we deny this second aspect of ZAGG's motion.

### III.    Helpfulness

We also ask whether Greer's report and testimony would "assist[ ] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Johnson*, 533 F. Supp. 3d at 1199. ZAGG argues that the Greer Report isn't helpful because it "contains exclusively fact testimony and is completely devoid of any opinions that go beyond the understanding of an average layperson." Motion at 18. ZAGG goes on to say that "[t]he average layperson is at least similarly capable of reading, regurgitating, and interpreting alleged Amazon policies in the same way as Ms. Greer." *Ibid.* In support of this contention, ZAGG cherry-picks a few paragraphs from the Greer Report that (it believes) demonstrate Greer's mere "reguritat[ion]" of Amazon's policies. *See, e.g., ibid.* ("Ms. Greer [ ] simply provid[es] basic information

about Amazon's policies, often simply reciting the language. She states: 'Specifically, Amazon's policies state that if any of the Brand's products are sold by Amazon via Amazon retail, the Brand may not sell those products via Seller Central in the Amazon Store.'" (citing Greer Report at 10)).

In Response, DVG argues that Greer does much more than just recite Amazon policies and procedures. In saying so, DVG identifies several of Greer's opinions that (it believes) *will* help the trier of fact, including:

- Amazon public-facing policies "are often contradictory or outdated" because "Amazon's process for changing and updating policies, guidelines and other seller documents on the Amazon Marketplace is a multi-step process that requires internal tickets and up to six approvals[.]" (Greer Report ¶ 16);
- "Based on [her] experience at Amazon and in providing consulting services to Amazon sellers, it has always been understood that a "new" item is simply one that is brand-new and unused, free of blemishes, smudges or dirt, and in the original packaging." (*Id.* at ¶¶ 32–33);
- "When [she] was an AmazonBasics manager in 2012-2014, [she] calculated 11 touch points where a package could be damaged by Amazon's or a shipping carrier's systems from the time that an AmazonBasics product arrived at Amazon's facilities until it reached the customer." (*Id.* at ¶ 35);
- "Amazon uses computer algorithms," assessing factors such as "good performance metrics, popular products, and longevity on the Marketplace" to determine which sellers are awarded better placement. (*Id.* at ¶¶ 41–42);
- "A long-term seller, with a good seller feedback rating going back several years, will get more of the buy box than a new seller with limited or short term feedback, even if the feedback is quite good." (*Id.* at ¶ 45)[.]

Response at 21 (cleaned up). We agree with DVG that Greer's report and testimony go well beyond a mere recitation of Amazon's policies and that her expert analysis of Amazon's policies and practices would assist the trier of fact. We thus deny this third aspect of ZAGG's motion.

### IV.   Opinions & Hearsay

Finally, ZAGG advances two arguments that aren't directly related to Greer's admissibility as an expert under *Daubert*. *First*, ZAGG says that "it is entirely unclear what 'opinions' are being offered by Ms. Greer." Motion at 9. ZAGG claims that the Greer Report is "a hodgepodge of speculative factual assertions made by Ms. Greer masquerading as 'opinions.'" *Id.* at 11. We disagree. For one

thing, in making this argument, ZAGG identifies several of Greer's specific opinions—thus belying its claim that it has no way of knowing *which* opinions Greer plans to offer. *See* Motion at 9–10 ("Ms. Greer testified that she is offering only two opinions. First, she testified that: 'Accordingly, it is my opinion that ZAGG's conclusion that defendants cannot list ZAGG products as being in new condition is based on an incorrect interpretation of Amazon's policies that is not used by Amazon in practice.' Second, she testified that: 'it is my opinion that defendants' stickering of ZAGG products comports with Amazon's policy, as does the marking over the barcode on the lower left of the packaging above.'" (cleaned up)). For another, Greer clearly sets out her opinions in the "Conclusion" section of her report:

- As demonstrated above, ZAGG's assertion that only those sellers that offer a 'manufacturer's warranty' can list products as "New" on Amazon is incorrect. As discussed, it is based on outdated Condition Guidelines, rather than the relevant policies and Amazon's actual practices.
- Similarly, ZAGG's assertion that products sourced through liquidation cannot be listed as "New" on Amazon is incorrect. As discussed, this assertion is contrary to Amazon's policies and Amazon's routine business activities.
- Amazon's Marketplace is deliberately set up to provide third party sellers the opportunity to sell on a "Single Detail Page" (SDP) shared by all sellers of the same product. DVG used that correct page, and did not make any duplicate ASINs (an Amazon violation), or list on previously created duplicate ASINs, and therefore followed Amazon policy correctly.
- ZAGG's creation and operation of the Screenya storefront violated numerous Amazon policies by, among other things, failing to disclose the true owner of the account, failing to disclose the correct business address of the account owner, operating simultaneously as a vendor and third-party seller, and submitting fabricated invoices to Amazon.
- ZAGG has violated Amazon's policies by misusing the variation feature for SDPs.

Greer Report at 27–28. ZAGG's objection thus has less to do with the *clarity* of Greer's opinions and (much) more to do with its view that Greer isn't qualified to testify. *See* Motion at 11 ("Ms. Greer does not offer opinions, but rather merely speculates as to what she thinks Amazon will do in a given factual situation [and] provides unsupported factual information[.]"). As we've said, however, Greer is

qualified to offer expert testimony in this case, and we've had no trouble identifying the opinions she intends to offer.

*Second*, ZAGG contends that "much of Ms. Greer's proposed testimony is inadmissible hearsay." *Id.* at 19. "Ms. Greer," ZAGG says, "does not rely on admissible internal Amazon documents, data, or communications, nor does she cite any firsthand knowledge of Amazon's current practices." *Ibid.* In short, ZAGG believes that Greer's opinions are merely "out-of-court assertions about Amazon's policies and practices, offered for their truth." *Ibid.*

DVG counters that Greer's testimony is grounded in her firsthand knowledge of Amazon's policies, gleaned from her "substantial experience in the Amazon space, in particular its policies as she has *inter alia* consulted for hundreds of Amazon sellers." Response at 23. While DVG concedes that "a portion of Ms. Greer's Report does cite to various Amazon webpages," it says that these citations are only meant to illustrate "what Amazon publicly asserts to be its policies"—and are not being offered for the truth of "how Amazon applies its policies." *Ibid.* That information, DVG argues, is introduced through Greer's expert opinions "based on her own extensive experience working with Amazon internally and externally for over 15 years." *Ibid.* Again, we agree with DVG.

On this issue, we find the Eleventh Circuit's decision in *Jennings* instructive. The two defendants there appealed the district court's decision to admit the testimony of the government's workers'-compensation expert. *See Jennings*, 599 F.3d at 1248. That expert testified based on her "experience and conversations over her career with workers' compensation professionals," which the appellants argued constituted inadmissible hearsay. *Id.* at 1249. As the Eleventh Circuit explained, however, that testimony *wasn't* hearsay:

> Szymoniak testified regarding general practice in a field—third party administrators' knowledge of appropriate and legitimate business practices. This was testimony by the witness about her work and her familiarity with the regulatory environment. It was evidence in support of her competence to express an opinion regarding the awareness of certain industry requirements—that knowledge of these requirements was essential to persons in this field. It was not an effort to prove what the regulations were from

the statements of others. *Knowledge of an industry's business practices—unlike technical accounting valuations—is gleaned from years of working within the industry and with its professionals. It is not a recounting of out of court statements of others.*

*Ibid.* (emphasis added). So too here: Greer's testimony isn't a mere recounting of the out-of-court statements of others—it's expert analysis about the industry's business practices gleaned from her years of experience as an Amazon employee and consultant.

*** 

We therefore **DENY** ZAGG's Motion to Exclude the Report of DVG's Expert [ECF No. 306].[5]

**DONE AND ORDERED** in the Southern District of Florida on December 15, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record

---

[5] Obviously, this decision is without prejudice—meaning that we'll allow ZAGG to re-raise its challenge to Greer's testimony if, at trial, it becomes clear that Greer isn't in fact familiar with the relevant Amazon policies.